# Exhibit #1 to Complaint – In re Cesar Horacio Duarte Jaquez

U.S. Department of State

**CERTIFICATE TO BE ATTACHED TO DOCUMENTARY**
**EVIDENCE ACCOMPANYING REQUISITIONS IN**
**THE UNITED STATES FOR EXTRADITION**
**AMERICAN FOREIGN SERVICE**

| Mexico City, Mexico | December 17th, 2019 |
|---|---|
| Place | Date (mm-dd-yyyy) |

I, Donald Heflin    ;    Minister Counselor for Consular and Consulate Affairs

Name    Title

of United States of America at    Mexico City, Mexico

hereby certify that the annexed papers, being    supporting documents

proposed to be used upon an application for the extradition from the United States of America

Cesar Horacio Duarte Jaquez

charged with the crime of    Embezzlement and Conspiracy, both Aggravated.

alleged to have been committed in    The Mexican United States

are duly and legally authenticated so as to entitle them to be received in evidence for similar purposes by

the tribunal    The Mexican United States

as required Title 18, United States Code, Section 3190.

In witness whereof I hereunto sign my name and cause my seal of office to be affixed

this    17th    day of    December 2019.

Month and Year

Signature

Donald Heflin, M.C.C.C.A

Type Name and Title of Certifying Officer

of the United States of America.

DS-0036
05-2017

EX - DUARTE JAQUEZ - 000001

| | |
|---|---|
| UNITED MEXICAN STATES | ) |
| FEDERAL DISTRICT | ) |
| CITY OF MEXICO | )   SS: |
| EMBASSY OF THE UNITED STATES | ) |
| OF AMERICA | ) |

Before me, _Blake Johnston_____, Consul of
the United States of America at Mexico, D. F., Mexico, duly commissioned and qualified,
personally appeared _____Erika Mabel Díaz Olivia_____
who, being duly sworn deposes and says as follows:

1. My name is _____Erika Mabel Díaz Olivia_____
   and I reside at_____Mexico City_____.

2. I have been familiar with the English and _____Spanish_____
   languages for the past __30__ years, I made the annexed translation from
   __Spanish__ to English. The said translation is to the best of my
   knowledge and belief a true and exact translation of the original document.

And further deponent saith not.

Subscribed and sworn to before me this _____ day of _____DEC 1 7 2019____ 2____.

BLAKE JOHNSTON
CONSUL
MEXICO CITY
MEXICO
_____
Consul of the United States
of America

UNITED MEXICAN STATES )
FEDERAL DISTRICT )
CITY OF MEXICO ) SS:
EMBASSY OF THE UNITED STATES )
OF AMERICA )

Before me, Blake Johnston , Consul of
the United States of America at Mexico, D. F., Mexico, duly commissioned and qualified,
personally appeared Juana Cealia Vera Medina
who, being duly sworn deposes and says as follows:

1. My name is Juana Cealia Vera Medina
   and I reside at Mexico City

2. I have been familiar with the English and Spanish
   languages for the past 22 years, I made the annexed translation from
   Spanish to English. The said translation is to the best of my
   knowledge and belief a true and exact translation of the original document.

And further deponent saith not.

Subscribed and sworn to before me this _____ day of _DEC 1 7 2019_ 2___.

BLAKE JOHNSTON
CONSUL
MEXICO CITY
MEXICO
Consul of the United States
of America

UNITED MEXICAN STATES       )
FEDERAL DISTRICT           )
CITY OF MEXICO             )  SS:
EMBASSY OF THE UNITED STATES   )
OF AMERICA                 )

Before me, _Blake Johnston_____, Consul of the United States of America at Mexico, D. F., Mexico, duly commissioned and qualified, personally appeared _Georgina Y. Trujillo Velasco._ who, being duly sworn deposes and says as follows:

1. My name is _Georgina Yasmin Trujillo Velasco_ and I reside at_ Mexico City._

2. I have been familiar with the English and _English - Spanish_ languages for the past _20_ years, I made the annexed translation from _Spanish._ to English.  The said translation is to the best of my knowledge and belief a true and exact translation of the original document.

And further deponent saith not.

Subscribed and sworn to before me this _____ day of ___ DEC 1 7 2019 _____ 2___.

BLAKE JOHNSTON
CONSUL
MEXICO CITY
MEXICO
_____
Consul of the United States
of America

EX - DUARTE JAQUEZ - 000004



**UNITED MEXICAN STATES**

**VS**

**CESAR HORACIO DUARTE JAQUEZ**

**CRIMINAL CASE: 3041/2019** OF THE CONSTITUTIONAL RIGHTS COURT OF THE JUDICIAL DISTRICT MORELOS IN THE STATE OF CHIHUAHUA.

**AFFIDAVIT SUPPORTING THE FORMAL EXTRADITION REQUEST.**

The undersigned, Daisy Alvarez Zavala, under oath to tell the truth, hereby states as follows:

That I am a citizen of the United Mexican States, working in Mexico City, with a degree in Law, graduated from *Universidad Autonoma del Estado de Mexico* (UAEM) and a professional license to practice Law registered in the archives of the General Division of Professions of the Ministry of Public Education. I am of legal age, with 12 (twelve) years of professional practice and 10 (ten) years in Law Enforcement, with domicile in Avenida de los Insurgentes, No. 20 de la Glorieta de Insurgentes, Colonia Roma Norte, Delegacion Cuauhtemoc, CP 06700 in Mexico City.

I currently work as Chief Executive Prosecutor, assigned to the General Division of Extradition of the General Division of International Proceedings of the Office of the Prosecutor General of the Republic. Amongst my duties, I have been entrusted the process and follow up of the international extradition proceedings filed by the Mexican Government.

I am a Law Professional, and exercising the duties mentioned above, due to my experience, I deem myself an expert and diligent in federal criminal law matters and federal criminal proceedings in Mexico.

Therefore, in compliance with my duties and under oath to tell the truth, I hereby state that the international extradition file of **CESAR HORACIO DUARTE JAQUEZ** (hereinafter referred to as **DUARTE JAQUEZ**) is in this General Division of International Proceedings based on the arrest warrant issued against him on October 8, 2019, by the Constitutional

Avenida Insurgentes No.20 de la Glorieta de Insurgentes, Col. Roma Norte,
Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr

EX. DUARTE JAQUEZ - 000005



Rights Court Judge of the Judicial District Morelos in the State of Chihuahua, within the records of criminal case number 3041/2019, for his probable participation in the commission of the crimes of Embezzlement and Conspiracy, both aggravated, provided for in articles 270, first paragraph (I), as well as second paragraph, and 246 in relation to article 248, first paragraph of the Criminal Code for the State of Chihuahua.

**DUARTE JAQUEZ** is considered a fugitive of the Mexican Justice at all relevant times narrated in this affidavit. **DUARTE JAQUEZ** was Constitutional Governor of the State of Chihuahua, and thereby he carried out actions damaging the patrimony of this State. Thus, the Government of the United Mexican States sustains its formal request with a view towards international extradition for him to be tried for the aforementioned crimes.

The Extradition Treaty signed by and between the United States of America and the United Mexican States is aimed at avoiding impunity of individuals who try to evade justice by entering into a foreign territory so as to try not to be punished for the crimes they are charged for.

### CRIMINAL PROCEDURE IN THE MEXICAN LAW
### (CHIHUAHUA)

In the State of Chihuahua, as well as in all the States of the Mexican Republic, according to article 211 of the National Code of Criminal Procedure, which is the law applicable, the criminal procedure starts at the investigation stage, at the moment the Public Prosecutor has received an accusation by any person who knows of the conduct probably defining the crime, when they are prosecutable ex officio[1] or through a complaint[2] when the conduct may only be investigated if the victim or offended party of the crime requests it to the Public Prosecutor.

---

[1] Crimes in which the Public Prosecutor may initiate their investigation simply by obtaining knowledge, by any means, of their commission.
[2] Crimes that require a prior request by the person affected by their commission asking for the intervention of the investigative authority for the prosecution of such crimes. Examples: fraud, embezzlement, criminal damages, etc.

2



By virtue of the provisions of article 21, of the Political Constitution of the United Mexican States, the execution of the criminal action before the courts corresponds to the Public Prosecutor, without prejudice of the participation granted by the law to the victim or offended party. Likewise, since the latter is a Representative of Society, he has been conferred the powers for conducting the criminal investigation of conduct defined as a crime and, if applicable, exercise the criminal prosecution before the corresponding courts. For said purpose, they will have police officers under their command.

The Public Prosecutor receives the oral or written accusations or complaints filed derived from conduct that may be defined as crimes; this authority and their auxiliaries, in compliance with the orders received from the former named are obligated to proceed with no further requirements on their investigation. The foregoing so as to gather the circumstantial evidence to clarify the conduct, and if applicable, the evidence to support the execution of the criminal action, the accusation against the accused and the redress of the damage. Likewise, in necessary, there shall be requested the authorization before the Judge in order to carry out some investigation acts requiring judiciary control

During the investigation, if the Public Prosecutor deems that the accused is a risk against the security of the victims or offended parties, they may instruct in a founded and reasoned manner the measures destined to their protection; such measures may be cancelled, ratified or modified by a Judge.

The Public Prosecutor in charge of the investigation in the performance of their duties may require information from any person or public official, who will be obligated to provide it in a timely manner. Likewise, they are obligated to appear before them in order to be interviewed if summoned for said purpose, and may solely be excused in the cases expressly provided by the law.

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr

EX - DUARTE JAQUEZ - 000007



Should the person be arrested *in flagrante delicto*,[3] or in urgent case[4] for their probable participation in a conduct defined by the law as a crime and is placed under custody without delay and pursuant to the law before the Public Prosecutor, in cases in which the crimes do not deserve preventive imprisonment by operation of law, and it is not requested as a precautionary measure in a hearing, they may order the release of the perpetrator who shall be summoned to appear before the Judge provided that the Public Prosecutor exercises their right to punish, or may be imposed a precautionary measure in favor of the victim or offended party.

Should information leading to establish that a criminally defined conduct has been perpetrated derived from the investigation, as well as the probability that the accused participated in its commission, the Judge, at the request of the Public Prosecutor, may summon the accused to appear at the initial hearing provided that the latter has not been detained; order its appearance through public force if the accused person has not complied with the prior summons without justification, or issue an arrest warrant provided that the Public Prosecutor decides on the need for caution derived either from the relevance of the case, the risk of escape, or any other circumstance justified by the Public Prosecutor. The foregoing in compliance with the provisions set forth in article 16 of the Political Constitution of the United Mexican States, in relation to article 141 of the National Code of Criminal Procedure.

Additionally, the Public Prosecutor has the authority to request from the jurisdictional body the issuance of precautionary measures to ensure the appearance of the perpetrator in the proceeding; guarantee the safety of the victim or offended party; or to avoid hindering the proceeding.

---

[3] This is when the accused is arrested at the moment they are committing a crime or immediately after they have committed a crime.
[4] This is when the Public Prosecutor under their own responsibility, because due to the time, place or circumstance they cannot present before the judicial authority, orders the arrest of a person, legally grounding and stating the evidentiary inferences justify their action, considering that the crime in question is classified as serious by the law and there is a justified risk that the accused may flee from law enforcement.

4

VELAZQUEZ - 000008



**FGR**
FISCALÍA GENERAL
DE LA REPÚBLICA

Once the investigation has been concluded, if the Public Prosecutor deems that the investigation provides elements to execute criminal action, they will file before the jurisdictional body an accusation against the accused party, offering the evidentiary means to prove the conduct that the law defines as a crime and the probability that the accused perpetrated such or participated in its commission and to prove, as applicable, the harm deemed caused to the victim or offended party. In the like manner, the Public Prosecutor is who requests from the jurisdictional authority the imposition of the penalties corresponding to the case in question provided for in the law.

After the Agent of the Public Prosecutor and the defense of the accused have filed the accusation and offered the evidence and the debate has been completed regarding their admission or exclusion, the Judge shall issue a decision for summons for Trial, where the essential decisions regarding the process will be made.

During the Trial, the Judge shall weigh, in a free and logic manner and under the rational criteria, the evidence offered before them, so as to issue a sentence in which the reasons used to ground his resolution shall be exposed. No one may be sentenced except when the Court in charge of the trial is convinced beyond any reasonable doubt of the commission of the conduct for which the trial was opened. A person shall not be sentenced for the sole merit of their statement. The sentence to be imposed shall not surpass the penalty for the conduct proven in trial.

### GENERAL INFORMATION AND PROCEDURAL HISTORY

While being governor of Chihuahua, circumstance that gave him access to the public resources of the state of Chihuahua, **DUARTE JAQUEZ** instructed other public officials who worked in his administration, to use the governmental structure to simulate 11 administrative procedures to deviate the public money into companies directly linked to him, thereby obtaining a personal benefit.

5

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr

EX - DUARTE JAQUEZ - 000009



The evidence that will be explained below will prove that **DUARTE JAQUEZ**, due to his position as governor, and having the obligation to manage the State assets with efficiency, effectiveness, economy, transparency and honesty, he breached such obligation, and otherwise, he caused the State of Chihuahua a detriment in their patrimony in the amount of $96,685,253.80, Mexican currency.

Likewise, along the affidavit, conclusive will be cited, such as the testimony rendered by the witness identified with code 56RT65PW7 who stated to have worked in the administration of **DUARTE JAQUEZ** as head of the Secretary of the Treasury, and that by late November 2014, the General Administration Division, at that time under the command of Gerardo Villegas Madriles, another close coworker of the accused, who illegally requested subsidy in the amount of $5,500,000.00, Mexican currency damaging the budget of the Secretary of Rural Development, to be delivered Union Ganadera.

In addition, the witness stated that such subsidy was requested and fully paid with funds from the state treasury, by direct instruction from **DUARTE JAQUEZ** to cover his personal expenses, and he knows this because **DUARTE JAQUEZ** himself mentioned it in a meeting at the government house, where he said he needed the money to cover some expenses and he wanted to use the funds taking advantage of the fact that the state finances gad good liquidity level.

After having analyzed the records included in criminal case number 3041/2019, of which the undersigned has full knowledge, the Constitutional Rights Court Judge of the Judicial District Morelos, from the State of Chihuahua (herein after referred to as the Judge), pursuant to the provisions set forth in articles 16, third paragraph of the Political Constitution of the United Mexican States and 141 (III) of the National Code of Criminal Procedure, issued arrest warrant. **(EXHIBIT 1)**

6

EX - DUARTE JAQUEZ - 000010



The government of the United Mexican States will prove the crimes **DUARTE JAQUEZ** is accused for, by way of the testimony of his former coworkers, who have stated that they received direct instructions from the accused, to simulate operations and deviate the public funds of Chihuahua to benefit the former governor.

### STATUTE OF LIMITATIONS

From the records comprising the criminal case, stands out the resolution of October 8, 2019 signed by the Constitutional Rights Court Judge of the Judicial District Morelos, of the State of Chihuahua, in which is established that the facts for which the extradition of **DUARTE JAQUEZ** is requested, has not prescribed. **(EXHIBIT 1)**

The trier stated that according to the statute of limitations rules of the law of Chihuahua, specifically set forth in article 107 of the Criminal Code for the State of Chihuahua, establishes that the terms for the prescription to run will be doubled for those out of the territory of the State. In addition, the trier states the fact that doubling the terms is due to the international obligations acquired by the Mexican State before the United Nations System, for having adopted the United Nations Convention against Corruption, which in its article 29 establishes:

> " Each State party shall, where appropriate establish under its domestic law a long statutes of limitations period in which to commence proceedings for any offense established in accordance with this Convention and establish a longer statutes of limitations period or provide for the suspension of the statutes of limitations where the alleged offender has evaded the administration of justice. ..."

Such regulation is applicable since the Convention establishes the duty of the States party to criminally define, among others, the crime of deviation or embezzlement, when intentionally committed by the public official in their own or third parties benefit of assets, funds or any other object of value that has been entrusted to the official by virtue of their position.

7

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldia Cuauhtemoc, CDMX, CP 06700. www.gob.mx/fgr
EX - DUARTE JAQUEZ - 000011



Due to the foregoing, the Judge decided that having taken into account what most benefits the accused person regarding the crime of embezzlement, aggravated, and by virtue that the first event occurred on June 17, 2011, and the last one on November 28, 2014, the date for the statute of limitations of the criminal action to run in favor of **DUARTE JAQUEZ** will be until the last minute of June 16, 2027 and the last minute of November 27, 2030. Likewise, regarding the crime of Conspiracy, taking into account the last event, this means November 28, 2014, the term for the statute of limitations to run will be the last minute of August 27, 2024.

Lastly, the Constitutional Rights Judge cited that counting on the background that **DUARTE JAQUEZ has** INTERPOL red notice, as well as the fact that he was summoned before this jurisdictional body and did not appear, there is no doubt that the accused has evaded law enforcement. Thus, in conclusion, provided that the prescription of the has not run, the judicial order is enforceable and executable.

Due to the foregoing, the true and exact text of the legal provisions ruling the crimes, the penalties and the state of limitations to prosecute **DUARTE JAQUEZ** for the crimes he is charged with are included. **(EXHIBIT 2)**

The law applicable to the case was properly approved and in force on the date the crimes were committed and at the time the arrest warrant was issued for the person sought. Breach to this law constitutes a crime pursuant to the legal provisions of the United Mexican States and is penalized with an imprisonment penalty which maximum term is not less than one year.

### RELEVANT FACTS OF CRIMINAL CASE 3041/2019

**DUARTE JAQUEZ** was Constitutional Governor of the State of Chihuahua from October 4, 2010 to October 3, 2016, as inferred from the appointment **(EXHIBIT 4)** he was granted by the Congress of the State of Chihuahua, as well as his duty forms. Such situation qualifies him as public official for the corresponding legal purposes of the Criminal Law of the State of Chihuahua.

8

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr
EX - DUARTE JAQUEZ - 000012



Now then, this position gave **DUARTE JAQUEZ** the Executive Power at State level, and therefore, a wide range of powers and responsibilities, such as administering the State assets, so as to fulfill the objectives they are destined for. He took advantage of said situation, since according to various public officials and persons not related to public administration, by distributing positions and activities he was able to perform actions that resulted in the deviation of public funds in the amount of $96,685,253.80, Mexican currency, withdrawn between 2011 and 2014 from various accounts of the Secretary of the Treasury of the Government of the State of Chihuahua (herein after referred to as Secretary of the Treasury). The aforecited by way of fraudulent administrative procedures in which 17 payments were performed to Union Ganadera Regional General "Division del Norte" of the State of Chihuahua (herein after Union Ganadera) and to "Financiera de la Division del Norte", S.A. de CV, SOFOM, ENR[5] (herein after Financiera).

---

[5] The initials S.A. de C.V., SOFOM, ENR respectively refer to: a) a Variable Capital Corporation; b) Multiple Purpose Financial Corporation; c) non-regulated entity (due to their initials in the Spanish language) and are defined in the Mexican Business Legislation as follows:

General Law of Business Corporations

Article 87. A variable capital corporation exists under a denomination and is exclusively formed by shareholders whose obligation is limited to the payment of their shares

Article 88.- The denomination shall be freely provided, but shall be different from any other corporation and upon using such denomination, it shall be followed by the wording "Sociedad Anonima" (Variable Capital Corporation, dut to its initials in the Spanish language) or its abbreviation, "S.A."

Article 213.- In variable capital corporations, the corporate capital shall be subject to an increase derived from further contributions made by the shareholders or the admission of new partners, and decrease of said capital shall be derived from a partial or total withdrawal of the contributions with no other formality than those stipulated in this chapter.

Article 215.- The corporate name or denomination derived from the type of corporation, shall always be added the wording "de Capital Variable".- C.V. (Variable Capital, due to its initials in the Spanish language)

General Law of Credit Auxiliary Organizations and Activities

Article 87-B. ...
... Those variable capital corporations which, in their corporate bylaws, expressly consider as their main social purpose the customary and professional performance of one or more of the activities itemized in the preceding paragraph shall be defined as multiple purpose financial corporations. Such corporations shall be classified as financial entities that may be:
(...)
   II.      Non-regulated multiple purpose financial corporations.
The corporations defined in section II hereof shall be those which do not have participation in the corporate capital, pursuant to the terms and conditions mentioned above. These corporations shall add to their corporate name the legend "Sociedad Financiera de Objeto Multiple" (Multiple Purpose Financial Corporation) or its acronym "SOFOM", followed by the wording "non-regulated entity" or its abbreviation "E.N.R." (due to its initials in the Spanish language). The non-regulated multiple purpose financial corporations shall not be subject to supervision of the National Banking and Securities Commission.

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr

EX - DUARTE JAQUEZ - 000013



He breached such situation since while being Governor, he was also shareholder and Chairman of the Board of Directors of Union Ganadera, according to registration from the National Agriculture and Livestock Registry dated May 24, 2007 through Resolution number 110.01.GC30/07 (also referred to as 110.04.- GC30/07), folio 8-1-3. **(EXHIBIT 6)**

Furthermore, he acted as founder, main shareholder and Chairman of the Board of Directors of the Financiera.

Being the owner of the 98 % of the A-series shares comprising their corporate stock, 5,900 of the 6,000 total shares; likewise, the 93.35% of the B-series shares; this means, 28,940 of the 31,000 total shares, according to the registration in the Public Registry of Property and Commerce for the State, under electronic commercial file number 24139. **(EXHIBIT 5)**

There is important to mention that while acting as Governor, **DUARTE JAQUEZ** was partner and shareholder of various corporations and businesses of which ownership he shared with his brothers Ricardo, Alejandro and Mario lastname Duarte Jaquez, such as the corporation denominated "Grupo Inmobiliario del Norte", S.A. de C.V. Additionally, along with his wife Bertha Olga Gomez Fong, and their children Cesar Adrian, Bertha Isabel and Olga Sofia all of them Duarte Gomez, were shareholders of the company denominated "Ganadera El Saucito Balleza", S.P.R. de R.L, de C.V.", and his former sister-in-law, Blanca Estela Alvarez, in the Financiera.

The aforecited, in addition to his bond with Carlos Gerardo Hermosillo Arteaga (herein after referred to as Hermosillo Arteaga), who belonged to the group that was close to the former governor, and who worked as public officer in different offices of the Government of Chihuahua, while **DUARTE JAQUEZ** was governor. Hermosillo Arteaga was shareholder and Legal Representative of the Financiera of which, as it has already been stated, **DUARTE JAQUEZ** was owner, main shareholder and chairman of the Board of Directors.

10

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldia Cuauhtemoc, CDMX, CP 06700. www.gob.mx/fgr
DUARTE JAQUEZ - 000014



Within criminal case is included the statement rendered by the witness identified with code 56RT65PW726, who testified that **DUARTE JAQUEZ** knew Hermosillo Arteaga since 1999, whom he appointed Secretary of the Treasury of the State of Chihuahua from October 2012 until the end of his government.

The witness stated that Hermosillo Arteaga coexisted very close and for several years with **DUARTE JAQUEZ**, with whom he had a close friendship since they were Young, and with his father. Therefore, when Hermosillo Arteaga's father passed away, the accused exercised on him a kind of informal mentoring, economically and morally supporting him to survive.

**DUARTE JAQUEZ** formed and educated Hermosillo Arteaga according to his needs and requirements; he granted hi mall his confidence to operate and execute most delicate and personal affairs in the broadest possible sense. This closeness between both persons is affirmed by different testimonies taken; however it is evident that when reviewing the stock ownership of the Financiera, along with **DUARTE JAQUEZ** he has shares from Union Ganadera, in which Hermosillo Arteaga appeared as Legal Representative.

There is important to mention that according to the information included in the criminal case, Hermosillo Arteaga passed away in Chihuahua in March 20, 2017 in a car accident.

**DUARTE JAQUEZ** breached his obligations as public official since as governor he had the obligation to manage the State assets with efficiency, effectiveness, economy, transparency and honesty to achieve their intended goals, and to use them impartially. The preceding in compliance with article 134, paragraph 1 of the Political Constitution of the United Mexican States; 93 (XXXIV) of the Political Constitution of the State of Chihuahua; and 5, paragraph 1 of the Law on Expenditure Budget, Government Accounting and Public Expenditure for the State of Chihuahua.

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/fgr

EX-009 DUARTE JAQUEZ - 000015



JAQUEZ, who acted as State governor, should have mainly refrained from executing agreements or contracts, allocating the public expenditure under a conflict of interest, which lay on the fact that he held shares in corporations of which he was a shareholder and the Chairman, as was the case of Union Ganadera, which was directly benefited with the State assets.

An investigation conducted by State authorities revealed that, in August 2018, derived from reviewing the State accounting by the Secretary of the Treasury multiple payments in large amount were identified during corporate years 2011, 2012, 2013 and 2014 that were allocated to Union Ganadera and Financiera. **(EXHIBIT 3)**

It is worthy of note that the legal entities in question were directly controlled by **DUARTE JAQUEZ**, in as much as he respectively was the Chairman of the Board of Directors and *de facto* Administrator, as well as majority shareholder, therefore he held a personal business interest that derived in an actual conflict of interest.

Within the course of the investigation there were found serious irregularities which prove that fraudulent administrative proceedings were conducted to deliver public funds to the corporations bound to **DUARTE JAQUEZ**; same irregularities that were informed to the Secretary of Public Oversight for the State of Chihuahua, from which there stand out:

**(A)** That the payments were mostly made based on alleged economic / financial support agreements and a loan agreement with interest (loan), signed at different times during the years 2011, 2012, 2013 and 2014, involving the aforementioned legal entities, the state-owned entity denominated State Trust for the Promotion of Productive Activities in Chihuahua under the Secretary of Economy (FIDEAPECH), the Secretary of Rural Development and the Secretary of the Treasury for the State of Chihuahua;

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr

EX - DUARTE JAQUEZ - 000017



**(B)** That the administrative procedures to make the payments bear multiple irregularities: incomplete documentation, unfinished processes, inconsistent dates, itemizations and amounts; violation of legal procedures for granting subsidies (economic/financial support) and contracting, which make evident a clear conflict of interest between the then Governor, in his capacity as the main administrator of the State patrimony, and the aforementioned corporations in which he also controlled their equity share; and

**(C)** That mainly, in the archives of the State Secretaries involved, there is no evidence whatsoever regarding compliance with the economic and financial support granted, or with the executed loan agreement by the entities associated with the former governor, **DUARTE JAQUEZ**. In other words, there is no evidence that the state money in question had been used for public purposes.

The payments made to Unión Ganadera and Financiera linked to **DUARTE JAQUEZ**, add up to the amount of $96,685,253.80, Mexican currency, of which $64,685,253.80, Mexican currency were delivered to Union Ganadera and $32,000,000.00, Mexican currency to Financiera under the following scheme:

| PAYMENT DAY | TOTAL AMOUNT | AGENCY USING THE FUNDS | BENEFITED COMPANY |
|---|---|---|---|
| 17/06/2011 | $ 582,965.80 | Secretary of the Treasury | UNION GANADERA |
| 10/01/2012 | $12,000,000.00 | Secretary of the Treasury | FINANCIERA |
| 10/01/2012 | | | |
| 25/01/2012 | $36,000,000.00 | Secretary of the Treasury | UNION GANADERA |
| 15/03/2012 | | | |
| 25/09/2012 | $ 8,000,000.00 | Secretary of the Treasury | FINANCIERA |
| 04/10/2012 | $12,000,000.00 | Secretary of the Treasury | FINANCIERA |
| 04/10/2012 | | | |
| 25/04/2012 | $ 2,692,288.00 | Secretary of the Treasury | UNION GANADERA |
| 09/01/2012 | $ 5,000,000.00 | Secretary of the Treasury | UNION GANADERA |
| 12/07/2012 | $10,000,000.00 | Secretary of the Treasury | UNION GANADERA |
| 18/10/2013 | $ 4,600,000.00 | Secretary of the Treasury | UNION GANADERA |
| 01/04/2013 | $ 250,000.00 | Secretary of the Treasury | UNION GANADERA |
| 18/10/2013 | $ 60,000.00 | Secretary of the Treasury | UNION GANADERA |

14

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/fgr

DUARTE JAQUEZ - 000018



| | | | | |
|---|---|---|---|---|
| 28/11/2014 | | | | |
| 28/11/2014 | $ 5,500,000.00 | Secretary of the Treasury | UNION GANADERA |
| 28/11/2014 | | | | |

GENERAL TOTAL
$96'685,253.80

I have attached herein as **ATTACHMENT A** the sworn affidavit of Cesar Augusto Peniche Espejel, Prosecutor General for the State of Chihuahua. Said document summarizes the investigation carried out by the law enforcement authorities of Chihuahua and explains the evidence obtained to prove the probable responsibility of **DUARTE JAQUEZ** in the commission of the conduct of which he is accused.

Form the analysis of the records obtained, it is disclosed that the irregular proceedings and operations carried out to pay to the companies linked to **DUARTE JAQUEZ** are the following:

1.   **ECONOMIC SUPPORT NUMBER 352/2011 IN FAVOR OF UNION GANADERA IN THE AMOUNT OF $582,965.80, MEXICAN CURRENCY.**

On June 01, 2011, the Secretary of Rural Development, the Secretary of the Treasury and Union Ganadera signed Economic Support Agreement number 352/2011 in the amount of $582,965.80, Mexican Currency, in order to acquire the necessary equipment for beef cattle artificial insemination in support of the producers affiliated to the Union Ganadera. **(EXHIBIT 7)**

Due to the preceding, on June 17, 2011 the amount agreed upon was paid by means of check number 011876 debited to account number        900-5 of Santander Mexico, S.A. of the Secretary of the Treasury of the Government of the State of Chihuahua and credited to account number        4800 of HSBC Mexico, S.A. of Union Ganadera.

15

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr

EX - DUARTE JAQUEZ - 000019



From the investigation carried out by the law enforcement authorities of Chihuahua, it is concluded that the signing of the aforementioned contract was fraudulent because there is no documentation or information with which Union Ganadera proves that the economic support was used for the purpose established in the agreement. Said investigation discloses the lack of invoices that prove the purchase of equipment subject of the agreement.

In the investigation file, there is information of bank accounts analyzed by a Technical Financial-Accounting Report **(EXHIBIT 19)** whereby traceability of the public treasury delivered to Union Ganadera is proven. Furthermore, it was proven that the procedure to deviate the money of Chihuahua in order to satisfy the personal interests of **DUARTE JAQUEZ** was fraudulent. The foregoing is because it was not only not used for the purposes granted but also it was used for the direct benefit of his wife Bertha Olga Gomez Fong by way of her construction company denominated "Pavimentos y Servicios de Parral", S.A. de C.V.

Once Union Ganadera received in its accounts the money from the agreement, on June 20 and 27 of 2011, it transferred $50,000.00 and $517,802.52, Mexican Currency, into the account of "Pavimentos y Servicios de Parral", S.A. de C.V., company belonging to Bertha Olga Gomez Fong. In the same manner, she deviated the purpose of the money allocated to it by way of the aforementioned company so as to pay the credit card number            1005 of American Express Company (Mexico) S.A. in the name of the same Bertha Olga Gomez Fong in the amount of $43,844.75, Mexican Currency. The latter to pay $19,090.00, Mexican Currency in favor of Victor Hugo Maldonado Gachupin, employee of "El Milagro" ranch property of **DUARTE JAQUEZ**, supposedly to pay the payroll and the expenses of the ranch.

16

DUARTE JAQUEZ - 000020



The State Superior Auditor analyzed the procedure carried out to sign the economic support agreement and determined that it had resulted fraudulent since it violated diverse legal provisions related to the administration of public funds.

The foregoing is proven with the statements identified with codes KA5P23/2019, 5M4GYUH19A/2019 and FE54HD7SHJW/2019, same that are part of the investigation file.

2. **ECONOMIC SUPPORT ITEMIZED AS PUBLIC WORK NUMBER 6800685 IN FAVOR OF FINANCIERA IN THE AMOUNT OF $9,210,000.00 AND $2,790,000.00, MEXICAN CURRENCY**

On October 4, 2011, the Secretary of the Treasury made two payments in favor of the Financiera in the amounts of $2,790,000.00 and $9,210,000.00, Mexican Currency, debited to account number          900-5 of Santander Mexico, S.A. in the name of the Secretary of the Treasury and credited to account number          7741 of Santander Mexico, S.A. in the name of the Financiera under the concept of economic support with public work number 6800685. Same operation that was intended to be justified with agreement denominated "Subsidy for the Acquisition of Beef Heifer" whose purpose was to acquire beef heifer and signed by the State of Chihuahua, represented by the Secretary of the Treasury and the Secretary of Rural Development and the company denominated Union Ganadera. **(EXHIBIT 8).**

In this particular case, there is no documentation and information proving that the economic support granted to Union Ganadera was used for the purpose established in the agreement. Likewise, it is specified the lack of ratification of the list of beneficiaries and suppliers, the documentation related to the proof of social impact of the program, the records of delivery and reception signed by the beneficiaries, the intermediating body and the Secretary, the information related to quarterly reports of schedule, the budget and financial progress of the

17

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/fgr
EX-BODART-PJAQUEZ - 000021



**FGR**
FISCALÍA GENERAL
DE LA REPÚBLICA

program, the quarterly follow-up of the Committee for Regulation and the follow-up on the progress in the fulfillment of the purpose.

The traceability or route of the money was analyzed in the expert report[6] issued by a financial expert who confirmed that the economic support was only a simulation since said funds were not used for the alleged agreement purpose. The public funds deviated were used to fund a Trust in the name of the same **DUARTE JAQUEZ** and his wife, Bertha Olga Gomez Fong, and to transfer them into a construction company whose shareholders are persons linked to the same **DUARTE JAQUEZ**.

The foregoing is so since on October 10, 2011 a payment of $10,000,000.00, Mexican Currency, was made through check number 220 debited to account number       7741 of Santander Mexico S.A. in the name of the Financiera and credited to account number        0947 of HSBC Mexico S.A. in the name of Akala, S.A. de C.V. S.F.P. However, said amount was allocated into Trust number     4743 of Banco Mercantil del Norte S.A. in the name of **DUARTE JAQUEZ** and Bertha Olga Gomez Fong, according to bank information. **(EXHIBIT 18)**

A second payment was made on October 12, 2011 in the amount of $2,000,000.00, Mexican Currency of account number        7741 of Santander Mexico S.A. in the name of the Financiera. Additionally, on December 14, 2011, a payment was made in the same amount of $2,000,000.00, Mexican Currency debited to account number       7741 of Santander Mexico S.A. in the name of the Financiera and credited to Finca Ingenieria Integral S.A. de C.V. In this regard, the company engaged in construction and civil work administration of Cesar Humberto Javalera Leal and Raul Enrique Javalera Leal was benefited. These persons witnessed the sale of the property denominated "Rancho Santa Rita" and were partners of **DUARTE JAQUEZ** in the Financiera.

---

[6] Technical Financial-Accounting Report. **(EXHIBIT 19)**

18



The foregoing is proven with the statements identified with code KA5P23/2019, 5M4GYUH19A/201 and FE54HD7SHJW/2019, same which are part of the investigation file.

Specially the statement rendered by 5M4GYUH19A/201 who stated that in the administration of **DUARTE JAQUEZ**, he was Director General of Investment Programs of the Secretary of the Treasury. Therefore, the latter person is in conditions to state that the economic support procedures above mentioned in this section were simulated and that the payment made was unlawful. Moreover, according to his powers, he signed part of the documentations carried out to release the public funds requested by Carlos Hermosillo in the name of **CESAR DUARTE**.

3.   **ECONOMIC SUPPORT ITEMIZED AS PUBLIC WORK NUMBER 6800685 IN FAVOR OF FINANCIERA IN THE AMOUNT OF $12,000,000.00, MEXICAN CURRENCY.**

On January 10, 2012, the Secretary of the Treasury made a payment in favor of Financiera in the amount of $12,000,000.00 Mexican with check number     6465, debited to account number            900-5 of Santander Mexico S.A. in the name of the Secretary of the Treasury and credited to account number            7741 of Santander Mexico S.A. The latter under the concept of economic support with public work number 6800685 for an alleged "Subsidy for the Acquisition of Beef Heifer" with which it was intended to justify the unlawful exit of money. **(EXHIBIT 9)**

The payment of the subsidy was processed by the then Director General of Investment Programs of the Secretary of the Treasury who, in his capacity as public official, signed the documentation made to release the public funds. The foregoing was done upon request of Hermosillo Arteaga in the name of **DUARTE JAQUEZ**. Said public official rendered his statement identified with classified

19

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr
EX - DUARTE JAQUEZ - 000023



identity code *5M4GYUH19A/2019.* Additionally, this person, when signing said official letter, had the authorization of the person identified as *KA5P23/2019,* the then Secretary of the Treasury.

Additionally, 5M4GYUH19A/2019 stated that the economic support was granted unlawfully to the Financiera by pretending that it would be used for public purposes, but said funds directly went to the patrimony of **DUARTE JAQUEZ.** Furthermore, it is not overlooked that the procedure was not carried out according to the customary procedure established, because it was speeded up despite the existence of urgent procedures previously programmed. Therefore, the expense was debited to the account denominated *cuenta deudora* because obviously, the documentation necessary to prove the disbursement of the fund did not exist, and this was not correct because it was not an urgent payment derived from a contingency. Therefore, due to the preceding, the nature of said account denominated *cuenta deudora* was deviated only to ease the fund exit.

The traceability[7] or route of the money proves that the economic support was a simulation because on October 11, 2011 a charge in the amount of $12,000,000.00, Mexican Currency, of account number          7741 of Santander Mexico S.A. in the name of the Financiera, money released on January 24, 2012. Additionally, on the same date 5 payments of $2,544,815.00, Mexican Currency, each were made, totaling $12,724,075.00, Mexican Currency, debited to account number          7741 of Santander Mexico S.A. in the name of Financiera de la Division del Norte S.A. de C.V. and credited to Financiera Rural.

Financiera Rural is a rural development bank run by the federal government, within the Ministry of the Finance and Public Credit (SHCP), which according to the governing law, grants credits to Producers and Financial Intermediaries.

---

[7] Technical Financial-Accounting Report. **(EXHIBIT 19)**

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr

EX - DUARTE JAQUEZ - 000024



According to the investigations, the money of the alleged support to purchase heifers was used to make payments to the Financiera.

The preceding is proven with the statements of witness identified as KA5P23/2019, 5M4GYUH19A/2019 and FE54HD7SHJW/2019 whose statements are part of the criminal case filed against **DUARTE JAQUEZ**. Same witnesses who stated the have been part of the administration of **DUARTE JAQUEZ**, due to which they know the information for a fact.

4.   **MUTUAL AGREEMENT WITH INTEREST NUMBER 887/2011 IN FAVOR OF UNION GANADERA IN THE AMOUNT OF $5,000,000.00, MEXICAN CURRENCY.**

On November 14, 2011, Mutual Agreement with Interest 887/2011 was signed by the Government of Chihuahua represented by the Secretary of the Treasury and the Secretary of Rural Development in favor of Union Ganadera R, in the amount of $5,000,000.00, Mexican Currency. The latter to be paid out in a lump sum before June 30, 2013, with the possibility of making advance payments for an alleged "loan for the Union to be used as operating capital". **(EXHIBIT 11)**

On January 9, 2012, a payment of $5,000,000.00, Mexican Currency, was made through check number    0047 debtited to account number          765-1 of Santander Mexico S.A. in the name of the Secretary of the Treasury; and in favor of account number          4800 of HSBC Mexico S.A. of Union Ganadera.

In this particular case, from the evaluation carried out by the State Superior Auditor, it is disclosed that there were found significant irregularities such as that the agreement lacked budgetary allocation. The preceding breaches the stipulations of subsidy granting programs such as the Operation of the State Program for the Development of Agriculture and Livestock, Agroindustry and Forestry Producers (PRODAAF, due to its initials in the Spanish language). Additionally, the loan amount granted exceeded the maximum financing

21

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr

EX - DUARTE JAQUEZ - 000025



amount and the term established, and just as in the other cases, there is no documentation regarding the loan payment fulfilment in question.

Regarding the traceability of the funds[8], from the analysis of the same, it is concluded that the money was not used according to the stipulations of the agreement, and furthermore, it generated a benefit in favor of **DUARTE JAQUEZ** and people close to him.

The foregoing is so since in the investigation file there is information that states that from the $5,000,000.00, Mexican Currency, of the loan, $561,340.00 were paid on January 18, 2012 in favor of Raul Yañez Bustillos as a payment for the stock sold to Hermosillo Arteaga. On January 23, 2012, a payment in the amount of $3,000,000.00 was made to acquire a real estate to the family business "Nueces la Esperanza S.A. de C.V.". Finally, a million pesos was deposited into a savings account in the financial institution denominated "Akala, S.A. de C.V. S.F.P.".; and on January 25, 2012 payment of $1,000,000.00, Mexican Currency, was made into the account of this company.

The deviated money was the legal responsibility of and under the responsibility of the public officials involved, this is **DUARTE JAQUEZ**, the Secretary of the Treasury, the Treasurer of the Secretary of the Treasury, the Chief Head of the Department of Programming and Payment Control under the Secretary of the Treasury, the Secretary of Rural Development, and the Director of Agricultural Development under the Secretary of Rural Development. This is so because due to the positions they held, they had powers that allowed them to make decisions regarding the administration and use of the aforementioned funds.

---

[8] Technical Financial-Accounting Report. **(EXHIBIT 19)**

Avenida Insurgentes No.20 de la Glorieta de Insurgentes, Col. Roma Norte, Alcaldia Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr

EX - DUARTE JAQUEZ - 000026



From the analysis that the undersigned carried out of the criminal case it is worth mentioning that the above stated is corroborated with the statements rendered by witnesses KA5P23/2019, 5M4GYUH19A/2019, Joaquin Francisco Hernandez Vega, FE54HD7SHJW/2019 and Juan Ruben Barrio Garza.

5.   **ECONOMIC SUPPORT NUMBER 991/2011 IN FAVOR OF THE UNION GANADERA IN THE AMOUNT OF $36,000,000.00, MEXICAN CURRENCY.**

On December 1, 2011, a Financial Support Agreement number 991/2011 was signed between the Secretary of Rural Development, the Secretary of the Treasury and Union Ganadera for an alleged "payment of compensation to producers transporting their unproductive cattle to places where they were to be sacrificed" in the amount of $36,000,000.00, Mexican Currency. **(EXHIBIT 10)**

On January 10, 2012, a payment of $16,000,000.00, Mexican Currency, was made through check number    5464, in favor of Union Ganadera. Then, on January 25 and Mach 15 of 2012, other two payments were made in the amount of $10,000,000.00, Mexican Currency, to the same Union by means of check numbers 017104 and 016781 respectively.

In this case, in addition to the irregularities of the procedures, there is no documentation or information with which Union Ganadera proves that the economic support was used for the purpose provided for in the agreement. The latter is so because although the Secretary of Rural Development had a list of persons who might be considered "presumed beneficiaries", neither their personal identification nor any other data that prove the involvement of the beneficiaries or that state the list of beneficiaries to which the support is aimed.

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldia Cuauhtemoc, CDMX, CP 06700. www.gob.mx/fgr
EX-BDART-29AQUEZ - 000027



In fact, the list of persons contained in the administrative file of the agreement in question allegedly contained the signatures of 45 people; upon investigation, there was found that these had passed away by the date in which the alleged support was delivered, and therefore, it was materially impossible for them to sign the documentation. This makes evident that the document was false and the process to release funds in favor of *Union Ganadera Division del Norte* was fraudulent. In other words, that list had the signatures of deceased people when the documents were drafted.

Moreover, from the statements found in the criminal case, it is disclosed that Enrique Alvarado Moreno, Manuel Ramirez Vazquez, Mario Fierro Tarango, Juventino Peña Armendariz, Jose Heriberto Aguilar Murga and David Olivas Aguilar stated that they did not recognize the signatures made in the list of beneficiaries as theirs and that they did not received the amount under the concept of support, which in the same document appears as signed. This allows to conclude that a said signatures were forged.

The foregoing is proven with the statements identified with KA5P23/2019, FE54HD7SHJW/2019, 5M4GYUH19A/2019, this last, specially was the Director General of Investment Programs in the administration of **DUARTE JAQUEZ**. Same person who stated that this economic support procedure was irregular because it was granted by instruction of **DUARTE JAQUEZ** since Hermosillo Arteaga contacted him some days before signing the document and gave him the instructions of the then governor despite there was no documentation proving the fund release. In spite of the foregoing, Hermosillo Arteaga put pressure on him to process the procedure, and it was recorded in the account denominated *Cuenta Deudora* because there was no supporting documentation.

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldia Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr

DUARTE JAQUEZ - 000028



**FGR**
FISCALÍA GENERAL
DE LA REPÚBLICA

6.     **ECONOMIC SUPPORT NUMBER 305/2012 IN FAVOR OF UNION GANADERA IN THE AMOUNT of $2,692,288.00, MEXICAN CURRENCY.**

On April 19, 2012, the Secretary of Rural Development, the Secretary of the treasury and Union Ganadera R. signed the Economic Support Agreement 305/2012 in the amount of $2,692,288.00, Mexican Currency, for the alleged "acquisition of 116 (one hundred and sixteen) equipment devices for artificial insemination in order to increase the genetic quality of the cattle" in support of the producers affiliated to said Union. **(EXHIBIT 12)**

On April 25, 2012 a payment in the amount of $2,692,288.00, Mexican Currency, was made by way of check number   7910, debited to account number           9005 of Santander Mexico S.A. in the name of the Secretary of the Treasury and credited to account number          4800 of HSBC Mexico S.A. in the name of Union Ganadera.

From the analysis that the undersigned carried out of the criminal case it is worth mentioning that the above stated is corroborated with the statements rendered by witnesses 5M4GYUH19A/2019, Guillermina Hernandez Vazquez, FE54HD7SHJW/2019 and NI37SC94WQ/ 2019.

The preceding is corroborated with the statement of witness identified with code 56RT65PW7, who was the Secretary of the Treasury. This witness stated that at the beginning of 2013, **DUARTE JAQUEZ** asked him expressly and directly, together with Octavio Legarreta, then Secretary of Rural Development, at a meeting held at the House of Government, to carry out the corresponding procedures to withdraw more than $2,500,000.00, Mexican Currency. Said amount was delivered in 2012 to Union Ganadera under the concept of economic support, for producers from said Union could acquire artificial insemination thermos.

25

DUARTE JAQUEZ - 000029



Octavio Legarreta told witness 56RT65PW7 that the task requested by the then Governor was almost ready so as to verify and withdraw from the account denominated *cuenta deudora* the payment granted to Union Ganadera. Therefore, Leonel De Las Casas, then Director of Rural Planning, and Roberto Ditrich Nevarez, then Director of Agricultural Development, both under the Secretary of Agricultural Development, had to integrate the file with some documents, either simulated or similar to others; same which would be presented to the Secretary of the Treasury.

Day later, the secretary of Rural Development presented documentation in the Secretary of the Treasury with the purpose of documenting the expenditure, amongst which there was a list of municipalities that were allegedly benefited but this was not sufficient to prove the expenditure. This situation obligated the Secretary of Rural Development to remit again other documents during the first months of 2014 and in 2015 and due to the insistence of the ex-governor **DUARTE JAQUEZ**, the expenditure was fully proved and record thereof was eliminated from the account denominated *Deudores Diversos*.

The traceability[9] of the public treasury confirms that it was not used according to its purpose because the $1,112,698.08, Mexican Currency, were allocated to legal entities directly linked to **DUARTE JAQUEZ** as follows: On April 27, 2012 a payment of $612,698.08, Mexican Currency, was made through check number 0308; debited to account number 4800 of HSBC Mexico S.A. in the name of Union Ganadera and credited to "Genera Proyectos Agroindustriales Inmobiliarios S.A. de C.V." property of Ruth Sarahi Martinez Mariscal, employee of **DUARTE JAQUEZ** at both Union Ganadera and Financiera; company incorporated along with her husband Carlos Rafael Encinas "to deviate funds from the State Government. On June 25, 2012, a payment in the amount of $500,000.00, Mexican Currency, by means of check number 0658, debited to

---

[9] Technical Financial-Accounting Report. **(EXHIBIT 19)**

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldia Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr

EX - DUARTE JAQUEZ - 000030



**FGR**
FISCALÍA GENERAL
DE LA REPÚBLICA

account number          4800 of HSBC Mexico S.A. in the name of Union Ganadera and credited to "Valles Baca Hermanos S.P.R. de R.L. de C.V. The partners of said legal entity are linked to **DUARTE JAQUEZ.**

7.   **ECONOMIC SUPPORT NUMBER 376/2012 IN FAVOR OF UNION GANADERA IN THE AMOUNT OF $10,000,000, MEXICAN CURRENCY.**

On May 25, 2012, Economic Support number 376/2012 was signed between the State Government represented by the Secretary of the Treasury and the Secretary of Rural Development and as the other party Union Ganadera in the amount of $10,000,000.00, Mexican Currency, for an alleged purpose of acquiring food for bovine cattle **(EXHIBIT 13)**

On July 12, 2012, a payment in the amount of $10,000,000.00, Mexican Currency, was made through check number   8552; debited to account number          9005 of Santander Mexico S.A. in the name of the Secretary of the Treasury of the Government of the State of Chihuahua; and credited to account number          4800 of HSBC Mexico S.A. in the name of Union Ganadera.

According to the bank information found in the criminal case which was analyzed by a financial expert[10], it is confirmed that the money of the subsidy was not used according to its purpose, additionally it generated a benefit in favor of **DUARTE JAQUEZ** and/or people close to him. The latter can be proven after analyzing the transactions carried out, for example, on August 10, 2012, a payment in the amount of $1,360,000.00, Mexican Currency, was made through check number   9665; debited to account number          1800 of HSBC Mexico S.A. in the name of Union Ganadera and credited to "Valles Baca Hermanos S.P.R. de R.L. de C.V.". In this regard, the partners of said legal entity are connected to **DUARTE JAQUEZ**

---

[10] Technical Financial-Accounting Report. **(EXHIBIT 19)**

Avenida Insurgentes No.20 de la Glorieta de Insurgentes, Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/fgr

EX-DUARTE JAQUEZ - 000031



On August 13, 2012, another payment in the amount of $3,987,500.00, Mexican Currency, was made thorugh check number     0666; debited to account number          4800 of HSBC Mexico S.A. in the name of Union Ganadera; and credited to "Grupama" S.A. de C.V., with RFC GRU0109252R7. According to the investigation, this company is engaged in wholesale trade of fertilizers, pesticides and seeds for sowing, and not in the purchase of cattle food.

Another payment was made on August 28, 2012 in the amount of $2,652,500.00, Mexican Currency, by means of check number     0672; debited to account number          4800 of HSBC Mexico S.A. in the name of Union Ganadera; and credited to Francisco Javier Diaz Batrez. In this regard, this individual is designated by the Tax Administration Service (SAT) as an EFOS (Company that Bills Simulated Operations, due to its initials in the Spanish language)[11]

Finally, on August 29, 2012, a payment in the amount of $2,000,000.00, Mexican Currency, was made through check number     0673; debited to account number          4800 of HSBC Mexico S.A. in the name of Union Ganadera; and credited to "Promotora Ganadera del Real" S.A. de C.V., with RFC PGR960712UU7. This for the purchase made by Carlos Hermosillo of a property allocated to process beef from the partners of said entity.

From the analysis carried out by the undersigned of the criminal case, it is worth mentioning that the foregoing is corroborated with the statements rendered by witnesses 5M4GYUH19A/2019 and FE54HD7SHJW/2019.

---

[11] According to the Federal Tax Code, should the tax authority detect that a taxpayer has been issuing receipts without directly or indirectly having the assets, personnel, infrastructure or material capacity to render the services or produce, trade or deliver the goods covered by such receipts, or if the taxpayer is not found, there shall be assumed that the operations covered in such receipts are non-existent.

[...]

The effects of the publication of this list shall be to consider, for general purposes, that the operations listed in the tax receipts issued by the taxpayer in question do not generate nor have generated any tax effect.

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr

EX - DUARTE JAQUEZ - 000032



8.  **PAYMENT IN FAVOR OF FINANCIERA IN THE AMOUNT OF $8,000,000.00, MEXICAN CURRENCY, TO PURCHASE A REAL PROPERTY.**

On September 25, 2012, a payment in the amount of $8,000,000.00, Mexican Currency, mas made through wire transfer debited to account number 8637 of Santander Mexico S.A. in the name of the Secretary of the Treasury; and credited to account number 8360 of Banco Mercantil del Norte S.A. of Financiera.

According to the instructions of **DUARTE JAQUEZ**, his collaborators intended to justify said payment under the concept of acquisition in which they tries to reflect that the Government of Chihuahua purchased a urban property located at Calle Guillermo Prieto No. 4, by the corner with Calle Mercaderes, Hidalgo del Parral, Chihuahua.

From the investigations conducted by the technical body in charge of supervising the public expenditure in Chihuahua, this is, the State Superior Auditor, there is noted that the procedure carried out for the payment to be made was fraudulent, inasmuch as it breached the legal provisions related to the management of the public funds. **(EXHIBIT 3)**

From the analysis performed upon the records, there is stated that they lacked valid justification because on September 25, 2012, the Secretary of the Treasury made a wire transfer to account number 3603 in the amount of $8,000,000.00, Mexican currency, which was reflected, on that same date, in folio number 9040077, as there is specified in the account statement from September 01 to September 30, 2012 of account 363-7 from Banco Santander S.A., which holder is registered as GOB EDO CHIH SECRETARIA DE HACIENDA OBRA PUBLICA.

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr

EX-DUARTE JAQUEZ - 000033



On the same date, Hermosillo Arteaga signed a document whereby there was stated that he was receiving from the Government of Chihuahua an amount of $8,000,000.00, Mexican currency itemized as unsupported expenses for the acquisition of a real estate property to Financiera; however, there is no proof or supporting documentation to prove the purchase of the realty in that amount to its owner, Consuelo Garcia Chavez and Luz Maria Torres Garcia.

Therefore, there was no reason for the payment to be made to Financiera, inasmuch as there was no evidence that the property sellers requested so or that an agreement was executed between the Government of the State of Chihuahua and Financiera, or between the latter and the property sellers.

According to the bank accounts analyzed by a financial expert, the traceability[12] or route followed by the money confirms that the economic support was just a false pretense because the funds were not used for the purpose stipulated in the agreement and also generated a direct and immediate benefit for **DUARTE JAQUEZ**. For example, on October 31, 2012 a payment was made in the amount of $9,000,000.00, Mexican currency by means of Check number     0895; debited to account number        8360 from Banco Mercantil del Norte S.A. in the name of Financiera and credited to account number        0723 from "Akala", S.A. de C.V. S.F.P. in the name of Hermosillo Arteaga.

On that same date, two more deposits were made in account number        0723 from "Akala", S.A. de C.V. S.F.P. in the name of Hermosillo Arteaga, in the amounts of $5,000,000.00, Mexican currency and $6,000,000.00, Mexican pesos, which, added to the $9,000,000.00, Mexican currency stated above, summed the amount of $20,000,000.00, Mexican currency, amount that was deposited, on that same date, to account        2115 from HSBC Mexico S.A. in the name of "Union de Credito Progreso", S.A. de C.V., and was allocated to Trust number    4743 from

---

[12] Technical Financial-Accounting Report. **(EXHIBIT 19)**

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr

EX - DUARTE JAQUEZ - 000034



Banco Mercantil del Norte S.A. in the name of **DUARTE JAQUEZ** and Bertha Olga Gomez Fong. This information was extracted from an asset position statement filed by the person sought as he was the State Governor.

The foregoing is proven with the statements identified with as 56RT65PW7, Guillermina Hernandez Vazquez, FE54HD7SHJW/2019, who worked for the Secretary of the Treasury, reason why they have knowledge deemed to be sufficient to render a statement regarding the deviation of the funds as ordered by **DUARTE JAQUEZ** and operated by Hermosillo Arteaga.

9.  **ECONOMIC SUPPORT ITEMIZED WITH NUMBERS 384/2013 AND 0426/2013 IN FAVOR OF UNION GANADERA IN THE RESPECIVE AMOUNTS OF $250,000.00 AND $60,000.00. MEXICAN CURRENCY.**

Respectively, on April 1, 2013 and October 18, 2013, the Secretary of the Treasury issued checks in favor of Union Ganadera in the amounts of $250,000.00 and $60,000.00, Mexican currency. There was intended to unlawfully justify these payments by means of Economic Support Agreements itemized with numbers 384/2013 and 426/2013. The purpose thereof was to "compensate the costs of moving exhibition cattle to the San Marcos fair in the State of Aguascalientes", executed between the Government of Chihuahua, represented by the Secretary of the Treasury and the Secretary of Rural Development and the oft-cited Union Ganadera. **(EXHIBIT 14 and 15)**

Traceability[13] of the public funds confirms that this was not used according to the purpose for which there was established and also, generated a benefit in favor of **DUARTE JAQUEZ** or people closely related to him, because diverse operations were made, among which there stand out the payment made on April 2, 2013 in the amount of $80,000.00, Mexican currency, by means of Check number     0733,

---

[13] Technical Financial-Accounting Report. **(EXHIBIT 19)**

31

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr
EX - DUARTE JAQUEZ - 000035



debited to account number          4800 from HSBC Mexico, S.A. in the name of Union Ganadera and credited to the American Express Company; another made on April 15, 2013 debited to the same account and credited to "Brando", S.A. de C.V.; another in the amount of $80,000.00, Mexican currency, dated April 16, 2013 to the account held by Ana Lilia Nuñez Mendoza and finally another dated April 17, 2013 in the amount of $35,000.00, Mexican currency, credited to Diana Alejandra Renteria Ortiz. None of the above is related to or responsible for the programs for which the subsidy was allegedly created.

Furthermore, the documents mentioned were signed after delivery of the funds subject matter of the agreement, because on April 1, 2013, Check number          7178 was drafted in the amount of $250,000.00, Mexican currency, in favor of Union Ganadera and was reflected on April 2, 2013 in the account statement from April 01 to April 30, 2013 of account          1179 from BBVA Bancomer S.A., whose holder is registered as GOB EDO CHIH SECRETARIA DE HACIENDA.

The agreement that gave rise to the granting of funds is dated March 26, 2013 and it did not have the signatures required at the time the funds were delivered.

The above is corroborated with the statements rendered by witnesses 56RT65PW7, FE54HD7SHJW/2019, Guillermina Hernandez Vazquez, Irvin Jahir Ontiveros Vasquez, Fernando Tarango Mendoza, Carlos Sancen Contreras and PYRTEJ/2018, which have been included in the criminal case filed against **DUARTE JAQUEZ.**

10. **ECONOMIC SUPPORT ITEMIZED WITH NUMBER 995/2013 IN FAVOR OF UNION GANADERA IN THE AMOUNT OF $4,600,000.00, MEXICAN CURRENCY.**

On October 18, 2013, the Secretary of the Treasury delivered $4,600,000.00, Mexican currency to Union Ganadera; there was attempted to unduly justify this payment by means of Economic Support Agreement number 995/2013 dated

32

EX - DUARTE JAQUEZ - 000036



FGR
FISCALÍA GENERAL
DE LA REPÚBLICA

October 20, 2013 signed by the Government of Chihuahua, represented by the Secretary of the Treasury and the Secretary of Rural Development, and by Union Ganadera, in the amount stated. The purpose thereof was execution of the Program for Repopulation of Beef Cattle in the State". **(EXHIBIT 16)**

In this case, according to the information of the bank accounts analyzed by a financial expert[14], which was included in the criminal case and to which the undersigned had access, there is noted the path followed by the money delivered to Union Ganadera, which confirms the fraudulent procedure.

This derived from the fact that, from the 3 transfers of funds respectively made on October 31, 2013, in the amount of $2,049,893.71, Mexican currency; on November 22, 2013 in the amount of $1,586,467.10, Mexican currency and January 7, 2014 in the amount of $562,540.66, Mexican currency, debited to account number        4800 from HSBC Mexico, S.A. in the name of Union Ganadera and credited to account number        6355 from BBVA Bancomer S.A. in the name of Union Ganadera.

The above is added to other operations which together make the legality of the preceding dubitable, such is the case of the payment made on January 6, 2014 in the amount of $562,540.66, Mexican currency in favor of "Brando", S.A. de C.V., corporation bound to **DUARTE JAQUEZ,** which was corroborated through investigations conducted by the authorities of the Office of the Prosecutor of Chihuahua, among which are the search proceedings carried out at the domicile inhabited by the former governor in Hidalgo del Parral, Chihuahua.

The above is corroborated with the statements rendered by witnesses 56RT65PW7, 5M4GYUH19A/2019, Guillermina Hernandez Vazquez, and FE54HD7SHJW/2019

---

[14] Technical Financial-Accounting Report. **(EXHIBIT 19)**

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldia Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr

EX - DUARTE JAQUEZ - 000037



11. **ECONOMIC SUPPORT GRANTED BY MEANS OF THE SIGOS – SFI INTERFACE. SUBSIDY ITEMIZED WITH FOLIO NUMBERS CP-S-27151/2014, CP-S-27152/2014 AND CP-S-27153/2014 IN FAVOR OF UNION GANADERA IN THE AMOUNT OF $5,500,000.00, MEXICAN CURRENCY.**

On November 28, 2014, the Secretary of the Treasury delivered to Union Ganadera an amount of $5,500,000.00, Mexican currency. There was intended to justify this payment by means of the simulation of 3 Economic Support Processes itemized with folio numbers CP-S-27151/2014, CP-S-27152/2014 and CP-S-27153/2014, for a subsidy in the acquisition of oat, corn and bean in support of the producers who were members of Union Ganadera, made in November, 2014. **(EXHIBIT 17)**

There is discrepancy between the purpose of the subsidy granted and the budgetary allocation authorized by the Secretary of the Treasury, this derived from the fact that, on November 27, 2014, Adrian Dozal Dozal, Director of Administrative Services, drafted and signed the documents denominanted "Government of the State of Chihuahua, Subsidies", contained in Official Letter Folio number 32-3079/2014, Official Letter Folio number 32-3080/2014 and Official Letter Folio number 32-3081/2014, stated in the same budgetary allocation, debited to the Budgetary Program 1301700 Definition and Conduction of Rural Development Planning, activity 2, component 1.

The above is corroborated with the statements rendered by witnesses 56RT65PW7, 67HD6JA9K2S/201, FE54HD7SHJW/2019, Oscar Rene Leos Rodriguez and Sandra Luz Esparza Dominguez, contained in the criminal case.

From the 11 items explained above, there is noted that, derived from the investigations conducted by the authorities of the State of Chihuahua, there is stated that the official files do not contain evidence corroborating the acquisition of goods or services subject matter of the agreements mentioned and there were made the payments referred to oat, corn and bean [sic], nor were they delivered to their beneficiaries, corroborating veracity of the subsidies [sic].

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr

EX - DUARTE JAQUEZ - 000038



FISCALÍA GENERAL
DE LA REPÚBLICA

Added to this, according to the statements posed by witnesses, before the lack of supporting documentation justifying disbursement of the funds deviated, there was unduly decided to debit the expenditure derived from such items to the account denominated "*Cuenta Deudora* of the Government Accounting", so as not to make evident the bad management of the funds. The account denominated *cuenta deudora* should only be used before a serious State emergency making necessary to make an expenditure without support, as there could be a weather contingency, a natural disaster, etc.

The expenditure debited to the *cuenta deudora* was provisionally registered until there was managed to justify the expense. The public funds deviated by **DUARTE JAQUEZ** was debited to the *cuenta deudora*, because as stated before, upon delivery of the funds, there was no support whatsoever.

Affectation to the State patrimony with the payments made in the 11 procedures, are reflected in the diverse bank account statements contained in the criminal case filed against **DUARTE JAQUEZ** as follows:

| Payment date | Total amount | Withdrawal account number | Banking institution | Holder of the withdrawal account | Total amount | Deposit account number | Banking institution | Holder of the deposit account |
|---|---|---|---|---|---|---|---|---|
| 17/06/201 1 | $ 582,965.80 | | Banco Santander, S.A. | Secretary of the Treasury | $582,965.80 | | HSBC Mexico, S.A. | Union Ganadera |
| 10/01/201 2 | $12,000,000.0 0 | | Banco Santander, S.A. | Secretary of the Treasury | $12,000,000.0 0 | | Banco Santander, S.A. | Financiera |
| 10/01/201 2 | $16,000,000.0 0 | | Banco Santander, S.A. | Secretary of the Treasury | $36,000,000.0 0 | | HSBC Mexico, S.A. | Union Ganadera |
| 25/01/201 2 | $10,000,000.0 0 | | | | | | | |
| 15/03/201 2 | $10,000,000.0 0 | | | | | | | |
| 25/09/201 2 | $ 8,000,000.00 | | Banco Santander, S.A. | Secretary of the Treasury | $8,000,000.00 | | Banco Mercantil del Norte, S.A. | Financiera |
| 04/10/201 2 | $ 9,210,000.00 | | Banco Santander, S.A. | Secretary of the Treasury | $12,000,000.0 0 | | Banco Santander, S.A. | Financiera |
| 04/10/201 2 | $ 2,790,000.00 | | | | | | | |
| 25/04/201 2 | $ 2,692,288.00 | | Banco Santander, S.A. | Secretary of the Treasury | $ 2,692,288.00 | | To be confirmed | Union Ganadera |

35

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr
EX - DUARTE JAQUEZ - 000039



FGR
FISCALÍA GENERAL
DE LA REPÚBLICA

| | | | Banco | | | B3 | HSBC | |
|---|---|---|---|---|---|---|---|---|
| 09/01/2012 | $ 5,000,000.00 | | Banco Santander, S.A. | Secretary of the Treasury | $ 5,000,000.00 | | HSBC Mexico, S.A. | Union Ganadera |
| 12/07/2012 | $10,000,000.00 | | Banco Santander, S.A. | Secretary of the Treasury | $10,000,000.00 | | HSBC Mexico, S.A. | Union Ganadera |
| 18/10/2013 | $ 4,600,000.00 | | Banco Santander, S.A. | Secretary of the Treasury | $ 4,600,000.00 | | HSBC Mexico, S.A. | Union Ganadera |
| 01/04/2013 | $ 250,000.00 | | BBVA Bancomer, S.A. | Secretary of the Treasury | $ 250,000.00 | | HSBC Mexico, S.A. | Union Ganadera |
| 18/10/2013 | $ 60,000.00 | | BBVA Bancomer, S.A. | Secretary of the Treasury | $ 60,000.00 | | HSBC Mexico, S.A. | Union Ganadera |
| 28/11/2014 | $ 1,500,000.00 | | BBVA Bancomer, S.A. | Secretary of the Treasury | $ 5,500,000.00 | | HSBC Mexico, S.A. | Union Ganadera |
| 28/11/2014 | $ 1,500,000.00 | | | | | | | |
| 28/11/2014 | $ 2,500,000.00 | | | | | | | |
| GRAND TOTAL | $ 96,685,253.80 | | | | | | | |

The $96'685,253.80, Mexican currency, previously cited, was delivered by the Government of Chihuahua by means of 14 banking operations between 2011 and 2014, to bank accounts held by the benefitted corporations, which were controlled by **DUARTE JAQUEZ** persons of trust, his accountant Guadalupe Medina Aragon and Hermosillo Arteaga, his partner.

Thereafter, the public funds were dispersed to other bank accounts for them to be allocated for non-public purposes such as personal expenses of **DUARTE JAQUEZ** (such as his tax payments), and expenses related to other corporations owned by himself and his family and the purchase of real estate associated to his person; this is, on his own benefit.

Regarding registration of the authorized signatures related to the bank accounts held by Union Ganadera, Hermosillo Arteaga appears in 8 of them; Guadalupe Medina Aragon in 2 and **DUARTE JAQUEZ** in 1. Thence, only 2 persons worth the absolute trust of the former governor and himself had access to the bank accounts that received such large amounts.

36



Furthermore, **DUARTE JAQUEZ**, led the public money-deviation acts for his own benefit, taking advantage of the structure of the Government of Chihuahua and his hierarchical position as Head of the Executive Branch by using personnel under his command and the means and instruments belonging to the public entities headed by himself.

All proceedings were verified by the State Superior Auditor, technical body in charge of supervising the State public expenditure which became fraudulent inasmuch as there were breached several legal provisions related to the management of public funds, since according to the aforementioned State Superior Auditor, granting funds to the corporation in question was undue, owing to the existence of a conflict of interest, because at the time the agreement was executed, **DUARTE JAQUEZ** acted as Constitutional Governor of the State of Chihuahua and at the same time as Chairman of the Board of Directors of Union Ganadera. This conflict of internest derived in personal profit or undue benefit for **DUARTE JAQUEZ**.

One more thing that must be mentioned is that upon carrying out certain conduct, **DUARTE JAQUEZ** performed actions leading to prove the existence of a group of persons engaged in the organized and reiterated performance of criminal acts; in this case, such acts consisted in the deviation and use of public funds by using the structure of the Government of Chihuahua.

Said individuals became hierarchically organized with **DUARTE JAQUEZ**, who performed leading tasks, and the people bound to himself, operating tasks within the criminal structure formed thereby to loot the State-owned assets, involving Public Officials and persons outside its structure which purpose was the organized and reiterated performance of criminal acts; specifically the deviation and use of public money by using the structure of the Government of the State of Chihuahua.

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr

EX - DUARTE JAQUEZ - 000041



**FGR**
FISCALÍA GENERAL
DE LA REPÚBLICA

Specifically, the aim at perpetrating crimes by this group of individuals was reflected in the commission of the criminal conduct that gave rise to this investigation which consisted of 11 fraudulent administrative proceedings carried out between 2011 and 2014 to deviate funds of the Government of the State of Chihuahua to Union Ganadera and to Financiera, corporations on which **DUARTE JAQUEZ** had personal and business interests as there has been summarized above.

It is worthy of note that the criminal case contains more than 20 statements rendered by persons who referred that from 2010 to 2016, years in which **DUARTE JAQUEZ** had the capacity as Governor of the State of Chuhuahua, they worked for the Secretary of the Treasury and the Secretary and Rural Development; therefore, they know for a fact the conduct subject matter of the investigation. Thus, there was determined to highlight the statement rendered by Guadalupe Siqueiros Tarango, who acted as Secretary from 2005 to October 2010, then as President since 2017. Said person emphasizes that Union Ganadera was managed, from 2010 to 2016 by **DUARTE JAQUEZ**, Hermosillo Arteaga and Guadalupe Medina Aragon; he added that they were the only persons who had interference in managing the funds and knew how money flowed.

Specifically, from the information analyzed by the undersigned, there is stated that witnesses identified with codes N52S1-6FDX37M/2017, 56RT65PW7, KA5P23/2019, 5M4GYUH19A/2019, who were part of the public administration of Chihuahua as **DUARTE JAQUEZ** acted as its governor, do coincide on stating that within the performance of their duties and actions, they were able to know directly the existence and operation of a structure headed by the former governor, engaged in taking advantage of the State public funds for their own benefit; this was operated by means of an integral organization which became established since 2012 and was comprised by top-level public officials as the then Secretary of the Treasury and the then Secretary of Rural Development. Therein, the following names stand out: Javier Garfio Pacheco, Pedro Hernandez Flores, Marcelo Gonzalez Tachiquin, Carlos Gerardo Hermosillo Arteaga, Gerardo Villegas Madriles, Sergio Medina, Antonio Tarin, Santiago Moreira, Everardo Medina, Manuel Bremer, Sergio Jurado, Ricardo Yañez Herrera y Jesus Alonso

38

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldia Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr

EX - DUARTE JAQUEZ - 000042



Duarte Garcia. Likewise, from 2012 on, some entrepreneurs had a very close relationship with the former governor, among whom are Jose Yañez, Jaime Galvan, Parrish Cardenas, Anuar Elias, Gabriel Aude, Eduardo Gonzalez and Eugenio Baeza.

Likewise, there is the identification proceeding rendered on October 8, 2019, by the person of reserved identity with individualization control number 56RT65PW7, in which they recognize **DUARTE JAQUEZ,** as the person who appears in the photograph marked with number 5. **(EXHIBIT 20)**

Pursuant to the provisions of article 10, subsection 3 of the Treaty of Extradition signed between the United States of America and the United Mexican States, the information obtained in relation to the physical features of the accused person are provided hereafter:

### PHYSICAL FEATURES

**CESAR HORACIO DUARTE JAQUEZ** is Mexican; date of birth          1963; Sole Population Registry Code                         QS05. A photograph is attached for further illustration. **(EXHIBIT 21)**

### CONCLUSION

The evidentiary material summarized above, jointly weighed, leads to consider that it is appropriate and sufficient to establish that **DUARTE JAQUEZ,** who acted as Constitutional Governor of the State of Chihuahua and who had a wide conferral of powers and obligations such as those related to the management of the State-owned assets to meet the purposes for which they are allocated, took advantage of these because in accordance with other public officials and individuals outside the Public Office, divided roles and undertook activities so as to deviate public funds in the amount of $96,685,2536.80, Mexican currency, between 2011 and 2014, from accounts held by the Secretary of the Treasury by means of 11 fraudulent administrative proceedings in which 17 payments were made to Union Ganadera and Financiera.

39



In fact, the term "deviate", used in the criminal definition of the crime charged, must be understood as the change of the legal end made by the accused person, which was in fact materialized, because instead of using the funds to meet the needs derived from the State development, as stipulated in the Political Constitution of the United Mexican States and the Law on Expenditure Budget, Government Accounting and Public Expenditure of the State of Chihuahua, these were used for the personal benefit of **DUARTE JAQUEZ,** his family and people closely related to him.

Such was the control over Union Ganadera, that **DUARTE JAQUEZ** himself filed his tax statements before the Tax Authority of the country, as there happened on May 9, 2014 when the latter filed the yearly tax statement of Union Ganadera corresponding to corporate year 201325 [sic].

From the preceding, there may be determined that the deviation of the funds took place as follows:

1.  $32,000,000.00, Mexican currency, to a corporation of which **DUARTE JAQUEZ** is a founder and a majority shareholder (with more than 98% of the A-series shares and 93.35% of the B-series shares); this is, Financiera, and

2.  $64,685,253.80, Mexican currency to another corporation over which **DUARTE JAQUEZ** has the asset control; this is, Union Ganadera.

Once the money was in the accounts of **DUARTE JAQUEZ,** payments were made for personal benefits of the latter, such as the acquisition of cattle for his ranches, properties, and payments to personal accounts of his wife, Bertha Olga Gomez Fong and tax payments.

40

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/fgr
EX - DUARTE JAQUEZ - 000044



The money deviated was subject to legal availability and thus, was to be managed by the implicated Public Officials, since, as a result of their duties at different positions held within the State bureaucracy, they had powers that enabled them to make binding decisions in relation to the management and allocation of the funds to make them be allocated outside the treasury; this is the case of the State Governor, the Secretary of the Treasury, the General Director of Public Investment Programs under the Secretary of the Treasury, the Chief Head of Programming and Payment Control of the Secretary of the Treasury, the Secretary of Rural Development and the Director of Agricultural Promotion of the Secretary of Rural Development, and the fact is, as already stated, that part of the duties conferred to **DUARTE JAQUEZ** as head of the Executive Branch was the management of the assets owned by the state.

Thence, the conduct perpetrated by **DUARTE JAQUEZ**, jeopardizes legally protected rights highly valuable for the Mexican State, such as the national economy, society and therewith, public peace because it substantially impacts the economy of the country. The conducts were in turn carried out by public officials at all levels, such as the person sought, who acted in his capacity as Constitutional Governor of the State of Chihuahua.

Lastly, there must be mentioned that I have reviewed the case evidence and it is deemed sufficient, pursuant to the Mexican laws, to justify the trial proceeding of **DUARTE JAQUEZ** for the crimes for which his extradition is being requested.

Due to what has been stated above, the Government of the United States of America must grant the extradition of **CESAR HORACIO DUARTE JAQUEZ** to the Government of the United Mexican States to be tried for the crimes of Embezzlement and Conspiracy, both aggravated. In the Mexican courts, he may bring defense and be assisted by a self-appointed attorney; should he require one, the State shall appoint a Public Defense so

41

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldía Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr
EX - DUARTE JAQUEZ - 000045



as to guarantee an adequate defense. Added to that, his human rights, acknowledged in the Political Constitution of the United Mexican States and International Treaties the Mexican State is a party of shall be guaranteed as well as the rights for his protection, which exercise shall not be restricted or suspended.

The above has been issued for the pertinente legal effects.

Mexico City, December 12, 2019.

**NAME AND SIGNATURE**

**DAISY ALVAREZ ZAVALA**
**HEAD EXECUTIVE PROSECUTOR ASSIGNED TO THE DIVISION**
**OF EXTRADITIONS OF THE GENERAL DIVISION OF**
**INTERNATIONAL PROCEEDINGS OF THE OFFICE OF THE**
**PROSECUTOR GENERAL OF THE REPUBLIC**

Avenida Insurgentes No.20 de la Glorieta de Insurgentes,
Col. Roma Norte, Alcaldia Cuauhtemoc, CDMX, CP 06700. www.gob.mx/pgr
EX - DUARTE JAQUEZ - 000046



**FGR**
FISCALÍA GENERAL
DE LA REPÚBLICA

[A SEAL THAT READS: MEXICAN COAT OF
ARMS,
UNITED MEXICAN STATES,
MINISTRY OF THE INTERIOR,
GOVERNMENT UNIT]

**00973**

[A HOLOGRAM
THAT READS:
MINISTRY OF THE
INTERIOR]

**ALEJANDRO LOPEZ GONZALEZ**, ADJUNCT GENERAL DIRECTOR OF THE OFFICIAL
GAZETTE OF THE FEDERATION, ASSISTING THE HEAD OF THE GOVERNMENT UNIT,
GROUNDED ON ARTICLES 11 (I) AND (II) AND 12 LAST PARAGRAPH OF THE INTERNAL
REGULATIONS OF THE MINISTRY OF THE INTERIOR, HEREBY **CERTIFIES:** THAT DAISY
ALVAREZ ZAVALA WAS CHIEF EXECUTIVE PROSECUTOR ASSIGNED TO THE DIVISION
OF EXTRADITIONS OF THE GENERAL DIVISION OF INTERNATIONAL PROCEEDINGS
UNDER THE OFFICE OF THE PROSECUTOR GENERAL OF THE REPUBLIC ON
DECEMBER 12, 2019 AND THE SIGNATURE APPEARING IN THE PRESENT DOCUMENT
IS HER OWN.

NAME OF THE RESPONSIBLE ENTITY: OFFICE OF THE PROSECUTOR GENERAL OF
THE REPUBLIC
TYPE OF DOCUMENT: SWORN AFFIDAVIT
MEXICO CITY ON DECEMBER 12, 2019
REGISTRATION No.: **11142**
This Secretariat accepts no responsibility or liability whatsoever for the contents of this document.

WAV/DGL/ALG

[QR CODE]

[SIGNED]
CODE: **MTTDP61BJ**
Authenticity of this legalization and its electronic signature may be verified at:
www.dicoppu.gobernacion.gob.mx/registro

| [A SEALTHAT READS:<br>MEXICAN COAT OF ARMS<br>UNITED MEXICAN STATES<br>MINISTRY OF FOREIGN AFFAIRS<br>CUAUHTEMOC DELEGATION] | [A SEAL THAT READS:<br>MEXICAN COAT OF ARMS<br>UNITED MEXICAN STATES<br>CONSULAR SERVICE OF<br>LEGALIZATIONS] |
|---|---|

F8
FOLIO **628910**

**THE MINISTRY OF FOREIGN AFFAIRS HEREBY CERTIFIES:**
That ALEJANDRO LOPEZ GONZALEZ WAS THE ADJUNCT GENERAL DIRECTOR
OF THE OFFICIAL GAZETTE OF THE FEDERATION ASSISTING THE HEAD OF THE
GOVERNMENT UNIT UNDER THE MINISTRY OF THE INTERIOR ON DECEMBER
12, 2019 and that the preceding signature is his own.
MEXICO CITY ON DECEMBER 13, 2019.

BY ORDER OF THE CLERK
THE REPRESENTATIVE

[SIGNED]
ALEJANDRA SANCHEZ ARRIOLA

This Secretariat accepts no responsibility or liability
whatsoever for the contents of this document

# ATTACHMENT A

EX - DUARTE JAQUEZ - 000048

# I.
# INTRODUCTION

*Cesar Horacio Duarte Jaquez* acted as the **Constitutional Governor of the State of Chihuahua** from October 4, 2010 to October 3, 2016 **with the obligation of managing the State assets**, as set forth in Article 93 (XXXIV) of the Political Constitution of the State of Chihuahua, **with efficiency, effectiveness, economy, transparency and honesty to achieve their intended goals**, and **to use them impartially**, as enshrined in Article 134, paragraph 1, of the Political Constitution of the United Mexican States, always **binding to the guidelines, norms, strategies, and objectives, based on the principles of efficiency, efficacy, economy, honesty, rationality, austerity, control, accountability, gender equality and transparency in managing public funds so as to meet the needs of the State development**, as provided for by Article 5, paragraph 1, of the Law on Expenditure Budget, Government Accounting and Public Expenditure for the State of Chihuahua.

As he acted as the *Governor of the State of Chihuahua*, **Cesar Horacio Duarte Jaquez was also a shareholder and Chairman of the Board of Directors of the legal entity denominated *Union Ganadera Regional General Division del Norte*,** according to registration from the National Agriculture and Livestock Registry dated May 24, 2007 through Resolution number 110.04.-GC30/07, folio 8-1-3, thus having sole control over the assets of said company. **Also, he was the founder and majority shareholder of *Financiera Division del Norte, S.A. de C.V. SOFOM, ENR*,** holding 98% of the A-series shares comprising its capital stock; this is 5,900 of the 6,000 total shares; as well as 93.35% of the B-series shares; this is, 28,940 of the 31,000 total shares, according to the registration in the Public Registry of Property and Commerce for the State, under electronic commercial file number 24139*10 (ATTACHMENT 3).

*Cesar Horacio Duarte Jaquez* owned, while acting as Governor, several companies, businesses or corporations of which he shared ownership with some of his family members. Regarding this issue, he acts as shareholder of *"Grupo Inmobiliario del Norte, S.A. de C.V."* (along with his brothers **Ricardo, Alejandro** and **Mario**, surnamed Duarte Jaquez); shareholder of *"Ganadera El Saucito Balleza S.P.R. de R.L. de C.V."* (along with his wife, **Bertha Gomez Fong;** their children **Cesar Adrian, Bertha Isabel, Olga Sofia**, surnamed **Duarte Gomez**; and his former sister-in-law, **Blanca Estela Alvarez**); and shareholder of *"Financiera de la Division del Norte S.A. de C.V. SOFOM ENR."*

*Cesar Horacio Duarte Jaquez* had a business bond with **Carlos Gerardo Hermosillo Arteaga**[1]. Both were shareholders at Financiera Division del Norte, SA de CV SOFOM, ENR and at Union Ganadera Division del Norte. Regarding the last company, **Hermosillo Arteaga** acted as its Legal Representative, whereas **Duarte Jaquez** was the Chairman of the Board of Directors.

| NAME | NUMBER OF SHARES | SERIES | AMOUNT |
|---|---|---|---|
| Cesar Horacio Duarte Jaquez | 5,900 | A | $5,900,000 |
| Carlos Gerardo Hermosillo Arteaga | 50 | A | 50,000 |
| Union Ganadera Regional Division del Norte | 50 | A | 50,000 |
| TOTAL | 6,000 | A | $6,000,000 |

| NAME | NUMBER OF SHARES | SERIES | AMOUNT |
|---|---|---|---|
| Cesar Horacio Duarte Jaquez | 28,940 | B | $28,940,000 |
| Carlos Gerardo Hermosillo Arteaga | 1,960 | B | $1,960,000 |
| Union Ganadera Regional Division del Norte | 100 | B | $1,000,000 |
| TOTAL | 31,000 | B | $31,000,000 |

---

[1] He died on May 20, 2017 by the Township of Valerio, on the short highway to Parral, Chihuahua, derived from a neurogenic shock with laceration of temporal and parietal lobes due to a car accident; he was hit on the head, according to the records of Investigation File 32-2017-00829.

1

Sworn statement

In addition, **Hermosillo Arteaga** worked as a public official in several different offices of the *Government of the State of Chihuahua* during **Duarte Jaquez** term from **2011 to 2015**.

| | 2010 | 2011-2012 | 2012-2013 | 2013-2015 | 2016 |
|---|---|---|---|---|---|
| *Cesar Horacio Duarte Jaquez* | | *Governor of the State of Chihuahua* | | | |
| *Carlos Gerardo Hermosillo Arteaga* | | *Director of the state-controlled entity denominated Trust for the Promotion of Productive Activities in the State of Chihuahua of the Secretary of the Treasury for the State of Chihuahua* | *Director General of Administration of the Secretary of the Treasury for the State of Chihuahua* | *Chairman of the Central Board of Water and Sanitation for the State of Chihuahua* | |

Thus, derived from its activities aimed at meeting the needs and demands of society, the *Government of the State of Chihuahua* enters into agreements for economic support along with contracts with various natural persons and legal entities, using public funds.

However, according to both the local and federal constitutions, and their secondary laws, government officers may not make use of public assets at their discretion or whim. Therefore:

**(A)** All officials of the *Government of the State of Chihuahua,* especially the Governor as the head of the Executive Branch, are obligated to:

    **(01)** Manage public assets with *efficiency, efficacy, economy, transparency, and honesty* to achieve their intended goals, as set forth in Article 93 (XXXIV), of the *Political Constitution of the State of Chihuahua*, and Article 134, paragraph 1, of the *Political Constitution of the United Mexican States.*

    **(02)** Make *impartial* use of the *public funds* for which they are responsible, as provided in <u>Article 83, paragraph 2</u>, of the Political Constitution of the United Mexican States.

    **(03)** Allocate public funds according to guidelines, norms, strategies, and objectives based on the principles of efficiency, efficacy, economy, honesty, rationality, austerity, control, accountability, gender equality and transparency in managing public funds **so as to meet the needs of the State development**, pursuant to the provisions of Article 5, paragraph 1, of the Law on Expenditure Budget, Government Accounting, and Public Expenditure for the State of Chihuahua.

**(B)** All budget-related payments made by public officials must be ***duly justified and proven***, as stipulated in <u>Articles 51, paragraph 1, and 54, (III)</u>, of the aforementioned *Law on Expenditure Budget, Government Accounting, and Public Expenditure for the State of Chihuahua.*

**(C)** To safeguard the lawfulness, honesty, loyalty, impartiality, and efficiency that all public officials must observe in the performance of their employment, position or commission, regardless of their duties and labor rights, pursuant to sections XIV and XVIII of Article 23 of the *Law on Responsibilities of Public Officials for the State of Chihuahua,* they shall be obligated to *abstaining from unduly requesting, accepting or receiving personally or by means of a third party, money or other gratuity or service for themselves or for a third party,* or accepting a promise to do or not do something fair or unfair, related to their duties, even up to one year after the exercise of their duties has concluded. But above all, abstaining from causing damages or losses, derived from their acts or omissions, to the State or Municipal Public Treasury or

EX - DUARTE JAQUEZ - 000050

Sworn statement

obtaining any personal or family profit in the performance of their public duties and from making unlawful use of either state or municipal funds.

(D) All state public officials, especially the Governor of the State of Chihuahua, must abstain from entering into agreements or contracts, or making public expenditure, subject to conflict of interest, given that they are prohibited from *obtaining a personal or family profit in the performance of their public duties*, as well as from *making unlawful use of state or municipal funds*, as expressly stipulated in the previously mentioned section XVIII of Article 23 of the *Law on Responsibilities of Public officials in the State of Chihuahua*.

(E) Furthermore, pursuant to the first paragraph of Article 47 and article 49 (III) of the *Law on Expenditure Budget, Government Accounting, and Public Expenditure for the State of Chihuahua*, "*budget-related payments shall be justified and proven using the respective original documents, which must meet applicable legal requirements*" and "*the Secretary shall be responsible for ensuring that payments made in accordance with approved budgets are completed subject to the following requirements: III. That they have been duly justified and proven using the respective original documents, or respective copies thereof, provided that it involves investments agreed with the federal government; justifications shall be understood as provisions and legal documents determining the obligation of making a payment, and proof shall be understood as those documents serving as proof of the transfer of the corresponding sums of money. Should investments agreed with the federal government be involved, the requirement that this section stipulates will be met by attaching the respective copies thereof.*"

(F) However, in addition, the State Executive Branch has the obligation of corroborating that the support granted be used for the authorized purpose, in order to comply with the provisions in the second paragraph of Article 58 of the *Law on Expenditure Budget, Government Accounting, and Public Expenditure for the State of Chihuahua*, which states that "*the State Executive Branch shall verify the way in which subsidies granted to municipalities, institutions or private parties are to be invested; in turn, the latter shall provide the Secretary, within the scope of their respective Jurisdiction, with the information on the way in which they are to be applied.*"

In August 2018, derived from the review performed by the *Secretary of the Treasury* upon the accounting of the *Government of the State of Chihuahua*, multiple million-peso payments were identified during *2011, 2012, 2013, and 2014* as they were made to the legal entities denominated *Union Ganadera Regional Division del Norte del Estado de Chihuahua*, and *Financiera Division del Norte S.A. de C.V. SOFOM ENR.* These corporations, as previously mentioned, are directly linked to *Cesar Horacio Duarte Jaquez*, former Governor of the State of Chihuahua and main administrator of the State public patrimony.

*Serious irregularities* were identified in that review demonstrating that *fraudulent administrative procedures* were used to transfer public money to corporations associated to the then *Governor Duarte Jaquez*, among which there was found:

(A) That most payments were made on the basis of alleged economic/financial support agreements and a loan agreement with interest (loan), executed at various times in 2011, 2012, 2013 and 2014, with the aforementioned legal entities appearing as parties involved, as well as the state-controlled entity denominated State Trust for the Promotion of Productive Activities in Chihuahua under the *Secretary of Economy* (FIDEAPECH), the *Secretary of Rural Development* and the *Secretary of the Treasury* for the State of Chihuahua;

(B) That the administrative procedures to make the payments bear multiple irregularities: **incomplete documentation, unfinished processes, inconsistent dates, itemizations and amounts; violation of legal procedures for granting subsidies (economic/financial support) and contracting,**

---

FGE                                                                                                              3

Sworn statement

which make evident a **clear conflict of interest** between the then Governor, in his capacity as the main administrator of the State patrimony, and the aforementioned corporations in which he also controlled their equity share; and

**(C)**       That mainly, in the archives of the State Secretaries involved, there is no evidence whatsoever regarding compliance with the economic and financial support granted, or with the executed loan agreement by the entities associated with the former governor, Cesar Horacio Duarte Jaquez. In other words, there is no evidence that the state money in question had been used for public purposes.

*The payments* made *to entities linked to the former governor, Cesar Horacio Duarte Jaquez,* add up to ***$96,685,253.80*** *(ninety-six million, six hundred eighty-five thousand, two hundred fifty-three pesos, 80/100, Mexican currency)*, through 12 transactions that took place in 2011, 2012, 2013 and 2014.

More specifically, *$64,685,253.80 (sixty-four million, six hundred eighty-five thousand, two hundred fifty-three pesos, 80/100, Mexican currency)* was transferred to *Union Ganadera Regional Division del Norte del Estado de Chihuahua,* and *$32,000,000.00 (thirty-two million pesos, 00/100, Mexican currency)* to *Financiera Division del Norte S.A. de C.V. SOFOM ENR.* The above is further described in the table below:

| PAYMENT DATE | PAYMENT TERMS | TOTAL AMOUNT | OFFICE THAT PROVIDED THE FUNDS | BENEFICIARY |
|---|---|---|---|---|
| 17/06/2011 | $ 582,965.80 | $ 582,965.80 | Secretary of the Treasury | UNION GANADERA REGIONAL DIVISION DEL NORTE |
| 04/10/2011 | $ 9,210,000.00 | $12,000,000.00 | Secretary of the Treasury | FINANCIERA DE LA DIVISION DEL NORTE |
| 04/10/2011 | $ 2,790,000.00 | | | |
| 10/01/2012 | $12,000,000.00 | $12,000,000.00 | Secretary of the Treasury | FINANCIERA DE LA DIVISION DEL NORTE |
| 10/01/2012 | $16,000,000.00 | $36,000,000.00 | Secretary of the Treasury | UNION GANADERA REGIONAL DIVISION DEL NORTE |
| 25/01/2012 | $10,000,000.00 | | | |
| 15/03/2012 | $10,000,000.00 | | | |
| 25/09/2012 | $ 8,000,000.00 | $ 8,000,000.00 | Secretary of the Treasury | FINANCIERA DE LA DIVISION DEL NORTE |
| 25/04/2012 | $ 2,692,288.00 | $ 2,692,288.00 | Secretary of the Treasury | UNION GANADERA REGIONAL DIVISION DEL NORTE |

| PAYMENT DATE | PAYMENT TERMS | TOTAL AMOUNT | OFFICE THAT PROVIDED THE FUNDS | BENEFICIARY |
|---|---|---|---|---|
| 09/01/2012 | $ 5,000,000.00 | $ 5,000,000.00 | Secretary of the Treasury | UNION GANADERA REGIONAL  DIVISION DEL NORTE |
| 12/07/2012 | $10,000,000.00 | $10,000,000.00 | Secretary of the Treasury | UNION GANADERA REGIONAL  DIVISION DEL NORTE |
| 18/10/2013 | $ 4,600,000.00 | $ 4,600,000.00 | Secretary of the Treasury | UNION GANADERA REGIONAL  DIVISION DEL NORTE |
| 01/04/2013 | $ 250,000.00 | $ 250,000.00 | Secretary of the Treasury | UNION GANADERA REGIONAL  DIVISION DEL NORTE |
| 18/10/2013 | $ 60,000.00 | $ 60,000.00 | Secretary of the Treasury | UNION GANADERA REGIONAL  DIVISION DEL NORTE |
| 28/11/2014 | $ 1,500,000.00 | $ 5,500,000.00 | Secretary of the Treasury | UNION GANADERA REGIONAL  DIVISION DEL NORTE |
| 28/11/2014 | $ 1,500,000.00 | | | |
| 28/11/2014 | $ 2,500,000.00 | | | |

GRAND TOTAL        $96,685,253.80

The irregular procedures and transactions to make payments to these companies linked to the former governor, ***Cesar Horacio Duarte Jaquez,*** include:

---

EX - DUARTE JAQUEZ - 000052

Sworn statement

(A) On *June 1, 2011*, the *Secretary of Rural Development*, the *Secretary of the Treasury*, and *Union Ganadera Regional Division del Norte* executed *Economic Support Agreement 352/2011*, in the amount of *$582,965.80 (five hundred eighty-two thousand, nine hundred sixty-five pesos, 80/100, Mexican currency), with the purpose of acquiring the equipment necessary for artificial beef cattle insemination in support of the producers affiliated to Union Ganadera Regional Division del Norte.* The money was transferred on *June 16, 2011*, by means of a check issued by *Banco Santander* to *Union Ganadera Regional Division del Norte*, from an account held by the *Secretary of the Treasury* for the State of Chihuahua, identified as "*Public Work*". However, there is no evidence whatsoever in the official files regarding the acquisition of that equipment or its delivery to the beneficiaries to corroborate veracity thereof.

(B) On *October 4, 2011*, the *Secretary of the Treasury* made a first payment to *Financiera Division del Norte S.A. de C.V. SOFOM ENR* from *Economic Support number 6800685* through two checks in the amount of *$2,790,000.00 (two million, seven hundred ninety thousand pesos, 00/100, Mexican currency)* and *$9,210,000.00 (nine million, two hundred ten thousand pesos, 00/100, Mexican currency)*, from a bank account held by that office in Banco Santander. There was intended to unlawfully justify those payments through *significant agreements denominated action concretization agreements, which purpose was to acquire beef heifer in the State of Chihuahua*, as executed by the Government of the State of Chihuahua, represented by the Secretary of the Treasury and the Secretary of Rural Development, and a company called *Union Ganadera Regional de Chihuahua*, and the previously mentioned *Union Ganadera Regional Division del Norte*. However, there is no evidence whatsoever in the official files regarding purchase or delivery of beef heifer to the beneficiaries to corroborate veracity of the agreements and justify the disbursement of public funds.

(C) On *January 9, 2012*, the Secretary of the Treasury made a second payment to *Financiera Division del Norte S.A. de C.V. SOFOM ENR* from *Economic Support Number 6800685* through a check in the amount of *$12,000,000.00 (twelve million pesos, 00/100, Mexican currency)* from Banco Santander, from an account held by that office. There was intended to unlawfully justify those payments through an *agreement denominated action concretization agreement, which purpose was to acquire beef heifer in the State of Chihuahua*, as executed by the Government of the State of Chihuahua, represented by the Secretary of the Treasury and the Secretary of Rural Development, and the aforementioned Union Ganadera Regional Division del Norte del Estado de Chihuahua. However, there is no evidence whatsoever in the official files regarding purchase or delivery of beef heifer to their beneficiaries to corroborate veracity of the agreements and justify the disbursement of public funds.

(D) On *November 14, 2011, Loan Agreement with Interest 887/2011* was executed by the Government of the State of Chihuahua, represented by the Secretary of the Treasury and the Secretary of Rural Development in favor of Union Ganadera Regional General Division del Norte in the amount of *$5,000,000.00 (five million pesos, 00/100, Mexican currency)*, to be paid out in a lump sum before June 30, 2013, with the possibility of making advance payments. *This loan was to be allegedly used as operating capital and to purchase beef cattle.* Said amount was delivered to *Union Ganadera Regional General Division del Norte* on January 10, 2012, by means of a check from Banco Santander issued from an account held by the *Government of the State of Chihuahua*, identified as "*Secretaria de Hacienda Fin Productores Sria Des*" [sic]. However, there is no evidence whatsoever in the official files regarding fulfillment of the contract or disbursement of the funds for the stipulated purposes to corroborate its veracity.

(E) On *December 1, 2011, Financial Support Agreement 991/2011* was executed by the Secretary of Rural Development, the Secretary of the Treasury, and Union Ganadera Regional Division del Norte,

EX - DUARTE JAQUEZ - 000053

Sworn statement

*and its purpose was the payment of compensation to producers transporting their unproductive cattle to places where they were to be sacrificed* in the amount of *$36,000,000.00 (thirty-six million pesos, 00/100, Mexican currency)*. Said amount was delivered by means of three checks from Banco Santander issued to *Union Ganadera Regional Division del Norte*, from a bank account held by the *Secretary of the Treasury*, in amounts of *$16,000,000.00 (sixteen million pesos, 00/100, Mexican currency)* on January 9, 2012; *$10,000,000.00 (ten million pesos, 00/100, Mexican currency)* on January 25, 2012; and *$10,000,000.00 (ten million pesos, 00/100, Mexican currency)*, on February 22, 2012. However, there is no evidence whatsoever in the official files regarding due fulfillment of the agreement to corroborate veracity thereof.

(F) On *April 19, 2012*, the *Secretary of Rural Development*, the *Secretary of the Treasury*, and *Union Ganadera Regional General Division del Norte*, executed *Economic Support Agreement 305/2012* in the amount of *$2,692,288.00 (two million, six hundred ninety-two thousand, two hundred eighty-eight pesos, 00/100, Mexican currency)* for the *purpose of acquiring equipment necessary for beef cattle artificial insemination in support of the affiliated producers of Union Ganadera Regional General Division del Norte.* Said amount was delivered to *Union Ganadera Regional General Division del Norte* on April 24, 2012, by means of a check issued from Banco Santander, from a bank account held by the *Secretary of the Treasury*. However, there is no evidence whatsoever in the official files regarding the acquisition of the equipment or its delivery to its beneficiaries, to corroborate veracity thereof.

(G) On *May 25, 2012, Economic Support Agreement 376/2012* was executed by the *Government of the State*, represented by the *Secretary of the Treasury* and the *Secretary of Rural Development*, and *Union Ganadera Regional General Division del Norte*, in the amount *$10,000,000.00 (ten million pesos, 00/100, Mexican currency)* for the *purpose of acquiring food for bovine cattle.* Said amount was delivered to *Union Ganadera Regional General Division del Norte* on July 11, 2012, by means of a check issued from Banco Santander, from a bank account held by the *Secretary of the Treasury*, identified as a "*Public Work*". However, there is no evidence whatsoever in the official files regarding due fulfillment of the agreement or the use of the funds for the stipulated purposes, to corroborate veracity thereof.

(H) On *September 25, 2012*, the *Secretary of the Treasury* delivered, *without any legal support and as discretional spending,* a total of *$8,000,000.00 (eight million pesos, 00/100, Mexican currency)* to *Financiera Division del Norte S.A. de C.V. SOFOM ENR*, by means of a wire transfer from an account belonging to that entity, registered at Banco Santander. This payment was then attempted to be improperly justified as being for the alleged purchase of a property owned by Mrs. *Consuelo Garcia Chavez*, located in the municipality of *Hidalgo del Parral*, using *Financiera Division del Norte S.A. de C.V. SOFOM ENR* as an intermediary.

(I) On *April 1 and 30, 2013*, the *Secretary of the Treasury* issued checks to *Union Ganadera Regional General Division Del Norte del Estado de Chihuahua*, in the amounts of *$250,000.00 (two hundred fifty thousand pesos, 00/100, Mexican currency)* and *$60,000.00 (sixty thousand pesos, 00/100, Mexican currency)*, from a bank account belonging to that entity registered at BBVA Bancomer. These payments were attempted to be improperly justified by means of *Economic Support Agreements numbers 384/2013 and 426/2013, the purpose thereof was to defray the costs of several expenses incurred from transferring show cattle to the San Marcos Fair, in the state of Aguascalientes.* This was executed by the *Government of the State of Chihuahua*, represented by the *Secretary of the Treasury* and the *Secretary of Rural Development*, and the oft-cited *Union Ganadera Regional General Division del Norte del Estado de Chihuahua*. However, there is no evidence whatsoever in the official files of show cattle being transferred to the event in question,

EX - DUARTE JAQUEZ - 000054

Sworn statement

to corroborate veracity on the fulfillment of the agreements and justification of disbursement of public funds.

(J) On **October 18, 2013,** the *Secretary of the Treasury* delivered funds without any legal support, and as discretional spending in the amount of **$4,600,000.00 (four million, six hundred thousand pesos, 00/100, Mexican currency)**, to *Union Ganadera Regional General Division del Norte*, by means of a check issued from a bank account held at Banco *Santander* which belonged to that entity. This payment was then attempted to be improperly justified through **Support Agreement number 995/2013**, dated October 20, 2013.  This was executed by the *Government of the State*, represented by the *Secretary of the Treasury* and the *Secretary of Rural Development*, and *Union Ganadera Regional General Division del Norte*, at the above noted amount, with the **stated purpose of implementation of the Program aimed at repopulating the beef heifer herds in the State.** However, there is no evidence whatsoever in the official files regarding fulfillment of the agreement and its use for the stipulated purposes, to corroborate veracity thereof.

(K) On **November 28, 2014,** without any support, and as discretional spending, the *Secretary of the Treasury* gave *Union Ganadera Regional General Division Del Norte Del Estado De Chihuahua*, a total of **$5,500,000.00 (five million, five hundred thousand pesos, 00/100, Mexican currency)** through a wire transfer from an account held at *Banco Santander, S.A.*, by *"GOB EDO CHIH SECRETARIA DE HACIENDA GASTOS"* to recipient account 021162040499848006 held from HSBC, S.A. by Union Ganadera, thus impacting the budget of the *Secretary of Rural Development*. This payment was attempted to be improperly justified by simulating **three administrative processes for Economic Support itemized as CP-S-27151/2014, CP-S-27152/2014, and CP-S-27153/2014 for subsidy in the acquisition of oat, corn, and bean in support for livestock producers who were members of Union Ganadera Regional General Division Del Norte del Estado de Chihuahua** in the month of November 2014. However, there is no evidence whatsoever in the official files regarding acquisition of oat, corn, or bean, or their delivery to the beneficiaries corroborating subsidy thereof. It should be noted that said unlawful payment had previously been reported to the *Office of the State Prosecutor General* by this entity on *August 16, 2018*.

The impacts on the patrimony of the State of Chihuahua, as a result of payments made to companies with ties to the former governor, *Cesar Horacio Duarte Jaquez*, can be seen in the multiple bank statements provided by the *Secretary of the Treasury* of this entity:

| Payment Date | Payment Terms | Withdrawal Account No. | Bank Name | Withdrawal Account holder | Total amount | Deposit Account No. | Bank Name | Deposit Account holder |
|---|---|---|---|---|---|---|---|---|
| 6/17/2011 | $582,965.80 | | Banco Santander, S.A. | Secretary of the Treasury | $582,965.80 | | HSBC Mexico, S.A. | Union Ganadera Regional Division del Norte |
| 10/04/2011 | $9,210,000.00 | | | Secretary | $12,000,000.00 | | Banco | Financiera de la |
| 10/04/2011 | $2,790,000.00 | | Banco Santander, S.A. | Of the Treasury | | | Santander, S.A. | Division del Norte |
| 1/10/2012 | $12,000,000.00 | | Banco Santander, S.A. | Secretary of the Treasury | $12,000,000.00 | | Banco Santander, S.A. | Financiera de la Division del Norte |
| 1/10/2012 | $16,000,000.00 | | Banco Santander, S.A. | Secretary of the Treasury | $36,000,000.00 | | HSBC Mexico, S.A. | Union Ganadera Regional Division del Norte |
| 1/25/2012 | $10,000,000.00 | | | | | | | |
| 3/15/2012 | $10,000,000.00 | | | | | | | |
| 9/25/2012 | $8,000,000.00 | | Banco Santander, S.A. | Secretary of the Treasury | $8,000,000.00 | | Banco Mercantil del Norte, S.A. | Financiera de la Division del Norte |
| 4/25/2012 | $2,692,288.00 | | Banco Santander, S.A. | Secretary of the Treasury | $2,692,288.00 | | To be confirmed | Union Ganadera Regional Division del Norte |

EX - DUARTE JAQUEZ - 000055

Sworn statement

| 1/09/2012 | $ 5,000,000.00 | Banco Santander, S.A. | Secretary of the Treasury | $ 5,000,000.00 | HSBC Mexico, S.A. | Union Ganadera Regional Division del Norte |
|---|---|---|---|---|---|---|
| 7/12/2012 | $10,000,000.00 | Banco Santander, S.A. | Secretary of the Treasury | $10,000,000.00 | HSBC Mexico, S.A. | Union Ganadera Regional Division del Norte |
| 10/18/2013 | $ 4,600,000.00 | Banco Santander, S.A. | Secretary of the Treasury | $ 4,600,000.00 | HSBC Mexico, S.A. | Union Ganadera Regional Division del Norte |
| 4/01/2013 | $ 250,000.00 | BBVA Bancomer, S.A. | Secretary of the Treasury | $ 250,000.00 | HSBC Mexico, S.A. | Union Ganadera Regional Division del Norte |
| 10/18/2013 | $ 60,000.00 | BBVA Bancomer, S.A. | Secretary of the Treasury | $ 60,000.00 | HSBC Mexico, S.A. | Union Ganadera Regional Division del Norte |
| 11/28/2014 | $ 1,500,000.00 | BBVA Bancomer, S.A. | Secretary of the Treasury | $ 5,500,000.00 | HSBC Mexico, S.A. | Union Ganadera Regional Division del Norte |
| 11/28/2014 | $ 1,500,000.00 | | | | | |
| 11/28/2014 | $ 2,500,000.00 | | | | | |

GRAND TOTAL   $96,685,253.80

These irregularities charged to both public officials and private employees were informed to the *Secretary of Public Oversight,* which, in turn, reported the conduct in question to the *Office of the State Prosecutor General.*

During the investigation conducted by the Office of the State Prosecutor General there was possible to establish that *Cesar Horacio Duarte Jaquez,* being the *Governor of the State of Chihuahua* from 2010-2016, and being conferred the obligation of administering the funds of the State, in conjunction with multiple public officials and people outside public administration, with assigned roles and activities, from 2011 to 2014, in the municipality of the capital of the State of Chihuahua, deviated the amount of $96,685,253.80 (ninety-six million, six hundred eighty-five thousand, two hundred fifty-three pesos, *80/100, Mexican currency*), from the public treasury, which was exclusively allocated to public purposes.

To that end, he instructed public officials working under his command to simulate 11 administrative procedures to grant subsidy or economic support and loan agreements with *Union Ganadera Regional General Division Del Norte* and Financiera Division Del Norte, S.A. de C.V. SOFOM, E.N.R., through the Secretary of the Treasury, the Secretary of Rural Development, and a state-controlled entity called FIDEAPECH, in violation of constitutional and legal provisions related to managing public assets and expenditure. Said entities were under the direct control of then *Governor Duarte Jaquez,* inasmuch as he respectively was the *President of their Board of Directors* and *de facto manager,* as well as the *majority shareholder;* therefore, he had a personal and business interest thereon, which in turn created a conflict of interest.

The amount of $96,685,253.80 (ninety-six million, six hundred eighty-five thousand, two hundred fifty-three pesos, *80/100, Mexican currency*) was delivered by the Government of the State of Chihuahua through 17 bank transactions between 2011 and 2014, to bank accounts held by the benefitted corporations controlled by *Duarte Jaquez's* people of trust: his accountant, *Guadalupe Medina Aragon,* and his partner, *Carlos Gerardo Hermosillo Arteaga.* Then, the public money was disbursed to other bank accounts to be then used for non-public purposes, such as personal expenses of Duarte Jaquez's (among which the payment of his personal taxes stands out), as well as the expenses of other companies owned by himself and his family, and the purchase of properties associated with him; that is, on his benefit.

In addition, *Cesar Horacio Duarte Jaquez* directed these acts to deviate public money in his own benefit, taking advantage of the structure of the Government of the State of Chihuahua, and of his hierarchical position as the Head of the Executive Branch, by using staff under his command, as well as means and instruments of the public entities led by himself.

EX - DUARTE JAQUEZ - 000056

Sworn statement

And to that end, he brought together a group of people, public officials, and individuals outside of the civil service, organizing them hierarchically; therein, he performed leadership roles, and others operative tasks, among which there stand out his partner and employee, CARLOS GERARDO HERMOSILLO ARTEAGA, to then repeatedly deviate public funds of the state of Chihuahua, with the purpose of satisfying his personal interests.

EX - DUARTE JAQUEZ - 000057

Sworn statement

## II.

## CRIMES CHARGED AND ELEMENTS OF THEIR CRIMINAL DEFINITION

### A. Crimes Charged

1. **Aggravated Embezzlement.**

   a. **Definition of the Crime Charged.**

   **Embezzlement.** Article **270,** paragraph **1,** section **I,** of the Criminal Code for the State provides:[2]

   *An imprisonment penalty ranging from six months to four years and a fine ranging from fifty to five hundred days shall be imposed upon the public official who: I. Uses or deviates from their purpose: money, securities, real properties or any other object if they received them due to their position [...]*

   **Aggravated,** pursuant to the provisions of Article **270,** paragraph **2,** of the selfsame code:

   *An imprisonment penalty ranging from four to twelve years and a fine ranging from five hundred to two thousand days shall be imposed provided that the amount or value exceeds five hundred times fine days.*

   b. **Degree in which the crime was perpetrated.**

   **Materialized, Continuous,** in accordance with the provisions in Article **17,** section **III,** of the Criminal Code for the State:

   *According to the moment in which the crime was perpetrated, a crime shall be [...] III. Continuous when the same criminal purpose, through a series of acts, and against the same victim there are materialized the elements of the same criminally defined conduct.*

   c. **Form of Intervention.**

   **Co-perpetrator,** as provided in Article **21,** section **III,** of the Criminal Code for the State:

   *The people responsible for a crime are those who: [...] III. Commits the crime jointly with one or more perpetrators [...]*

   d. **Nature of the conduct.**

   **Intentional,** as provided for in Article **18,** section **I,** of the Criminal Code for the State:

   *Criminal actions or omissions may be: I. Intentional. One acts intentionally when, aware of the unlawfulness of their acts, they carry out a criminally defined conduct which result is wanted or accepted thereby [...]*

2. **Conspiracy.**

   a. **Definition of the Crime Charged.**

   **Conspiracy.** Described in Article **246** of the Criminal Code for the State:[3]

   *An imprisonment penalty ranging from six months to six years and a fine ranging from 60 to 100 days of salary shall be imposed, upon whoever permanently forms part of an association or group of three or more persons engaged in criminal activities.*

   **Aggravated,** as provided for in Article **248,** paragraph **1,** of that same code:

---

[2] *See* "Criminal Code for the State of Chihuahua", 2007, Art. 270, paragraph 1, section I. Published in the State Official Gazette number 103, dated December 27, 2006.

[3] *See Ibid.,* art. 246:

FGE

EX - DUARTE JAQUEZ - 000058

Sworn statement

> *If the criminal association [...] member [...] has been a public official [...] and due to the performance of the duties entrusted to them, the perpetration of the crime or crimes, referred to in the preceding articles was facilitated, the penalties shall be increased by one-half and furthermore there shall be imposed, if applicable, removal from employment, position or commission or disqualification to hold another for a time equal to that stipulated for imprisonment; if so, then the time shall be computed from the time in which the penalty has been served.*

**b. Degree in which the crime was perpetrated.**

**Materialized, Continuous,** in accordance with the provisions of Article **17,** section **II,** of the Criminal Code for the State.

*According to the moment in which the crime was perpetrated, a crime shall be [...]:II. Permanent or continuous: when the same legal ordinance is violated, and perpetration thereof is continued over time. [...]*

**c. Form of Intervention.**

**Co-perpetrator,** pursuant to Article **21,** section **I,** of the Criminal Code for the State:
*The people responsible for a crime are those who: [...] I. Carry out the conduct by themselves [...]*

**d. Nature of the Conduct.**

**Intentional,** as provided for in Article **18,** section **I,** of the Criminal Code for the State:
*Criminal actions or omissions may be: I. Intentional. One acts intentionally when, aware of the unlawfulness of their acts, they carry out a criminally defined conduct which result is wanted or accepted thereby [...]*

**B. Elements of the criminal definition of the crimes charged.**

**1. Aggravated embezzlement.**

Derived from a thorough analysis of the definition of Embezzlement, set forth in Article 270, paragraph 1, section I, of the Criminal Code for the State, the following elements of the criminal definition were found to exist:

**a.** *Capacity as Public Official;*

**b.** *A conduct consisting in the use or deviation of public funds from their purpose; and*

**c.** *The public official has received such money due to the performance of their duties.*

**2. Conspiracy.**

From a thorough analysis of the definition of Conspiracy, set forth in Article 246 of the Criminal Code for the State, the following ¿ elements of the criminal definition were found to exist:

**a.** *A conduct consisting in becoming associated or organized with others;*

**b.** *A group of three or more persons; and*

**c.** *The joint intention to commit a crime.*

EX - DUARTE JAQUEZ - 000059

Sworn statement

---

### III.

### EVIDENCE RELATED TO THE ELEMENTS OF EACH CRIME

#### A. Background.

As stated above, *Cesar Horacio Duarte Jaquez* was appointed for the position of *Constitutional Governor of the State of Chihuahua* from *October 4, 2010*, to *October 3, 2016*;[4] and he held it during the aforementioned period, as there is stated in his *service record.*

Consequently, *Cesar Horacio Duarte Jaquez* is considered a **Public official** for the duration of this term for the purposes of the criminal laws of the state of Chihuahua, since he held a position within the *state public administration,*[5] inasmuch as he was the public official to which the *Executive Branch* was conferred.[6]

Now then, this position conferred to *Cesar Horacio Duarte Jaquez* the capacity as chief head of the *Executive Branch* at the state level and therefore, this gave him a broad set of powers, among which were managing the State assets;[7] not arbitrarily or discretionally, but with *efficiency, effectiveness, economy, transparency, and honesty, to achieve their intended objectives,*[8] that is, the needs demanded by the State development requires;[9] with the implicit obligation, as a *public official,* of *impartially using the public* funds for which he was responsible.[10]

Furthermore, being chief head of the state Executive Branch provided *Cesar Horacio Duarte Jaquez* with hierarchical superiority in regard to all other agencies in the *centralized public administration,* in other words, the *Secretaries, the Office of the State Attorney General,* and the

---

[4] See State Congress (Chihuahua): LXII Legislature, "Decree No. 11/36/2010 XI P.E.", State Official Gazette, No. 64 (August 11, 2010).
  *Sole Article: By virtue of the provisions established by Articles 36, 37, 57, 82 (VIII) and 87 of the Political Constitution of the State of Chihuahua, in relation to article 207 of the electoral law in force for our entity, and pursuant to the declaration of validity of the election process that took place in July 4th and to the vote majority decision issued by the General Council of the State Electoral Institute, in regard to the capacity as the Governor, Mr. Cesar Horacio Duarte Jaquez is hereby declared elected as the Governor of the Free and Sovereign State of Chihuahua, for the period from October 4, 2010, to October 3, 2016.*

[5] See "Criminal Code for the State of Chihuahua", op. cit. (No. 5), Article 250, paragraph 1.
  *For the purposes of this Code, a public official shall be any person who works as an employee or holds a position or commission of any kind in the state or municipal centralized or state-controlled public administration and in the State legislative, judicial branches, and autonomous bodies by constitutional provision.*

[6] See "Political Constitution for the State of Chihuahua" 1950, Article 51, section II, Decree No. 356-50.
  *The State Government, for the performance of its duties, is divided into the Legislative, Executive, and Judicial Branches, and those are conferred upon: I. An Assembly that shall be denominated the "State Congress", as for the Legislative Branch. II. The Executive Branch is run by an official who shall be denominated the "State Governor". III. The Judiciary Branch is run by a "Superior Court of Justice" and the first-instance and lower-court judges.*

[7] See Ibid, Article 93, section XXXIV.
  *The following are powers and obligations of whoever becomes the head of the State Executive Branch: [...] XXXIV. To acquire, administer, and dispose the State-owned assets, pursuant to the terms and conditions stipulated in this Constitution and the Law. The latter shall set out the system to which the assets acquired to perform the duties of the State legislative and judicial branches shall be subject. [...]*

[8] See "Political Constitution of the United Mexican States", 1917, Article 134, paragraph 1.
  *The funds used by the federal government, states, municipalities, the Federal District [sic] and administrative-political bodies according to their territorial demarcations shall be managed with efficiency, effectiveness, economy, transparency, and honesty, to achieve their intended objectives.*

[9] See "Law on Expenditure Budget, Government Accounting and Public Expenditure for the State of Chihuahua", 2013, Article 5, Decree No. 1380/2013, XIV P.E., published in the State Official Gazette No. 104 on December 28, 2013.
  *Scheduling, budgeting, implementing, following-up, monitoring, and assessing public spending shall be done in accordance with the guidelines, directives, strategies, and goals, based on the principles of efficiency, efficacy, economy, honesty, rationality, austerity, control, accountability, gender equality, and transparency of the administration of public funds for the purpose of meeting the state development needs.*

[10] See "Political Constitution of the United Mexican States", op. cit. (No. 12), Article 83 ter, second paragraph.
  *State and municipal public officials shall always be obligated to using the public funds for which they are responsible impartially, without influencing the equity of competition between political parties and independent candidates.*

---

FGE

12

Sworn statement

*Coordinating Offices that work directly for the Executive Branch,*[11] along with the *state-controlled public administration agencies.*[12]

Within the Secretary offices under the *centralized public administration* are the *Secretary of the Treasury* and the *Secretary of Rural Development,*[13] at which, there should be noted, some of the persons involved in the criminal acts in question worked, as there can be noted in their *work records*:

( A )  *Person identified with code KA5P23/2019 held the position of chief head of the Secretary of the Treasury from January 1, 2011 to January 1, 2012.*

( B )  *Jose Luis Garcia Mayagoitia held the position of chief head of the Secretary of the Treasury from January 12, 2012 to October 10, 2012.*

( C )  *Person identified with code 56RT65PW7 held the position of chief head of the Secretary of the Treasury from October 9, 2012 to October 3, 2016.*

( D )  *Person identified with code 5M4GYUH19A/2019 held the position of director general (of Public Investment Programs) within the Secretary of the Treasury from January 1, 2011 to April 1, 2014.*

( E )  *Carlos Gerardo Hermosillo held the position of director general (of Administration) within the Secretary of the Treasury from February 15, 2012 to October 30, 2013.*

( F )  *Joaquin Francisco Hernandez Vega held the position of treasurer within the Secretary of the Treasury from January 1, 2011 to December 31, 2016.*

( G )  *Person identified with code 67HD6JA9K2S/2018 held the position of director within the Secretary of the Treasury from November 1, 2011, to February 14, 2012; department chief within the Secretary of the Treasury from February 15, 2012, to April 20, 2014;*[14] *and general director (of Expenditure) within the Secretary of the Treasury from April 21, 2014 to October 3, 2016.*

( H )  *Guillermina Hernandez Vazquez held the position of director (of Investment Programs) within the Secretary of the Treasury from March 1, 2014 to October 3, 2016.*

( I )  *Person identified with code FE54HD7SHJW/2019 held the position of department chief (of Scheduling and Payment Control) within the Secretary of the Treasury from January 1, 2011, to September 14, 2014; and director (of Scheduling and Payment Control and Financial Monitoring of Investments) within the Secretary of the Treasury from September 15, 2014 to April 20, 2017.*

---

[11] See Mexico: Chihuahua, "Organic Law of the Executive Branch for the State of Chihuahua", 1986, Article 2, published in State Official Gazette No. 79, on October 1, 1986.
*The following offices of the centralized public administration shall exist for exercising the powers and process the administrative business of the State Executive Branch: I. Secretary Offices; II. Office of the State Attorney General; and III. Coordinating offices reporting directly to the Executive Branch.*
[12] See ibid., Article 3.
*The Executive Branch shall be assisted in accordance with corresponding legal provisions by the following entities in the following state-controlled public administration: I. Decentralized bodies; II. Enterprises with State participation; III. State-owned enterprises; and IV. Trusts.*
[13] See ibid, Article 24, sections II and XI.
*For the study, planning, and development of administrative affairs, the state Executive Branch shall have the following entities: [...] II. Secretary of the Treasury [...] XI. Secretary of Rural Development [...]*
[14] *This person acted as well as the head of the General Division of Expenditure.*

EX - DUARTE JAQUEZ - 000061

Sworn statement

(J)   *Maria Beatriz Torrecillas Fitch* held the position of *department head (of Administrative Services)* within the *Secretary of the Treasury* from *February 15, 2012* to *November 19, 2013.*

(K)   *Octavio Legarreta Guerrero* held the position of chief head of the *Secretary of Rural Development* from *October 4, 2010* to *October 31, 2014.*

(L)   *Ramon Leonel Casas Dominguez* held the position of *director (of Rural Planning)* within the *Secretary of Rural Development* from *October 27, 2010* to *January 8, 2015.*

(M)   *Roberto Dittrich Nevarez* held the position of *director (Division of Agricultural Support)* within the *Secretary of Rural Development* from *January 1, 2011* to *January 1, 2012.*

(N)   *Eloy Soto Payan* held the position of *department chief (Livestock)* within the *Secretary of Rural Development* from *November 30, 2010* to *October 6, 2016.*

(O)   *Susana Patricia Tamez Aguilera* held the position of *department chief (Legal)* within the Secretary of Rural Development from *October 1, 2005* to *October 14, 2016.*

Now then, as *Cesar Horacio Duarte Jaquez* was the *Constitutional Governor of the State of Chihuahua*, he had economic interests upon several of the enterprises therein.

In the *"Public Registry of Commerce"* databases, he appears as a partner of *"Grupo Inmobiliario Del Norte S.A. de C.V."* (along with his siblings *Ricardo, Alejandro, and Mario,* all surnamed *Duarte Jaquez*), as a partner of *"Ganadera El Saucito Balleza S.P.R. de R.L. de C.V."* (along with his wife *Bertha Gomez,* his children *Cesar Adrian, Bertha Isabel, Olga Sofia,* all surnamed *Duarte Gomez,* and his former sister-in-law *Blanca Estela Alvarez,* and primarily as a partner of *"Financiera de la Division del Norte S.A. de C.V. SOFOM ENR"*.

As to the above mentioned *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR, Cesar Horacio Duarte Jaquez* is its founder and majority shareholder with more than *98%* of the *A-series* shares in its capital stock (5,900 of 6,000 total shares), as well as *93.35%* of the *B-series* shares (28,940 of 31,000 total shares).

Furthermore, the former governor has served as both *partner* and *chairman* of the *Board of Directors* of the corporation denominated *Union Ganadera Regional Division del Norte* since *May 24, 2007,* with full control of its administration, and therefore its funds.

In fact, solid evidence has been compiled that confirms that *Cesar Horacio Duarte Jaquez* fully controlled the assets of *Union Ganadera Regional Division del Norte* at the time the conduct took place.

There is testimony from persons who were part of the *Board of* Directors of said corporation at that time, among them: *Guadalupe Siqueiros Tarango,* who was *secretary* from *2005* to October *2010,* then *representative* from *2010* to *2016,* and currently *chairperson* since *2017.* Said person is emphatic in stating that such company was managed, from 2010 to the end of 2016, by *Cesar Horacio Duarte Jaquez, Carlos Hermosillo Arteaga,* and *Guadalupe Medina Aragon;* also noting that they were the only ones who managed the funds and knew about the disbursement thereof. Testimony was also taken from *David Balderrama Quintana,* who was the *treasurer* of the *Board of Directors* from *2005* to *May 2014,* and who has stated that his appointment was merely a formality, a simple appearance to outsiders, because he was never given access to the bank accounts or to managing the funds of

EX - DUARTE JAQUEZ - 000062

Sworn statement

Union Ganadera, inasmuch as said accounts and money were managed by Cesar Horacio Duarte Jaquez.

Testimony was also taken from persons who worked at both *Union Ganadera Regional Division del Norte del Estado de Chihuahua* and *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR*, as in the case of *Irvin Jahir Ontiveros Vasquez, Hugo Miyamoto Contreras*, as well as protected witness identified with code *NI37SC94WQ/2019*,[15] (who performed administrative duties within these corporations and were aware of their internal management and the identities of their operators and managers), who stated that *Cesar Horacio Duarte Jaquez* made the final decisions at these corporations. Moreover, said persons allude to three key figures within the organization, who shall be referred to further ahead: *Carlos Hermosillo Arteaga, Guadalupe Medina Aragon* and *Ruth Sarahi Martinez Mariscal*.

Regarding the record of authorized signatures bank accounts [sic] that belonged to *Union Ganadera Regional Division del Norte, Carlos Hermosillo Arteaga* appeared on eight of them, *Guadalupe Medina Aragon* on two, and *Cesar Horacio Duarte Jaquez* on one. As such, only two people really close to the former governor, and himself, had access to the bank accounts that received the million-peso inflows.

Such was his control over the patrimony of *Union Ganadera Division del Norte* that *Cesar Duarte Jaquez* filed its tax statements with the country tax authorities, as there happened on May 9, 2014, when the former governor filed the annual tax statement of said Union Ganadera for tax year 2013.

*Carlos Hermosillo Arteaga* has been stated to be one of *Cesar Horacio Duarte Jaquez*'s persons of trust, his right-hand man. As protected witness identified with code *56RT65PW7*[16] has noted (since the latter had a direct and personal relationship with Cesar Duarte since 1999, and also acted as his Secretary of the Treasury from October 2012 to the end of his tenure), *Carlos Hermosillo* had a very close relationship with the former governor for many years. In fact, the former governor had a close friendship since youth with *Carlos Hermosillo's* father, and when his father passed away in an accident, *Cesar Duarte* basically adopted him, in a sort of informal arrangement, since *Carlos* was somewhere between 16 to 18 years of age and required both economic and moral support to survive. As such, *Cesar Duarte* was responsible for training and educating *Carlos Hermosillo* in accordance with his needs and requirements; he placed all his trust in him, and as a result, entrusted him with the operation and execution of his most delicate and personal affairs, in the broadest sense possible.

This close relationship between these two people has been confirmed by the various witness statements taken, but it becomes even clearer from reviewing the shareholdings of *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR*, since, together with *Cesar Horacio Duarte Jaquez*, he held *A-series* shares that comprise its capital stock (50 of the 6,000 total shares), as well as *B-series* shares (1,960 of the 31,000 total shares); that corporation does not have more than three partners, the two individuals mentioned above and *Union Ganadera Regional Division del Norte del Estado*, with the latter listing *Carlos Hermosillo* as its legal representative.

This relationship is also evident from the positions that *Carlos Hermosillo Arteaga* held in the State administration as *Cesar Horacio Duarte Jaquez* was *Governor of the State of Chihuahua*: in *2011-2012, Director* of the state-controlled corporation denominated *State Trust for the Promotion of Productive Activities in the State of Chihuahua* (*FIDEAPECH*, derived from its initials in the Spanish

---

[15] In Agreement dated January 28, 2019, there was determined that the information that NI37SC94WQ/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

[16] In Agreement dated December 8, 2018, there was determined that the information that 56RT65PW7 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

Sworn statement

language) of the State *Secretary of Economy*; in *2012-2013, Director General of Administration* in the *Secretary of the Treasury*; and from *2013 to 2015, President* of the *State Central Board of Water Services.*

On the other hand, *Guadalupe Medina Aragon* was not only accountant at *Union Ganadera Regional Division del Norte* and *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR*, but also *Cesar Horacio Duarte Jaquez's* personal accountant, which is corroborated not only by the aforementioned employees of said corporations, but also by other witnesses, such as protected witnesses identified with codes *56RT65PW7* (previously mentioned) and *PYRTEJ/2018* (who worked at *Gadadera El Saucito Balleza, Sociedad de Produccion Rural*, property of Cesar Duarte, and worked for other properties belonging to Duarte as well), and with the statements of *Guadalupe Siqueiros Tarango* (who, as mentioned above, served as secretary, and after that, as Chairperson of the Board of Directors at Union Ganadera Regional Division del Norte), *Valentin Diaz Javalera, Josue Diaz Holguin* (respective father and son, who worked at "El Saucito" and annexed properties, owned by Cesar Duarte).

Another testimony, rendered by *Victor Hugo Maldonado Gachupin*, also affirms that *Guadalupe Medina* was the accountant of a company called "*Pavimentos y Servicios de Parral S.A de C.V.*" of which *Bertha Olga Gomez Fong* is a partner; she is the wife of *Cesar Horacio Duarte Jaquez* (whom she married on *December 26, 1986*), with whom he has three children, *Cesar Adrian Duarte Gomez, Bertha Isabel Duarte Gomez,* and *Olga Sofia Duarte Gomez.*

Among the evidence found inside the domicile located at *calle Tecolotes and San Patricio, without official number, Colonia Esmeralda, in the municipality of Hidalgo del Parral, Chihuahua,* owned by *Cesar Horacio Duarte Jaquez*, are multiple financial and accounting documents related to *Union Ganadera Regional Division del Norte del Estado de Chihuahua* and/or *Union Ganadera Regional General Division del Norte del Estado De Chihuahua*, as well as to *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR.*

Another piece of information corroborating the patrimonial management of *Cesar Horacio Duarte Jaquez's* in both *Union Ganadera Regional Division del Norte* and la *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR* is that, on the one hand, both corporations have the same tax domicile, being this *Calle Plazuela Morelos 4-C, Colonia Centro, in the City of Hidalgo del Parral, Chihuahua*; and this place is also the tax domicile of other companies owned by *Cesar Horacio Duarte Jaquez* and/or members of his immediate relatives, such as "*Pavimentos y Servicios de Parral S.A de C.V.*", "*Grupo Inmobiliario del Norte S.A de C.V.*", and "*Ganadera El Saucito Balleza S.P.R. DE R.L. DE C.V.*".

In a different line of reasoning, there is evidentiary information proving that *Cesar Horacio Duarte Jaquez* gave instructions to persons under his command for them to release funds through fictitious and fraudulent contracts, supports, or subsidies in favor of *Union Ganadera Regional Division del Norte* and *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR*. This is supported by statements rendered by the witnesses identified with codes *56RT65PW7, KA5P23/2019,* and *5M4GYUH19A/2019*, who rendered their corresponding statements assisted by their defense attorneys and were informed of their rights. Said persons held top-level positions within the state administration run by *Cesar Horacio Duarte Jaquez.*

In this regard, *56RT65PW7* stated that *Cesar Duarte* used *Union Ganadera Regional Division del Norte* and *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR* to deviate public funds multiple times from the state to his personal benefit, or very close individuals like the companies owned by *Otto Valles Baca* and his family [sic].

FGE                                                                                                      16

Sworn statement

For this purpose, he used the *Secretary of the Treasury*, the *Secretary of Rural Development*, and the *Office of the Secretary of the Economy* in the following manner: funding was earmarked as a subsidy, economic support, a credit, or a loan, directly into the bank account of those corporations. Those accounts were managed by *Cesar Duarte* himself, his accountant, *Guadalupe Medina Aragon*, or *Carlos Hermosillo*, and to justify that allocation, a request and a simple receipt were submitted, and sometimes there was a contract or an agreement allegedly generating a payment obligation.

However, apart from the fact that such documents were insufficient to justify the disbursement of funds (*given that they did not actually prove that the funds were used for the purposes requested and granted*), they also tended to be submitted after the public money had already been transferred; in other words, pre-dated.

The request basically specified: the amount and classification of the subsidy, economic support, credit, or loan being requested, with a short, weak and insufficient explanation of the purpose or cause to justify the payment. Furthermore, the receipt merely specified that the beneficiary's representative had received the requested amount for a given concept.

At the start of the administration, such requests and receipts were generally signed by *Carlos Gerardo Hermosillo Arteaga*, acting as the representative of the beneficiaries, and he even signed them when he was already working for the *State Government*; and in addition, he also signed a few agreements or contracts related to those processes as the *Representative of the State Government* at the same time, he was signing as the *Representative of the Beneficiary*, which demonstrated a clear conflict of interest.

Further agreements or contracts executed with such entities were signed by people outside of the civil service but close to *Cesar Duarte*, such as *Guadalupe Medina Aragon* (*Duarte's* accountant), *Pedro Baca Gomez* (who was a managed individual as he followed the instructions of both *Duarte* and *Hermosillo*, inasmuch as he was *Bertha Gomez Fong's* nephew), and *Sarahi Martinez* (another of *Cesar Duarte's* employees); they signed both the requests and the receipts and contracts or agreements with the state government, as representatives of the aforementioned corporations.

Given the lack of documented proof that justifying allocation of the deviated funds, there was unduly decided that the expenses incurred were improperly charged to a so-called *Cuenta Deudora* (T.N. This was a name given to the account allocated for emergency purposes; thence the name thereof was left in the Spanish language) in the Government Accounting, in order not to reveal the way funds were being managed. There is important to point out that this *Cuenta Deudora* should only be used before a serious state emergency making an unjustified expenditure unavoidable, such as a climate-related contingency, natural disaster, etc. An expense charged to the *Cuenta Deudora* would be provisionally registered until it could be justified at a later date. The public funds deviated by *Cesar Duarte* were charged to the *Cuenta Deudora*, because, as stated before, upon being delivered, most of the time there was no justification therefor whatsoever.

As Guillermina Hernandez Vasquez, who acted as Director of Investment Programs during Duarte's administration stated, very significant amounts of money were charged to the Cuenta Deudora without certainty that said money was used for the intended purposes, since there were no supporting documents thereof. On the other hand, other government offices correctly proved acquisition of goods or services and realization of works but did not receive any payments. In this regard, the witness state that contractors or suppliers hired by the Government of Chihuahua should firstly provide the good, comply with the service or finish the work requested; then submit documentation related to the nature thereof and wait for the payment to be scheduled based on cash

Sworn statement

flow. This process could take months or even years and until served, payments were made, this is to say: the Government of Chihuahua did not use to pay in advance to anyone but to the corporations related to Cesar Duarte.

As mentioned before, witness 56RT65PW7, who served as Secretary of the Treasury for the State, also noted that after the elections for state governor that took placed on *June 5, 2016, Cesar Duarte* personally expressed to him his concern about the deviation of public funds that had occurred during his administration, as well as his intention for all of them to be given a legal appearance, so that they would not be discovered by the new governor and his cabinet. Before said concern, the former governor called him and other public officials to a meeting at the Government House with the main goal of taking all actions necessary to conceal the irregular acts incurred in releasing public funds, and to fully prove transaction of all funds operated during his 2010-2016 administration, and since then until before his administration concluded, weekly meetings were held at the *Secretary of the Treasury* to ensure progress on justifying the use of all funding that had been recorded in the *Cuenta Deudora*.

This general mechanics was repeated in each of the cases presented below in more detail, but there must be herein emphasized, that all the actions taken by *Cesar Duarte and the persons assisting him* define a **deviation** or embezzlement of **public money**, which overall added up to $96,685,253.80 *(ninety-six million, six hundred eighty-five thousand, two hundred fifty-three pesos, 80/100, Mexican currency),* and **had been allocated for public purposes,** i.e., **to meet the needs of the people of Chihuahua.**

In fact, the term *"divert"*, used in the criminal definition of the crime charged, should be understood as the *change of the legal purpose* made by the accused.[17] Which occurred in this case, since instead of using those funds to meet the needs that the State development demands, as there is stipulated in the *Political Constitution of the United Mexican States*[18], and the *Law on Expenditure Budget, Government Accounting and Public Expenditure for the State of Chihuahua*[19], they were instead employed for *Cesar Horacio Duarte Jaquez's* personal enjoyment, along with that of his family and close relatives.

On one hand, there was deviated *$32,000,000.00 (thirty-two million pesos, 00/100, Mexican currency)* to a corporation of which the former governor is both the founder and majority shareholder (with more than 98% of the A-series shares and 93.35% of the B-series shares): *Financiera Division del Norte, S.A de C.V. SOFOM ENR.*

In addition, there was deviated *$64,685,253.80 (sixty-four million, six hundred eighty-five thousand, two hundred fifty-two pesos, 80/100, Mexican currency)* to another corporation in which *Cesar Duarte* controls the assets, i.e., *Union Ganadera Regional General Division del Norte.*

---

[17] 1st Division, *Weekly Judicial Bulletin of the Federation*, vol. 21, 2nd Part, p. 21. Seventh Epoch, Sole Non-binding precedent (Criminal), Registry 236860; 1st Bench, *Weekly Judicial Bulletin of the Federation*, vol. XXIV, 2nd Part, p. 263. Sixth Epoch, Sole Non-binding precedent (Criminal), Registry 262760; 1st Division, *Weekly Judicial Bulletin of the Federation*, vol. VI, 2nd Part, p. 203. Sixth Epoch, Sole Non-binding precedent (Criminal), Registry 802866; 1st Division, *Weekly Judicial Bulletin of the Federation*, vol. VI, 2nd Part, p. 207. Sixth Epoch, Sole Non-binding precedent (Criminal), Registry 264537; 1st Division, *Weekly Judicial Bulletin of the Federation*, t. CXXXI, p. 162. Fifth Epoch, Sole Non-binding precedent (Criminal), Registry 292745.

[18] See "Political Constitution of the United Mexican States", op. cit. (No. 12), Article 134, paragraph 1.

[19] See "Law on Expenditure Budget, Government Accounting and Public Expenditure for the State of Chihuahua", op. cit. (No. 13), Article 5.

*Scheduling, budgeting, implementing, following up, monitoring, and assessing of public spending shall be bound to the guidelines, directives, strategies, and goals, on the basis of the principles of efficiency, efficacy, economy, honesty, rationality, austerity, control, accountability, gender equality, and transparency of the administration of public resources, for the purpose of meeting the needs that the State development demands.*

FGE                                                                                                                    18

Sworn statement

Yet that is not all. Once the funds were in the accounts of such corporations, payments were verified for the personal benefits of *Cesar Duarte*, such as the purchase of cattle for his ranches; the purchase of properties that his political godson, *Carlos Hermosillo*, oversaw at his behest; plus a deposit of *$20,000,000.00 (twenty million pesos, 00/100, Mexican currency)* that was allocated to *Trust number 744743 of Banco Mercantil del Norte, S.A.*, in both his name and that of his wife, *Bertha Olga Gomez Fong*; and also a deposit of *$5,500,000.00 (five million, five hundred thousand pesos, 00/100, Mexican currency)* that made its way into one of his personal bank accounts, from which, after the fact, he paid his taxes for tax year 2014, in the amount of *$3,105,364.00 (three million, one hundred five thousand, three hundred sixty-four pesos, 00/100, Mexican currency)*.

### B. Cases involving public funds deviated in the benefit of Cesar Horacio Duarte Jaquez and his family.

As stated above, during the investigation conducted by the Office of the State Attorney General there was established that *Cesar Horacio Duarte Jaquez,* as Governor of the State of Chihuahua, embezzled, along with the help of various public officials and other persons, a total of *$96,685,253.80 (ninety-six million, six hundred eighty-five thousand, two hundred fifty-three pesos, 80/100, Mexican currency)* from the treasury, which was exclusively allocated for public purposes, and such diverted funds were used for his personal benefit.

There was a total of 11 fraudulent administrative procedures orchestrated by *Cesar Duarte Jaquez* to release public funds in favor of the corporations with ties to him. And those were done consecutively through governmental functions headed by *Duarte Jaquez* between 2011 and 2014, in the municipality of Chihuahua. They were as follows:

1. **Economic Support number 352/2011, in favor of *Union Ganadera Regional Division del Norte*, in the amount of $582,965.80 (five hundred eighty-two thousand, nine hundred sixty-five pesos, 80/100, Mexican currency).**

On *June 17, 2011,* a payment was made in the amount of *$582,965.80 (five hundred eighty-two thousand, nine hundred sixty-five pesos, 80/100, Mexican currency)* by means of Check No. 1876, charged to account 900-5 from *Santander Mexico S.A.,* held by the *Secretary of the Treasury of the Government of the State of Chihuahua*; and credited to account number 1800 from *HSBC Mexico S.A.,* held by *Union Ganadera Regional Division del Norte*.



| Secretary of the Treasury Gov. of the St. of Chih. Acct. 8637 Santander S.A. | — | 17/Jul/2011 Check 1876 $582,965.80 | — | Union Ganadera Regional Division del Norte Acct. 1800 HSBC Mexico S.A. |
|---|---|---|---|---|

This payment was justified itemized as Economic Support number *352/2011*, for the alleged *"acquisition of equipment necessary for beef cattle artificial insemination in support of the producers who were members"*. However, testimonial evidence was obtained from *public officials* who corroborated that it was a fraudulent procedure to deviate public funds, orchestrated by then *Governor Cesar Duarte Jaquez*:

- Protected witness identified with code KA5P23/2019, assisted by their defense attorney, stated that he had worked as *Secretary of Finance* during the initial years of the Administration of *Cesar Duarte Jaquez* (October 2010 to January 2012) and, as a result, he knew that the latter had an economic interest in *Union Ganadera Division del Norte*. He stated that during his term

EX - DUARTE JAQUEZ - 000067

Sworn statement

as *Secretary of the Treasury, Cesar Duarte* had instructed him to sign an agreement for irregular support in the benefit of *Union Ganadera Division de Norte*. He also testified that, in early June 2011, *Carlos Hermosillo,* in conjunction with the then *Secretary of Rural Development, Octavio Legarreta,* had asked him for approval to release public funds in favor of *Union Ganadera de la Division del Norte,* itemized as economic support for the acquisition of equipment for beef cattle insemination, which he agreed to do, since *Cesar Duarte* had previously instructed him that any request coming from *Octavio Legarreta* regarding disposal of money should be met, because it implied that those were directly given by himself. As such, the witness instructed the employee working under him, protected witness identified with code *5M4GYUH19A/2019, Director General of Public Investment Programs,* to issue an official letter approving sufficient budgeted funds in order to release said funds, without double-checking whether said economic support was true or false, merely accepting instructions from the former *Governor Duarte.*

- Protected witness identified with code *5M4GYUH19A/2019*[20], with the assistance of his defense attorney, stated that as *Director General* of *Investment Programs,* he had authorized economic support for Union Ganadera Regional Division del Norte, by signing <u>*Official Letter* of *Approval*</u> number *2011-INE-A-0299,* knowing that it was not part of the ordinary processes, because somewhere between May 31 and June 1, 2011, *Carlos Hermosillo* requested, at the instruction of Cesar Duarte to authorize budgetary allocation to release the funds in question in favor of *Union Ganadera Regional Division del Norte,* for it to become part of the former governor's assets, by using the aforementioned *Union Ganadera*. Said witness also added that the process was done outside of established procedures and norms, because there was no technical file that would justify granting thereof; and moreover, the allocation was immediately authorized, when in a normal procedure, one must give priority to processing previously scheduled programs, and especially those itemized as healthcare and education, but it was mostly known that this corporation was run by the former governor, *Cesar Duarte.* In addition, he stated that his superior at the *Secretary of the Treasury* was aware of the funds being transferred to *Union Ganadera* and was the one who commented that he should continue with the process.

- Protected witness identified with code *FE54HD7SHJW/2019*[21], with the assistance of his defense attorney, stated that as the *Head of the Department of Payment Scheduling and Control,* somewhere between *June 12-13, 2011, Carlos Hermosillo* spoke to him on behalf of the then governor about releasing an economic support payment as shortly as possible in the amount of *$582,965.80 (five hundred eighty-two thousand, nine hundred sixty-five pesos, 80/100, Mexican currency)* in favor of *Union Ganadera Regional Division del Norte,* which is the reason why he requested his staff to find the *Payment Request,* and once he reviewed it, he noted that the supporting documentation attached thereto was insufficient to justify delivery of economic support, because the *Secretary of Rural Development* had not shown proof of compliance. He informed *Jesus Ruiz Palma,* then his immediate boss of the preceding, but the latter confirmed that the instructions came from *Cesar Duarte* and they should be paid as shortly as possible with whatever was then available.

Moreover, the procedure carried out to execute the economic-support agreement, after analysis thereof by the technical body in charge of supervising the public expenditure in the entity, the *State Superior Auditor,* was deemed *fraudulent,* since it violated multiple legal provisions related to the management of public funds. According to the State Superior Auditor, allocating funds to the

---

[20] In the <u>Agreement</u> dated April 10, 2019, there was determined that the information 5M4GYUH19A/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.
[21] In the <u>Agreement</u> dated October 25, 2018, there was determined that the information that FE54HD6SHJW/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

EX - DUARTE JAQUEZ - 000068

Sworn statement

entity in question was not admissible, owing to the existence of a *conflict of interest*, because upon execution of the agreement, *Cesar Horacio Duarte Jaquez* was acting as the *Governor of the State of Chihuahua*, and at the same time, he was the *chairman* of the *Board of Directors* of *Union Ganadera Regional Division del Norte del Estado de Chihuahua*. This conflict of interest resulted in *personal profits* or *undue benefits* for the former governor *Cesar Horacio Duarte Jaquez*. Moreover, there is no documentation or information whereby *Union Ganadera Regional Division del Norte del Estado de Chihuahua* proved that the economic support was allocated for the purpose established in the agreement, noting the absence of invoices that would prove that the equipment subject matter of the agreement was ever purchased.

According to information from the bank accounts analyzed by a financial expert, tracking the public funds transferred to Union Ganadera Regional Division del Norte confirms that a fraudulent procedure was used to deviate money from the State of Chihuahua to meet the interests of the then governor, Cesar Duarte, given that in addition to not being used for the intended purposes, it was allocated to the direct benefit of his wife, Bertha Gomez Fong, through a construction company called Pavimentos y Servicios de Parral, given that:



- Once *Union Ganadera Regional Division del Norte* had received public funds in its account from fraudulent financial support, on *June 20 and 27, 2011,* it transferred therefrom sums in the amount $50,000.00 *(fifty thousand pesos)* and $517,802.52 *(five hundred seventeen thousand, eight hundred two pesos, 52/100, Mexican currency)*, respectively, to an entity called *Pavimentos y Servicios de Parral S.A. de C.V.*

Furthermore, as there has been previously noted, *Bertha Olga Gomez Fong (Cesar Horacio Duarte Jaquez's* wife) is the owner of that company, which makes clear that the funding in question was used for purposes other than those for which it was intended. In other words, it went directly into the hands of a company run by the former governor's wife and not for *"acquisition of equipment needed for beef cattle artificial insemination in support of the producers who were members thereof"*.

In addition, once the company run by *Cesar Duarte's* wife received the money, the same was purely used for the governing couple's personal purposes, given that the following payments were among those made by *Pavimentos y Servicios de Parral S.A. de C.V.*:

- On *June 27, 2011,* a payment was made in the amount of *$43,844.75 (forty-three thousand, eight hundred forty-four pesos, 75/100, Mexican currency)*, to pay bill of credit card number                         1005, from the *American Express Company (Mexico) S.A.*, in the name of *Bertha Olga Gomez Fong.*

Sworn statement

- On *June 27, 2011*, a payment was made in the amount of *$19,090.00 (nineteen thousand, ninety pesos, 00/100, Mexican currency)* to *Victor Hugo Maldonado Gachupin*. Victor Hugo Maldonado Gachupin himself declared, with respect to this payment, that from *2010* to *2014*, Union Ganadera Regional Division del Norte would transfer money to him (generally in cash or by check) to pay the employee payroll at *"Rancho El Milagro"*, as well as other expenses, which included pasture, diesel, and spare parts. Moreover, protected witness identified with code *PYRTEJ/2018*,[22] who used to work for the family of the former governor *Cesar Horacio Duarte Jaquez* at his cattle properties, stated that *"Rancho El Milagro"* is owned by *Cesar Horacio Duarte Jaquez*, and its manager was *Victor Hugo Maldonado Gachupin*. This has been corroborated by a finding from the documentation on payroll payments and expenses in general from *"Rancho El Milagro"*, inside one of the properties owned by the former governor *Cesar Horacio Duarte Jaquez*; in other words, within his sphere of action.

It is also important to note that *the deviated money was subject to legal responsibility,[23] and hence, was under responsibility of the public officials involved*, since, as a result of their duties in different jobs within the State bureaucracy, they had powers that enabled them to make binding decisions in relation to how said funding would be managed and used so as to make it be transferred from the treasury, as there was the case of the *Governor of the State, the Secretary of the Treasury, the General Director of Public Investment Programs under the Secretary of the Treasury, the Chief Head of the Department of Programming and Payment Control under the Secretary of the Treasury, the Secretary of Rural Development, and the Director of Agricultural Development under the Secretary of Rural Development*. And the fact is, as already stated, among the implicit powers held by *Cesar Horacio Duarte Jaquez* as the head of the *State Executive Branch* was the power to manage the assets owned by the state.[24]

---

[22] In the Agreement dated December 13, 2018, there was determined that the information that PYRTEJ/2018 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

[23] See: Supreme Court of Justice of the Nation: First Division, "Non-binding legal precedent: 1st. / J. 27 / 99", *Weekly Judicial Bulletin of the Federation and its Gazette*, IX (May 1999), p. 310, Ninth Epoch. Non-binding Legal Precedent (Criminal). Registry 194043.

*EMBEZZLEMENT. THE CRIME LEGALLY DEFINED IN SECTION I OF ARTICLE 223 OF THE FEDERAL CRIMINAL CODE IS NOT MET WHEN IT INVOLVES CASHIERS, BY VIRTUE OF THEIR NOT HAVING POWERS TO LEGALLY POSSESS THE ASSETS THAT THEY TRANSFER.*

*The crime of embezzlement referred to in the provisions of Article 223, section I of the Federal Criminal Code, lies on the requisition and assumption that the perpetrator has received the assets related to the crime autonomously and with factual powers so as to be able to use them and divert them from their intended purpose, since only those public officials with powers to legally use the assets they receive derived from their duties may meet this predicate because the assets are found within the scope of their duties; also because if there is considered that with the sole precarious possession, the legal predicate may be met, there would be unnecessary to consider the element of the criminal definition set by the lawmaker consisting of conferral to the public official, by reason of their duties, either for administration, deposit or any other purpose, money, instruments, estate or any other asset owned by the State, a state-controlled body or a private party. Therefor, there would suffice to state that the crime of embezzlement is committed by the public official who diverts the aforementioned assets received by reason of their duties, and thus, there would be useless to state the capacity in which those were acquired. Consequently, persons who work as cashiers for the State or public bodies are technically not allowed to commit this type of embezzlement, because they were not granted the power of use over the assets they receive, in this case, money, inasmuch as they only possess it precariously, given that they receive it temporarily with the obligation of immediately handing it over to whoever is able to make use of the money; that is, they receive it derived from the nature of the duty they perform and not because they have been entrusted its custody, guardianship, or management.*

*Contradictory non-binding legal precedent 57/97. Among the precedents brought by the Second Collegiate Court of the Fifth Circuit and the Second Collegiate Court of the Fourteenth Circuit. March 17, 1999. Three-vote majority. Dissenting Judge: Humberto Roman Palacios and Juventino V. Castro y Castro. Lecturer: Olga Sanchez Cordero de Garcia Villegas. Secretary: Joel Carranco Zuñiga.*

*Non-binding legal precedent 27/99. Approved by the First Criminal Division of this Supreme Court of Justice of the Nation, on bench on April 14, 1999, unanimously voted by Chief Justices: Chair Justice Humberto Roman Palacios, Juventino V. Castro y Castro, Jose de Jesus Gudiño Pelayo, Juan N. Silva Meza, and Olga Sanchez Cordero de Garcia Villegas.*

[24] See: "Political Constitution of the State of Chihuahua", op. cit. (n. 9), Article 93, section XXXIV.

*The following are powers and obligations of whoever becomes the head of the State Executive Branch: [...] XXXIV. To acquire, administer, and dispose the State-owned assets, pursuant to the terms and conditions stipulated in this Constitution and the Law. The latter shall set out the system to which the assets acquired to perform the duties of the State legislative and judicial branches shall be subject. [...]*

EX - DUARTE JAQUEZ - 000070

Sworn statement

2.  Economic support itemized as public work number 6800685 in favor of *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR* in the amount of $9,210,000.00 (nine million, two hundred ten thousand pesos, 00/100, Mexican currency) and $2,790,000.00 (two million, seven hundred ninety thousand pesos, 00/100, Mexican currency).

On *October 4, 2011,* a payment was made in the amount of *$9,210,000.00 (nine million, two hundred ten thousand pesos, 00/100, Mexican currency)* by means of <u>Check</u> *number    5278,* and another payment was made in the amount of *$2,790,000.00 (two million, seven hundred ninety thousand pesos, 00/100, Mexican currency)* by means of <u>Check</u> *number    5277;* in both cases, those payments were charged to account number         )00-5 from *Santander Mexico S.A.* in the name of the *Secretary of the Treasury of the Government of the State of Chihuahua;* and credited to account number          ⁷741 from *Santander Mexico S.A.* in the name of *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR.*



These payments were intended to be justified under the concept of economic support itemized as work number *6800685,* for an alleged *"subsidy for the acquisition of beef heifer"* in favor of *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR ,* whose majority shareholder was Governor *Cesar Duarte.* There is witness evidence from the public officials implicated in this case, who have stated that granting this economic support was a false pretense, since this was only done to justify a deviation of public funds on behalf of then Governor *Cesar Duarte Jaquez,* as instructed by himself:

- Protected witness identified with code *KA5P23/2019,*[25] assisted by their defense attorney, stated that he was the *Secretary of Finance* during the Administration of *Cesar Duarte.* Also, he stated that he had signed documents that supported the release of those public funds in favor of *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR,* upon being instructed by former Governor *Cesar Duarte.*

- Protected witness identified with code *5M4GYUH19A/2019,*[26] assisted by his defense attorney, stated that he had been the *General Director* of *Investment Programs,* and said that processing of economic support itemized as work number 6800685 for an alleged *"subsidy to acquire beef heifer"* in favor of *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR,* was a false pretense and the payment made was unlawful. He stated that, in his capacity as public official, he signed part of the documentation processed to release the public funds at the instruction provided by *Carlos Hermosillo* on behalf of *Cesar Duarte,* then State Governor, and also because at the time there was signed, he had the authorization of *the person identified with code KA5P23/2019,* then acting as *Secretary of Finance.* The witness explained that said economic support was unduly granted to *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR,* because

---

[25] In the <u>Agreement</u> dated April 30, 2019, there was determined that the information that KA5P23/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

[26] In the <u>Agreement</u> dated April 10, 2019, it was determined that the information that 5M4GYUH19A/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

EX - DUARTE JAQUEZ - 000071

Sworn statement

by means of such the State public funds were directly disbursed to that entity; in other words, directly into *Cesar Duarte's* assets, because he was the majority shareholder and legal representative thereof. This had occurred despite a clear conflict of interest inasmuch as *Cesar Duarte* was both the State Governor and the beneficiary of an alleged social-interest program. There must be noted that process thereof was done outside of the normally established procedure because it was sped-up, despite of priorities previously scheduled, and the expense was charged to the *Cuenta Deudora* because they did not have the supporting documentation necessary to prove the disbursement of the funds. This was knowingly undue because it was not an urgent payment to face an emergency. So, the nature of the *Cuenta Deudora* was distorted with the sole purpose of facilitating cash outflow.

- Protected witness identified with code *FE54HD7SHJW/2019*,[27] assisted by his defense attorney, stated that he had acted as the *Chief Head of the Programming and Payment Control Division*. Furthermore, he alluded to two *Sole Payment Requests* itemized as *INE 052342011* and *INE 05235-2011*, both dated *October 4, 2011*, noting that they were individual payment requests processed by the *General Division of Public Investment Programs* under the *Secretary of the Treasury*, to be charged in *miscellaneous debtors*; thereby, the Department that he then headed was requested to respectively pay *$9,210,000.00 (nine million, two hundred ten thousand pesos, 00/100, Mexican currency)* and *$2,790,000.00 (two million, seven hundred ninety thousand pesos, 00/100, Mexican currency)* to *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR*, as a *subsidy for the acquisition of beef heifer*. The witness stated that said documents are part of the irregular processes carried out at the instruction from *Cesar Horacio Duarte Jaquez, then governor,* to release public funds for his personal interests. He added that upon allocating the funds, the executing entity did not have documentation to prove or justify the payment, and there was not demonstrated that there was any urgency to release the payment without any support. He also noted that *Carlos Hermosillo* was on the lookout for the funds to be immediately disbursed, since he had told him that former Governor *Cesar Duarte* needed 12 million pesos to be paid to *Financiera de la Division del Norte* on that same date.

However, the procedure carried out to execute the economic support agreement, after being analyzed by the technical body in charge of supervising public spending at the entity – the *State Superior Auditor*– was found to be fraudulent, given that it violated multiple legal provisions related to the management of public funds. According to the aforementioned *State Superior Auditor*, granting funds to the entity in question was not admissible due to the existence of a *conflict of interest*, since at the time the agreement was executed, *Cesar Horacio Duarte Jaquez* was acting as the *Constitutional Governor of the State of Chihuahua* and also a *majority shareholder* of *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR*. This *conflict of interest* derived in *personal benefits* or *undue profit* for the *former governor, Cesar Horacio Duarte Jaquez*. In addition, there is lack of documentation and information for *Union Ganadera Regional Division del Norte del Estado de Chihuahua* to prove that the economic support was used for the purpose subject matter of the agreement; moreover, there is emphasized the lack of validation of the list of beneficiaries and suppliers, documentation to prove the social impact of the program, records of delivery/receipt signed by the beneficiaries, the intermediary and the office of the secretary, information regarding quarterly reports on the programmatic, budgetary and financial progress thereof, and any quarterly follow-up by the Regulation and Monitoring Committee regarding the status of the purpose thereof being fulfilled.

Besides the irregularities noted above, there was also found that:

---

[27] In the Agreement dated October 25, 2018, it was determined that the information that FE54HD7SHJW/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

EX - DUARTE JAQUEZ - 000072

Sworn statement

- The provisions set forth in paragraphs *IX, X, XIV* of the *Operating Rules* and in clause *fourteen* of the *Agreement within the Coordination Framework for the Development of the Program for the Acquisition of Beef Heifer in the State of Chihuahua* had been violated, given that the *Regulation and Monitoring Committee* did not supervise the program adequately.

In addition, according to the bank accounts subject to the analysis of a financial expert, traceability or the route that the money took confirms that the economic support was a false pretense, since said funds were not used for the purpose intended in the agreement and this also generated a direct, immediate benefit for *Cesar Duarte*, given that he was the majority shareholder in *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR*. But added to that, the public funds deviated were used to *fund a Trust* in the name of the *former governor himself, Cesar Duarte,* and his wife, *Bertha Gomez Fong,* and also transferred to a construction company whose shareholders are persons associated to *Duarte Jaquez,* given that:



- On *October 10, 2011,* a payment was made in the amount of *$10,000,000.00 (ten million pesos, 00/100, Mexican currency)* by means of *Check* number charged to account number 7741 from *Santander Mexico S.A.* in the name of *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR*; and credited to account number 0947 from HSBC *Mexico S.A.* in the name of *Akala, S.A. de C.V. S.F.P.* In this regard, as there can be noted in the *Technical Financial-Accounting Report,* this *$10,000,000.00 (ten million pesos, 00/100, Mexican currency) was allocated to Trust* number 4743 from *Banco Mercantil del Norte S.A. in the name of Cesar Horacio Duarte Jaquez and Bertha Olga Gomez Fong,* according to bank documentation.

- On *October 12, 2011,* a charge was made in response to instructions in order to invest *$2,000,000.00 (two million pesos, 00/100, Mexican currency)*; from account number 7741 from *Santander Mexico S.A.* in the name of *Financiera de la Division del Norte S.A. de C.V.* This amount was disbursed on *December 14, 2011,* and that same day another payment was made in the amount of *$2,000,000.00 (two million pesos, 00/100, Mexican currency)* by means of a transfer denominated *enlace,* charged from account number 7741 from *Santander Mexico S.A.* in the name of *Financiera de la Division del Norte S.A. de C.V.*; and credited to *Finca Ingenieria Integral S.A. de C.V.* In this regard, according to information provided by the *Information and Criminal Analysis Unit,* the articles of incorporation of *Finca Ingenieria Integral S.A. de C.V.,* whose corporate purpose is construction and management of civil works, with registration date of *March 3, 1998* and policy number *795,* state *Cesar Humberto Javalera Leal* and *Raul Enrique Javalera Leal* as partners. They were mentioned in the statement rendered by *Bonifacio Carrasco,* as they witnessed the sale of a property denominated *"Rancho Santa Rita"*, since they were present along with *Carlos Hermosillo* to make the purchase; likewise, *Cesar Javalera* appears as a partner in the articles of incorporation of the entity denominated *Financiera de la Division del Norte S.A. de C.V.,* in which *Cesar Horacio Duarte Jaquez* also appears as majority shareholder thereof, and, also, a company called *Union Ganadera Regional Division del*

Sworn statement

*Norte*, as noted in the articles of incorporation registered on *January 16, 2008,* policy number *14130* [sic].

At this point, it is also important to mention that the *deviated money was subject to legal availability,*[28] *and due to that, was to be managed by the implicated public officials,* since, as a result of their duties at different positions held within the state bureaucracy, they had powers that enabled them to make binding decisions in relation to the management and allocation of said funds to make them be allocated out of the treasury; this is the case of the *State Governor,* the *Secretary of the Treasury,* the *General Director of Public Investment Programs* under the *Secretary of the Treasury,* the *Head Chief of the Division of Programming and Payment Control* under the *Secretary of the Treasury,* the *Secretary of Rural Development,* and the *Director of Rural Planning* under the *Secretary of Rural Development.* And the fact is, as already stated, that part of the duties conferred to *Cesar Horacio Duarte Jaquez* as head of the *Executive Branch* was the management of the assets owned by the state.[29]

3.    Economic support itemized as work number 6800685 in favor of *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR* in the amount of $12,000,000.00 (twelve million pesos, 00/100, Mexican currency).

On *January 10, 2012,* the Government of the State of Chihuahua made a payment to *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR* in the amount of *$12,000,000.00 (twelve million pesos, 00/100, Mexican currency)* by means of *Check* number   *5465;* charged to account number      *900-5* from Santander *Mexico S.A.* in the name of the *Secretary of the Treasury of the Government of the State of Chihuahua;* and credited to account number      *7741* from Santander *Mexico S.A.* in the name of said corporation.

| Secretary of the Treasury Gov. of the St. of Chih. Acct.          3637 Santander S.A. | 10/Jan/2012 $12,000,000.00 Check    5465 | Financiera de la Division del Norte S.A. de C.V. SOFOM ENR Account         7741 Santander S.A. |
|---|---|---|
| ———— | | ———— |

Said payment was intended to be justified on the basis of economic support itemized as work number *6800685* for an alleged "*subsidy for the acquisition of beef heifer*" (*see section 2 above*). There are witness statements rendered by the implicated public officials, who have referred that granting the economic support was just a false pretense, given that it was only done to justify the deviation of public funds in favor of the former Governor, *Cesar Duarte Jaquez:*

- As there has already been stated (*see section 2 above*), protected witness identified with code *KA5P23/2019,*[30] assisted by his defense attorney, stated that he acted as Secretary of the Treasury during the first years of Cesar Duarte's administration and that he had authorized the release of the $12,000,000.00 (twelve million pesos, 00/100, Mexican currency) at the behest of former governor *Cesar Duarte,* and due to that, he signed the documents that provided support for such payment; he also indicated that the process for paying *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR* was not legal.

---

[28] *See* Superior Court of Justice of the Nation: First Division, "Non-binding legal precedent: 1a / J. 27 / 99", *op. cit.* (*No.* 23).

[29] *See* "Political Constitution of the State of Chihuahua", *op. cit.* (*No.* 10), Article 93, section XXXIV.

The following are powers and obligations of whoever becomes the head of the State Executive Branch: [...] XXXIV. To acquire, administer, and dispose the State-owned assets, pursuant to the terms and conditions stipulated in this Constitution and the Law. The latter shall set out the system to which the assets acquired to perform the duties of the State legislative and judicial branches shall be subject. [...]

[30] In the Agreement dated April 30, 2019, there was determined that the information that KA5P23/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

FGE                                                                                                    26

Sworn statement

- Protected witness identified with code *5M4GYUH19A/2019*,[31] (*see section 2 above*), assisted by his defense attorney, stated that he had acted as *Director General of Investment Programs under the Secretary of the Treasury*. He stated that processing of the economic support itemized as work number 6800685, for an alleged *"subsidy for the acquisition of beef heifer"* was simulated, and that the payment for $12,000,000.00 (twelve million pesos, 00/100, Mexican currency) made to *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR,* was not legal. That he, acting as a public official, signed part of the documentation prepared to release the public funds at the instruction of *Carlos Hermosillo* on behalf of *Cesar Duarte*, then *State Governor*, and also because at the time he signed said official letter, he had the authorization of *the person identified with code KA5P23/2019*, then *Secretary of Finance*. The witness explained that said economic support was unduly granted to *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR*, because the State public funds were released directly to this corporation through that false pretense; which is to say, directly into the patrimony of *Cesar Duarte*, because he was the majority shareholder and legal representative thereof; this in spite of the clear conflict of interest of *Cesar Duarte* being both the *State Governor* and the beneficiary of a program supposedly for the social interest; there must be noted as well that the process was done outside of the ordinary procedure because processing thereof was sped up despite of other priorities previously scheduled, and the expense was charged to the *Cuenta Deudora* because they did not have supporting documentation to prove the disbursement of the funds. This was not right because it was not an urgent payment derived from contingency or emergency. Therefore, the nature of the *Cuenta Deudora* was distorted with the sole purpose of facilitating the cash outflow.

- Protected witness identified with code *FE54HD7SHJW/2019*,[32] assisted by his defense attorney, stated that he had acted as the *Chief Head of the Division of Programming and Payment Control under the Secretary of the Treasury*. He stated that he had participated in drafting the documentation to release the aforementioned public funds to *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR*, as a *subsidy for the acquisition of beef heifer*, which were part of the irregular procedures followed at the instructions provided by the former Governor *Cesar Horacio Duarte Jaquez*, even when there was no documentation available to justify or prove the disbursement of the funds. He stated that *Carlos Hermosillo* (when he acted as Director of the *FIDEAPECH*) told him that derived from the instructions provided by the then Governor *Cesar Duarte*, he should urgently release *$12,000,000.00 (twelve million pesos, 00/100, Mexican currency)* to *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR*, and that the request had already been received at the department for which he was responsible, and thereafter, the *Secretary of Rural Development* would provide them with the supporting documentation. The witness also stated this payment to be fully illegal, since the economic conditions for granting a subsidy were not met, much less for that amount, *$12,000,000.00 (twelve million pesos, 00/100, Mexican currency)*, added to the fact that there was the need to pay off liabilities registered in the expenditure of the previous corporate year and not those recorded in the *Cuenta Deudora*; added to the fact that at the time the payment was made, no agreement, contract or supplier invoice was delivered by whoever allegedly sold the heifer, nor was there a list of beneficiaries and documentation to support the release of funds.

---

[31] In the Agreement dated April 10, 2019, there was determined that the information that 5M4GYUH19A/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

[32] In the Agreement dated October 25, 2018, there was determined that the information that FE54HD6SHJW/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

EX - DUARTE JAQUEZ - 000075

Sworn statement

However, the procedure followed to execute the economic support agreement, after this was analyzed by the technical body in charge of supervising public spending at the entity – the *State Superior Auditor*– was found to be fraudulent, given that it violated multiple legal provisions related to the management of public funds. According to the aforementioned *State Superior Auditor*, granting funds to the entity in question was not legal derived from the existence of a *conflict of interest*, because at the time of the agreement was to be executed, *Cesar Horacio Duarte Jaquez* was acting as the *Constitutional Governor of the State of Chihuahua* and at the same time was a *majority shareholder* of *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR*. This *conflict of interest* derived in *personal benefits* or *undue profit* for the *former governor, Cesar Horacio Duarte Jaquez*. In addition, there is lack of documentation and information for *Union Ganadera Regional Division del Norte del Estado de Chihuahua* to prove that the economic support was used for the purpose subject matter of the agreement; moreover, there is emphasized the lack of validation of the list of beneficiaries and suppliers, documentation to prove the social impact of the program, records of delivery/receipt signed by the beneficiaries, the intermediary and the office of the secretary, information regarding quarterly reports on the programmatic, budgetary and financial progress thereof, and any quarterly follow-up by the Regulation and Monitoring Committee regarding the status of the purpose thereof being fulfilled.

Besides the irregularities noted above, there was also found that:

The provisions set forth in paragraphs *IX, X, XIV* of the *Operating Rules* and in clause *fourteen* of the *Agreement within the Coordination Framework for the Development of the Program for the Acquisition of Beef Heifer in the State of Chihuahua* had been violated, given that the *Regulation and Monitoring Committee* did not supervise the program adequately.

In addition, according to the bank accounts subject to the analysis of a financial expert, traceability or the route that the money took confirms that the economic support was a false pretense, since said funds were not used for the purpose intended in the agreement and this also generated a direct, immediate benefit for *Cesar Duarte*, given that he was the majority shareholder in *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR*.



Furthermore, once the funds were in the accounts of such corporations:

- On *January 11, 2012,* a charge was made, upon instructions, to make an investment of *$2,000,000.00 (two million pesos, 00/100, Mexican currency)* from account number *7741* from Santander *Mexico S.A.* in the name of *Financiera de la Division del Norte S.A. de C.V.* This amount was disbursed on *January 24, 2012.* On that same day other five payments were made in the amount of *$2,544,815.00 (two million, five hundred forty-four thousand, eight hundred fifteen pesos, 00/100, Mexican currency)* each, adding up to a total of *$12,724,075.00 (twelve million, seven hundred twenty-four*

EX - DUARTE JAQUEZ - 000076

Sworn statement

thousand, seventy-five pesos, 00/100, Mexican currency) charged to account number '741 from Santander Mexico S.A. in the name of Financiera de la Division del Norte S.A. de C.V.; payable to Financiera Rural.

Financiera Rural is a rural development bank run by the federal government, within the Ministry of Finance and Public Credit (SHCP), which according to the governing law, grants credits to Producers and Financial Intermediaries. According to investigations, the money to allegedly support stockbreeders to buy heifer was used to make payments to the abovementioned bank at the request of Financiera Division del Norte, owned by Cesar Duarte. In other words, the public funds were not given to stockbreeders from Chihuahua as a subsidy for the acquisition of beef heifer; instead, the funds were to be paid to a rural development bank engaged in lending money: Financiera Rural.

It is worthy of note that record of these financial transactions was found in documents discovered at a property owned by Cesar Duarte Jaquez, specifically in a notebook and a file bearing a legend that read "Settlements", seized on September 14, 2017, inside the premises located at Calle Tecolotes and San Patricio without number, Colonia Esmeralda, Municipality of Hidalgo del Parral, Chihuahua, owned by Cesar Horacio Duarte Jaquez, access thereto was reached pursuant to a court-ordered search warrant.

It is also important to mention here that the deviated money was subject to legal availability [33] and due to that, was to be managed by the implicated public officials, since, as a result of their duties at different positions held within the state bureaucracy, they had powers that enabled to them to make binding decisions in relation to the management and allocation of said funds to make them be allocated out of the treasury; this is the case of the State Governor, the Secretary of the Treasury, the General Director of Public Investment Programs under the Secretary of the Treasury, the Head Chief of the Division of Programming and Payment Control under the Secretary of the Treasury, the Secretary of Rural Development, and the Director of Rural Planning under the Secretary of Rural Development. And the fact is, as already stated, that part of the duties conferred to Cesar Horacio Duarte Jaquez had as head of the Executive Branch was management of the assets owned by the state.[34]

**4. Loan agreement with interest number 887/2011 in favor of Union Ganadera Regional Division del Norte in the amount of $5,000,000.00 (five million pesos, 00/100, Mexican currency).**

On January 9, 2012, a payment in the amount of $5,000,000.00 (five million pesos, 00/100, Mexican currency) was made by means of Check number )047, debited to account number 765-1 from Santander Mexico S.A. in the name of the Secretary of the Treasury for the Government of the State of Chihuahua; and credited to account number )800 from HSBC Mexico S.A. in the name of Union Ganadera Regional Division del Norte.

| Secretary of the Treasury Gov of the St. of Chih. Acct. 7651 Santander S.A. | 09/Jan/2012 $.5,000,000.00 Check 0047 | Union Ganadera Regional Division del Norte Account )800 HSBC Mexico S.A. |
|---|---|---|

[33] See. Superior Court of Justice of the Nation: First Division, ""Non-binding legal precedent: 1st / J. 27 / 99", op. cit. (No. 42).
[34] See Mexico: Chihuahua, "State Constitution of Chihuahua", op. cit. (No. 9), Article 93, section XXXIV.

EX - DUARTE JAQUEZ - 000077

Sworn statement

An attempt was made to justify this payment as *loan agreement with interest number 887/2011* between the *Government of the State of Chihuahua* and said *entity*, for an alleged *"loan to the entity for work capital, purchase of beef cattle"*. However, there are witness statements rendered by the implicated public officials, who have referred that granting the economic support was just a false pretense, given that it was only done to justify the deviation of public funds in favor of the former Governor, Cesar Duarte Jaquez, inasmuch as it was himself who ordered it:

- *Protected witness identified with code KA5P23/2019[35]*, assisted by his defense counsel, stated that he acted as *Secretary of the Treasury* during the early years of *Cesar Duarte's* administration, and that through the signing *of the Loan Agreement with Interest* number *887/2018, he* approved granting public money to *Union Ganadera Regional Division del Norte* by means of a loan for work capital and purchase of beef cattle, specifying that he received instructions from his superior, former governor *Cesar Duarte*, to sign said contract.

- *Protected witness identified with code 5M4GYUH19A/2019[36]*, assisted by his defense counsel, stated that, as *General Director of Investment Programs under the Secretary of the Treasury,* he authorized and signed *Record [number 001/2011],* dated November 9, 2011, *from the Technical Operational Committee of the State Program for the Development of Agriculture and Livestock, Agroindustry and Forestry Producers (PRODAAF, due to its initials in the Spanish language).* Thereby, there was agreed granting to *Union Ganadera Regional Division del Norte* a loan in the amount of *$5,000,000.00 (five million pesos, 00/100, Mexican currency)* for the purchase of beef cattle. It was *Roberto Dittrich,* public official assigned to the Secretary of Rural Development, who instructed that they should authorize said loan because former Governor *Cesar Horacio Duarte Jaquez* was requesting it through *Carlos Gerardo Hermosillo.* This is why they had to sign despite the fact that there was a conflict of interest, because the former was both, leader of *Union Ganadera,* entity that would be benefitted from the loan, and *Governor of the State.* But in addition, his superior, the person identified with code KA5P23/2019, then Secretary of the Treasury guaranteed the loan to the corporation linked to former Governor *Cesar Duarte,* despite the irregularity of doing so.

- Witness Joaquin Francisco Hernandez Vega, who back then acted as Treasurer of the Secretary of the Treasury, stated having signed Official Letter Number T-006/2012, dated January 6, 2012; thereby, the Head of the Division of Programming and Payment Control was requested to issue a check in the amount of $5,000,000.00 (five million pesos, 00/100, Mexican currency) in favor of *Union Ganadera Regional Division del Norte del Estado.* Besides, Hernandez Vega jointly signed Check Number 0000047, issued on January 6, 2012 from account number            ⁷765 held by the Secretary of the Treasury in Banco Santander, S.A. for the aforementioned *Union Ganadera* in the amount mentioned. The witness stated that he did the above at the request of his supervisor, then Head of the Secretary of the Treasury and at times because he was compelled by Carlos Hermosillo to facilitate cash outflow from the account intended to be affected in order to make some payments to *Union Ganadera Regional Division del Norte* because Carlos Hermosillo always argued that they had to comply with instructions provided by former Governor Cesar Duarte. The witness in question also said that this case was not common because, as far back as he can remember, during the time he acted as the *Treasurer,* the State Government had not lent money to private entities. Likewise, he stated that the loan granted in early 2012; and, as there happens every year in or about and between the same dates, the tax system is amid the closing of the corporate year. Thus, there is no availability of resources.

[35] In the Agreement dated April 30, 2019, there was determined that the information KA5P23/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.
[36] In the Agreement April 10, 2019, there was determined that the information that 5M4GYUH19A/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

EX - DUARTE JAQUEZ - 000078

Sworn statement

- *Protected witness identified with code FE54HD7SHJW/2019[37], assisted by his defense counsel, stated that he served as Chief Head of the of the Division of Programming and Payment Control of the Secretary of the Treasury. He also alluded to Official letter number T-006/2012 dated January 6, 2012, and mentioned that Francisco Hernandez Vega, then Treasurer of the Secretary of the Treasury, asked him to draft a check in the amount of $5,000,000.00 (five million pesos, 00/100, Mexican currency) in favor of Union Ganadera Regional Division del Norte del Estado de Chihuahua. Upon receipt of the official letter, he personally discussed the matter with the then Treasurer, who indicated that it was necessary to carry out this procedure since they already had the authorization of the person identified with code KA5P23/2019, then Secretary of the Treasury. He also stated that the loan agreement should have not been concluded because there was a conflict of interest, inasmuch as the funds were granted to the aforementioned Union Ganadera Regional Division del Norte in which Cesar Duarte had a particular interest during the time he acted as Governor.*

On the other hand, the procedure conducted to sign the loan agreement with interest (loan), after analysis thereof by the technical body in charge of supervising the public expenditure in the entity, the State Superior Auditor, was deemed *fraudulent*, since it violated multiple legal provisions related to the management of public funds. According to the State Superior Auditor, allocating funds to the entity in question was not admissible, owing to the existence of a *conflict of interest*, because upon execution of the agreement, *Cesar Horacio Duarte Jaquez* was acting as the *Governor of the State of Chihuahua*, and at the same time, he was the *chairman* of the *Board of Directors* of *Union Ganadera Regional Division del Norte del Estado de Chihuahua*. This conflict of interest resulted in *personal profits* or *undue benefits* for the former governor *Cesar Horacio Duarte Jaquez*. Moreover, there is no documentation or information whereby *Union Ganadera Regional Division del Norte del Estado de Chihuahua* proved that the loan granted was used for the acquisition *of work capital: purchase of beef cattle.*

In addition to the irregularities noted, there was detected that:

- The execution of the agreement lacked *proof of budgetary capacity,* which does not comply with the *provisions of clause 4 subsection d)* of the Program Operating Rules[38].

- The amount of the credit granted exceeded the maximum financing amount and the term established in *section III number 1* of the Program Operating Rules[39].

- The interest payment obligation stipulated in the loan agreement with interest was not fulfilled because in clause four thereof, *Union Ganadera Regional Division del Norte del Estado de Chihuahua* is obligated to make one single payment on June *30, 2013; however, there is no evidence of any documentation related to the fulfillment of the payment of the loan in question.*

It is important to point out, then, that this credit was granted illegally to *Union Ganadera,* and since it was fraudulent, it obviously was *not paid.*

---

[37] In the Agreement dated October 25, 2018, there was determined that the information FE54HD7SHJW/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

[38] Operating Rules of the State Program for the Development of Agriculture and Livestock, Agroindustry and Forestry Producers (PRODAAF), clause paragraph d):
   *The Operational Technical Committee shall have the following powers: d) Request, through an official letter and through its President, that the Secretary of the Treasury provide proof of budgetary allocation to the Secretary of Rural Development.*

[39] Operating Rules of the State Program for the Development of Agriculture and Livestock, Agroindustry and Forestry Producers (PRODAAF), section III number 1:
   *[...] the financing scheme for Working Capital is aimed at the acquisition of consumable items and smaller equipment, through the financing of resources for a maximum term of 1 year. The maximum financing amount shall be up to $ 80,000.00 (eighty thousand pesos, 00/100, Mexican Currency) per natural person (Applies to groups legally made up of natural persons provided that the amount does not exceed one million pesos), corresponding to 80% of the value of the investment, no VAT included, and, if a larger capital is required, it may be submitted to the Committee for consideration, and the Office of the Secretary of Rural Development must submit justification for the proposal.*

EX - DUARTE JAQUEZ - 000079

Sworn statement

Also, according to the information in the bank accounts analyzed by a financial expert, traceability of the public funds granted to *Union Ganadera Regional Division del Norte* del Estado for the alleged loan confirms that the funds were not used as stipulated in the agreement, and that, in addition, they generated a benefit for *Cesar Duarte Jaquez and* people close to him, inasmuch as they were used to pay Raul Yañez Bustillos for cattle privately purchased by a partner and operator of *Cesar Duarte,* Carlos Hermosillo. Also, to acquire real estate to the family business *Nueces la Esperanza S.A. de C.V.* and to deposit a million pesos to a savings account at a financial institution denominated Akala.



- On *January 18, 2012,* a payment was made in the amount of *$561,340.00 (five hundred sixty-one thousand three hundred forty pesos, 00/100, Mexican currency)* by means of <u>Check</u> number   0476, charged from account number     4800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte* and payable *to Raul Yañez Bustillos,* Federal Taxpayer Registry Code No.          7BAA. However, the person who received this money, that is, *Raul Yañez Bustillos,* stated that he had sold cattle to people who acted as public officials in the state administration from 2010 - 2016, but <u>in the sale acts, those always acted as private parties;</u> and he remembers that, during the first three years of that State administration, he sold cattle *to Carlos Hermosillo, partner* and operator of *Cesar Duarte.*

- On *January 23, 2012,* a payment was made in the amount of *$3,000,000.00 (three million pesos, 00/100, Mexican currency) by means of <u>Check</u>* number   0477, charged from account number          4800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte to Nueces la Esperanza S.A. de C.V., Federal Taxpayer Registry Code No.*          7UU8. However, witness *Juan Ruben Barrio Garza,* who works within the administration of the family business *Nueces la Esperanza S.A. de C.V.,* stated that in *2012 Union Ganadera Division del Norte* was sold a very large property located by the *Cuauhtemoc* exit behind the *truck terminal,* which is located *on Calle 120, Colonia la Esperanza;* a sale in the amount of *$3,000,000.00 (three million pesos, 00/100, Mexican currency).*

- On *January 25, 2012,* a payment was made in the amount of *$1,000,000.00 (one million pesos, 00/100, Mexican currency) by means of <u>Check</u>* number   0479, charged from account number          1800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte to account number*          7630 from Akala, *S.A. de C.V. S.F.P.* on behalf of *Union Ganadera Regional Division del Norte.*

EX - DUARTE JAQUEZ - 000080

Sworn statement

At this point, it is also important to mention that the *deviated money was subject to legal availability* [40] and due to that, was to be managed by the implicated public officials, since, as a result of their duties at different positions held within the state bureaucracy, they had powers that enabled them to make binding decisions in relation to the management and allocation of said funds to make them be allocated out of the treasury; this is the case of the *State Governor, the Secretary of the Treasury, the Treasurer of the Secretary of the Treasury, the Chief Head of the Division of Programming and Payment Control* under the Secretary of the Treasury, the *Secretary of Rural Development*, and the *Director of Agricultural Development* under the Secretary of Rural Development. And the fact is, as already stated, that part of the duties conferred to *Cesar Horacio Duarte Jaquez* as head of the *Executive Branch* was the management of the assets owned by the state [41].

5.   **Economic support itemized with number 991/2011 in favor of *Union Ganadera Regional Division del Norte* in the amount of $36,000,000.00 (thirty-six million pesos, 00/100, Mexican currency).**

On *January 10, 2012,* a payment was made in the amount of *$16,000,000.00 (sixteen million pesos, 00/100, Mexican currency)* by means of *Check number* 5464, to *Union Ganadera Regional Division del Norte*. Then, on *January 25, 2012,* another payment in the amount *$10,000,000.00 (ten million pesos, 00/100, Mexican currency)* was made by means of *Check number* 7104, also to the selfsame corporation. And finally, on *March 15, 2012,* a payment was made in the amount of *$10,000,000.00 (ten million pesos, 00/100, Mexican currency)* by means of *Check number* 7781, to this corporation bonded to *Cesar Duarte*. All three payments were charged to account number 9005 from Santander *Mexico S.A.* in the name of the *Secretary of the Treasury of the Government of the State of Chihuahua* and credited to account number 4800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte*.



| | | |
|---|---|---|
| | 10/Jan/2012 $16,000,000.00 Check 5464 | |
| Secretary of the Treasury Gov of the St. of Chih. Account 9005 Santander S.A. | 25/Jan/2012 $10,000,000.00 Check 7104 | Union Ganadera Regional Division del Norte Account 4800 HSBC Mexico S.A. |
| | 15/Mar/2012 $10,000,000.00 | |

There was intended to justify these payments as part of *economic support number 991/2011,* for an alleged *"payment of compensation to producers transporting their unproductive cattle to places where they were to be sacrificed"*. However, there are witness statements rendered by the implicated public officials, who have referred that granting the economic support was just a false pretense, given that it was only done to justify the deviation of public funds in favor of the former Governor, *Cesar Duarte Jaquez*, given that it was himself who ordered it:

- Protected witness identified with code *KA5P23/2019*[42], assisted by his defense attorney, stated that he had acted as *Secretary the Treasury*, during the first years of Cesar Duarte's Administration. Furthermore, he alluded to *Financial Support Agreement*

---

[40] See Supreme Court of Justice of the Nation: First Division, "Non-binding legal precedent: 1a./J. 27/99, " *op. cit.* (n. 23).

[41] See "Political Constitution of the State of Chihuahua," *op. cit.* (n. 10), art. 93 Section XXXIV

*The following are powers and obligations of whoever becomes the head of the State Executive Branch: [...] XXXIV. To acquire, administer, and dispose the State-owned assets, pursuant to the terms and conditions stipulated in this Constitution and the Law. The latter shall set out the system to which the assets acquired to perform the duties of the State legislative and judicial branches shall be subject. [...]*

[42] In the Agreement dated April 30, 2019, there was determined that the information that KA5P23/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

EX - DUARTE JAQUEZ - 000081

Sworn statement

number 991/2011, dated December 1, 2011 (through which the Government of the State of Chihuahua committed to provide Union Ganadera Regional Division del Norte with the financial support in question), which he signed, noting that said agreement had been brought to him by Carlos Hermosillo and Octavio Legarreta for him to sign, and at first, he rejected approval thereof given the irregularities that he detected, but he ended up signing when the former Governor Cesar Duarte ordered him so.

- Protected witness identified with code 5M4GYUH19A/2019[43], assisted by his defense attorney, stated that he had acted as General Director of Investment Programs. Moreover, he alluded to Official letter of Approval number 2011-INE-A-0789, dated December 22, 2011 (through which there was authorized to disburse the funds to Union Ganadera), which he signed, noting that this process for economic support was not legal, since it was granted under instructions provided by Cesar Duarte, because Carlos Hermosillo contacted him a few days before the document was signed and informed the instruction given by the then Governor. Said witness also pointed out that, since there was no documented proof for releasing the funds, and he was being pressured by Carlos Hermosillo, he informed this to the then Secretary of Finance; the latter provided him with his immediate consent to authorize budgetary allocation, and that same day he signed approval thereof, the expense was registered in the Cuenta Deudora, precisely because there was no documented proof. He noted that said process was done in violation of the established rules and procedures.

- Protected witness identified with code FE54HD7SHJW/2019,[44] assisted by his defense attorney, stated that he had acted as Head of the Department of Programming and Payment Control under the Secretary of the Treasury. He noted that Carlos Hermosillo was the person who instructed him to deliver 36 million pesos in favor of Union Ganadera Division del Norte, pointing out that the Secretary of Rural Development would send a request on that same date to release that amount, and afterwards would send supporting documentation to justify and prove the expense. Carlos Hermosillo requested for the payment to be made on a single day, despite not having any justification or documentation. The witness noted that when the sole payment request (INE 00001-2012) was received in his division, he presented it to his supervisor, Ruiz Palma, and told him what Carlos Hermosillo had instructed, informing him that, since it was the beginning of the year, no cash flow was available to make a lump-sum payment, as Carlos Hermosillo had requested. Therefore, Ruiz Palma suggested and authorized that the payment be made in installments, as cash flow allowed, because it was a payment that the governor had requested. The witness also noted that when the rest of the payments were made, Ruiz Palma was no longer working at the Secretary of the Treasury, but Rafael Artega, the person who took his position as Director of Expenditure gave his approval, since Carlos Hermosillo had also told him that those were instructions provided by the governor.

The witness in question noted that the documents that were generated to process the payment to Union Ganadera Division del Norte were insufficient to justify or prove the 36-million-peso disbursement for economic support.

Furthermore, the procedure followed to execute the economic-support agreement, after analysis thereof by the technical body in charge of supervising the public expenditure in the entity,

---

[43] In the Agreement dated April 10, 2019, there was determined that the information that 5M4GYUH19A/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.
[44] In the Agreement dated October 25, 2018, there was determined that the information that FE54HD6SHJW/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

Sworn statement

the *State Superior Auditor,* was deemed *fraudulent,* since it violated multiple legal provisions related to the management of public funds. According to the State Superior Auditor, allocating funds to the entity in question was not admissible, owing to the existence of a *conflict of interest,* because upon execution of the agreement, *Cesar Horacio Duarte Jaquez* was acting as the *Governor of the State of Chihuahua,* and at the same time, he was the *chairman* of the *Board of Directors* of *Union Ganadera Regional Division del Norte del Estado de Chihuahua.* This conflict of interest resulted in *personal profits* or *undue benefits* for the former governor *Cesar Horacio Duarte Jaquez.* Moreover, there is no documentation or information whereby *Union Ganadera Regional Division del Norte del Estado de Chihuahua* has proved that the economic support was used for the purpose established in the agreement even when there was a list of people at the *Secretary of Rural Development* who might be considered *"presumed beneficiaries",* neither their personal identification nor any other data that would corroborate their involvement as beneficiaries is attached thereto. Added to that is the fact that there is no prior request from *Union Ganadera Regional Division del Norte,* which sets out the list of beneficiaries to whom said support would be allocated. The archives do not either contain the operating rules for execution of the abovementioned incentives, nor is there reference made thereto in the documentation produced.

In fact, the list of persons contained in the administrative file of the agreement in question allegedly contained the signatures of 45 people; upon investigation, there was found that these had passed away by the date in which the alleged support was delivered, and therefore, it was materially impossible for them to sign the documentation. This makes evident that the document was false and the process to release funds to *Union Ganadera Division del Norte* was fraudulent. In other words, that list had the signatures of deceased people when the documents were drafted.

Furthermore, the document also contains the forged signatures of *Enrique Alvarado Moreno, Manuel Ramirez Vazquez, Mario Fierro Tarango, Juventino Peña Armendariz, Jose Heriberto Aguilar Murga,* and *David Olivas Aguilar,* as they have stated, and added that at no point have they received the amounts listed therein.

Besides the irregularities previously noted, there was also detected that there was a breach to *economic support agreement number 991/2011* with respect to its effective period, since clause seven thereof states that *"the parties agree that validity of this agreement begins upon execution of this instrument and shall last until December 31, 2011, period in which funds shall be periodically disbursed in accordance with the budgetary allocation available; implementation and development thereof shall be supervised in conformity with the stipulations agreed";* however, validity thereof was breached, given that funds were found to have been disbursed on *January 10, 2012* by means of *Check number 016464;* on *January 25, 2012* by means of *Check number* '104 and on *March 15, 2012* by means of *Check* number 6781.

On the other hand, according to bank accounts analyzed by a financial expert, the route of the public funds delivered confirms that they were not used for their intended purpose, and that it also generated a benefit for the accused person and/or people close to him. It is therefore clear that the economic support in question was a false pretense, given that:

FGE

35

Sworn statement



Sworn statement

- On *January 25, 2012*, six payments were made in amounts of *$1,200,000.00 (one million two hundred thousand pesos, 00/100, Mexican currency)* by means of <u>Checks</u> *0480, 0481, 0482, 0483, 0484 and 0485*, for a total of *$7,200,000.00 (seven million two hundred thousand pesos, 00/100, Mexican currency 00/100)*; all six payments were debited to account number *4800* from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte*; *and* respectively credited to *Bonifacio, Margarita, Mauro, Luz, and Josefina*, all surnamed *Carrasco Garcia*. In their statements, these five people indicated, in that regard, that the payment had been given to them for the purchase of the rustic properties denominated *"Santa Rita," "San Juan," "Galemes,"* and *"El Cuervo,"* located in the Municipality of *Camargo, Chihuahua*, which were acquired through processing carried out by *Carlos Hermosillo Arteaga*, whom they knew was an operator for the former Governor *Cesar Duarte*. They also added that the properties were registered in the name of *Gustavo Alfonso Gonzalez Duarte*, at a notary public in the municipality of *Hidalgo de Parral*, at the request of *Carlos Hermosillo* himself, despite the fact that this person was not part of the sales transaction, and they never met with him. These 4 properties are jointly known as *Rancho Santa Rita*, with an area of 30,000 hectares.

Furthermore, witness *NI37SC94WQ/2019*, who worked at *Cesar Duarte Jaquez's* rural properties, indicated that, as part of his duties, he relocated the cattle from *Rancho Santa Rita* to *Rancho El Saucito*, the latter owned by *Cesar Duarte*. He pointed out that he and the other workers knew that *Rancho Santa Rita* was owned by *Cesar Duarte* and that a person close to him, *Pedro Baca Gomez*, nephew of *Bertha Gomez Fong*, acted as his administrator. The previously mentioned witness *56RT65PW7* also mentioned that, when working with *Cesar Duarte* in his *Government* within the *Secretary of the Treasury*, he found that the latter was the owner of *Rancho Santa Rita*. In addition, at one of the domiciles related to *Cesar Duarte*, this is, *Tecolotes and Calle San Patricio, without number, Colonia Esmeralda, Hidalgo del Parral, Chihuahua*, various documents regarding expenses generated by Rancho *Santa Rita* were found.

The public funds were thus used for the purchase of *Rancho Santa Rita*, which, according to the investigations carried out, seemingly belongs *to Cesar Duarte*.

- On *January 30, 2012*, a payment was made in the amount of *$514,800.00 (five hundred fourteen thousand eight hundred pesos, 00/100, Mexican currency)* by means of <u>Check</u> number *0486*, debited to account number *4800* from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte* and credited to *Grupo Agropecuario Buda S.P.R. de R.L. de C.V.* On *Wednesday, October 10, 2012*, a payment was made in the amount of *$514,800.00 (five hundred fourteen thousand eight hundred pesos, 00/100, Mexican currency)* by means of <u>Check</u> number *0680*, debited to account number *4800* from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte* and credited to *Grupo Agropecuario Buda S.P.R. de R.L. de C.V.* Likewise, on *October 30, 2012*, a payment was made in the amount of *$1,655,762.50 (one million six hundred fifty-five thousand seven hundred sixty-two pesos, 50/100, Mexican currency)* by means of <u>Check</u> number *0702*; another in the amount of *$654,267.00 (six hundred fifty-four thousand two hundred sixty and seven pesos, 00/100, Mexican currency)* by means of <u>Check</u> number *0703, and* another in the amount of *$208,919.00 (two hundred eight thousand nine hundred nineteen pesos, 00/100, Mexican currency)* by means of <u>Check</u> number *0704*; in all three cases, debited to account number *1800* from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte* and credited *to Alvaro Ivan Bustillos Fuentes*. In this regard, the testimony of *Alvaro Bustillos Delgado*, owner of the business called *Grupo Agropecuario Buda S.P.R. de R.L. de C.V.*, which is engaged in the breeding and sale of Angus breed cattle, specifies that the check drawn from the company in question in the amount of *$514,800.00 (five hundred fourteen thousand eight hundred pesos, 00/100, Mexican currency)*, as well

SBU

EX - DUARTE JAQUEZ - 000085

Sworn statement

as the checks in the name of his son, *Alvaro Ivan Bustillos Fuentes,* adding up to the amount of *$3,451,780.00 (three million four hundred fifty-one thousand seven hundred eighty pesos, 00/100, Mexican currency),* in the year *2012,* were for the purchase of *Angus* bulls for breeding, a deal which was directly made with former Governor *Cesar Duarte Jaquez,* who asked him to be invoiced for *Union Ganadera Regional Division del Norte.* This person also points out that *Carlos Hermosillo* was responsible for receiving the invoices and delivering the checks.

- On *February 16, 2012,* a payment was made in the amount of *$30,000.00 (thirty thousand pesos, 00/100, Mexican currency) by means of* <u>Check</u> *number     )299,* and on *March 7, 2012* another was made in the amount of *$44,000.00 (forty-four thousand pesos, 00/100, Mexican currency) by means of* <u>Check</u> *number    0304;* both debited to account number    1800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte and to Ruth Sarai Martinez Mariscal.* In this regard, as noted by *Irvin Jahir Ontiveros Vasquez, Hugo Miyamoto Contreras* and Protected witness identified with code *NI37SC94WQ/2019*[45], and there has even been mentioned, *Ruth Sarai Martinez Mariscal* worked for *Cesar Duarte:* at the same time at *Union Ganadera Regional Division del Norte* and at *Financiera Division del Norte, S.A. de C.V. SOFOM ENR.*

- On *February 13, 2012,* a payment was made in the amount of *$100,000.00 (one hundred thousand pesos, 00/100, Mexican currency) by means of* <u>Check</u> *number     )487,* and on *March 2, 2012* a payment was made in the amount of *$151,164.00 (one hundred and fifty-one thousand one hundred sixty-four pesos, 00/100, Mexican currency) by means of* <u>Check</u> *number     )491;* in both cases debited to account number     1800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte* and credited to *Pavimentos y Servicios de Parral.* As there has already been mentioned, the corporation *Pavimentos y Servicios de Parral S.A. de C.V.,* whose corporate purpose is construction, is owned by *Bertha Olga Gomez Fong,* wife of former Governor *Cesar Horacio Duarte Jaquez.*

- On *February 14, 2012,* a payment was made in the amount of *$1,000,000.00 (one million pesos, 00/100, Mexican currency) by means of* <u>Check</u> *number     )488,* debited to account number    1800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte* and credited to *Brando S.A. de C.V., Taxpayer Registry Code No.      )GB3.* In this regard, the corporation *Brando S.A. de C.V.* is bound to former Governor *Cesar Duarte* given that, among the evidence found inside his domicile, located in Tecolotes and Calle San Patricio without number, Colonia Esmeralda, Hidalgo del Parral, Chihuahua, multiple documents regarding said company were found. Likewise, one of the partners at *Brando S.A. de C.V.* is *Gustavo Alfonso Gonzalez Duarte,* in whose name the property identified as *Rancho Santa Rita* is also registered; that is, the ranch that was purchased from *Bonifacio, Margarita, Mauro, Luz* and *Josefina,* all surnamed Carrasco Garcia, and according to the investigations, is property of *Cesar Duarte.*

- On *February 15, 2012,* a payment was made in the amount of *$30,000.00 (thirty thousand pesos, 00/100, Mexican currency) by means of* <u>Check</u> *number    0301,* debited to account number    4800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte* and credited to *Jose Antonio Perez Villarreal.* In this regard, *Jose Antonio Perez Villarreal* stated to have made professional practice at *Union Ganadera Regional Division del Norte* and/or *Financiera Division del Norte, S.A. de C.V. SOFOM ENR, and* only once did he receive a deposit from said company, in an estimated amount of *$30,000.00 (thirty thousand pesos, 00/100, Mexican currency),* which was made to cover the transportation, lodging and food expenses for him to attend a training course in the city of *Monterrey* by *Asociacion Mexicana de Sociedades Financieras de Arrendamiento, Credito y Facturaje (Mexican Association of Leasing, Credit and Billing Financial Corporation).*

---

[45] In the <u>Agreement</u> dated January 28, 2019, there was determined that the information NI37SC94WQ/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

EX - DUARTE JAQUEZ - 000086

Sworn statement

- On *March 7, 2012*, a payment was made in the amount of *$18,000.00 (eighteen thousand pesos, 00/100, Mexican currency) by means of* <u>*Check*</u> *number*     0303, debited to account number     4800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte and* credited to *Edgar Jesus Perez Morales*. In this regard, *Edgar Jesus Perez Morales* stated that he is a blacksmith, and that in *2012 he* received a deposit in the amount of *$18,000.00 (eighteen thousand pesos, 00/100, Mexican currency)* from *Union Ganadera Regional Division del Norte* for general maintenance provided to corrals in the municipality of *Saucillo.*

- On *March 15, 2012*, a payment was made in the amount of *$250,000.00 (two hundred fifty thousand pesos, 00/100, Mexican currency) by means of* <u>*Check*</u> *number*     0493, debited to account number     4800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte and* credited to *Gildardo Ronquillo Aguayo*, Federal Taxpayer Registry Code No.      31P1. In this regard, *Gildardo Ronquillo Aguayo* stated that he has a business called *"Viveros Daniela", and* that in or about and between *2012 Carlos Hermosillo* met with him to deal the sale of approximately *two thousand walnut trees*, agreeing on a price of *$125.00 (one hundred and twenty-five pesos, 00/100, Mexican currency)* per tree. Days later, he was deposited *$250,000.00 (two hundred and fifty thousand pesos, 00/100, Mexican currency)* in his bank account and, the next day, the walnut trees were taken away in pick-up trucks labeled with the name of *Carlos Hermosillo*. That is, the money was used to buy walnut trees.

- On *June 6, 2012*, a payment was made in the amount of *$30,434.19.00 (thirty thousand four hundred thirty-four pesos, 19/100, Mexican currency) by means of Check* number     0680, debited to account number     4800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte and* credited to *Union Ganadera Regional Division del Norte* and to *Carlos A. Garza*, Federal Taxpayer Regisry Code     1GX8 (therein, reference is made to the item *"fees")*. In this regard, *Carlos Alejandro Garza Saenz* stated that in *2012 he* received a payment in an estimated amount of *$30,000.00 (thirty thousand pesos, 00/100, Mexican currency)* from *Union Ganadera Regional Division del Norte*; the above, for registration fees for two deed instruments with numbering derived from public deed instruments 494 and 495 of the record that correspond to two properties located in the city of *Saucillo, Chihuahua*. In other words, public funds were used to pay notary expenses for the purchase of real estate.

- On *June 7, 2012*, a payment was made in the amount of *$10,000,000.00 (ten million pesos, 00/100, Mexican currency) by means of* <u>*Check*</u> *number*     0656, debited to account number     1800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte* and credited to *Valles Baca Hermanos S.P.R. de R.L. de C.V.*, Federal Taxpayer Registry Code No.      41Y7. This legal entity is bound to former Governor *Cesar Duarte*, since one of its main shareholders, *Otto Alberto Valles Baca*, was mentioned by aforementioned witness *56RT65PW7* as *Cesar Duarte's* operator in the diversion of public money through his companies. Also, witness *Karla Mercedes Duran Baca* pointed out that the *Baca Valles Brothers* are friends and straw-persons for *Cesar Horacio Duarte Jaquez.*

In addition, said legal entity, *Valles Baca Hermanos S.P.R. de R.L. de CV.*, is bound to *Cesar Duarte* as follows: *a)* according to a search warrant executed in the properties located at *Avenida Juarez No. 12, Colonia Centro; Avenida Juarez No. 2, Colonia Centro; Callejon del Beso No. 4, Colonia Centro, and Callejon del Beso No. 8, Colonia Centro,* all of them in *Hidalgo del Parral, Chihuahua,* there is evidence that the properties in question were acquired by former Governor *Cesar Horacio Duarte Jaquez,* through *Valles Baca Hermanos S.P.R. de R.L. de C.V.; b)* Also, regarding the property called *"Rancho el Milagro",* its purchase was made by *Carlos Gerardo Hermosillo Arteaga, and,* according to investigations, it is owned by *Cesar Duarte.* In addition, after its seizure carried out by the Office of the State Attorney General during a judicial search conducted on September *10, 2017,* it was claimed by *Otto Alberto Valles Baca,* a shareholder of the corporation *Valles Baca Hermanos S.P.R. de R.L. de C.V.,*

39

who also stated to be the owner of the property; and c) the owners of the legal entity called *Valles Inmobiliaria y Constructora Vaconsa S.A. de C.V.* are the same owners of *Valles Baca Hermanos S.P.R. de R.L. de CV, and* made the purchase of the property located in *Calle Callejon del Beso No. 4, Colonia Centro* through that company.

- On *June 12, 2012,* a payment was made in the amount of *$2,000,000.00 (two million pesos, 00/100, Mexican currency) by means of Check number* 0657, debited to account number 4800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte and* credited *to Soledad Baca.* In this regard, *Soledad Baca Vazquez* stated that she received a check in the amount of *$2,000,000.00 (two million pesos, 00/100, Mexican currency)* for the purchase of a property owned by her grandson *Diego Tranquilino Lopez Duran and* of which she was the executor; such property is located at *Calle Juarez No. 10, Colonia Centro,* in the city of *Hidalgo del Parral[46].* In regard to it, *Carlos Hermosillo* contacted her and told her that he belonged to an entity of *the State Government and* offered her to buy the property, because they wanted to build a square and erect a statue of Pancho Villa on horseback. The person also reported that she received the check at the offices of *Carlos Hermosillo,* located in *Plazuela Morelos, and* then deposited the check in her account; likewise, that at the time the deed was signed before Notary *Ulloa,* she realized that the documents stated that <u>she was selling the property to *Manuel Valles Baca and* his wife,</u> and then she found out that the sale was not for *the State Government.* The above was corroborated by the statement of *Karla Mercedes Duran Baca,* mother of *Diego Tranquilino Lopez Duran,* who stated that her mother *Soledad Baca Vazquez* received the check because she was the executor thereof, that the check was delivered to her by *Carlos Hermosillo* who, as far as she knew was secretary to *Cesar Horacio Duarte Jaquez,* former governor of the State, and that the check was delivered at offices located at *Plaza Morelos* de *Hidalgo del Parral* and belonged to a financial company called *Division del Norte.* Likewise, said individual added that, in *2016,* once her son reached legal age, they appeared at the office of Attorney *Ulloa and* noted that <u>the deeds were in the name of *Manuel Valles Baca, a shareholder in the aforementioned corporation Valles Baca Hermanos S.P.R. de R.L. de C.V., and* his wife named *Amapola,*</u> whom she knows are friends and straw-persons for Mr. *Cesar Horacio Duarte Jaquez.*

- On *July 2, 2012,* a payment was made in the amount of *$2,000,000.00 (two million pesos, 00/100, Mexican currency) by means of Check number* 0661, debited to account number 4800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte and* debited to *Antonio Velazquez Corral.* In this regard, *Antonio Velazquez Corral* stated that in *2012, Carlos Hermosillo* contacted him to buy a property located at *kilometer 4.5 of highway Parral-Chihuahua,* which has an estimated area of one and a half hectares, sale which he accepted by setting a price of *$5,000,000 (five million pesos, 00/100, Mexican currency).* The individual also noted that the sale was made in early *2012,* and he firstly received a check in the amount of *$ 2,000,000.00 (two million pesos, 00/100, Mexican currency)* from *Pavimentos* (he does not remember the full name of the company), and a <u>few months later he received another check for an additional amount of *$2,000,000.00 (two million pesos, 00/100, Mexican currency)*</u>; months later he received another in the amount of *$1,000,000.00 (one million pesos, 00/100, Mexican currency)* but he does not recall who had issued them, only that they bore two signatures. The individual pointed out that the three checks were received at the offices located in *Plazuela Morelos* in the city of *Hidalgo del Parral,* Chihuahua.

- On *October 30, 2012,* a payment was made in the amount of *$318,000.00 (three hundred eighteen thousand pesos. 00/100, Mexican currency) by means of Check number* 0699, debited to account number 4800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte and* credited *to Eloy Soto Payan.* In this regard, *Eloy Soto Payan* stated that in *2012* he sold genetically registered Charolais cattle (a total of 19 cows and one bull) to *Union Ganadera Regional*

[46] The domicile mentioned as Avenida Juarez No. 12, Colonia Centro, appears in the Municipal Real Property Registry of Hidalgo del Parral as Avenida Juarez 10; however, this property is the one that was sold by Soledad Baca and Diego Tranquilino.

EX - DUARTE JAQUEZ - 000088

Sworn statement

*Division del Norte,* and he was paid the amount of *$318,000.00 (three hundred eighteen thousand pesos, 00/100, Mexican currency) for the sale of this cattle.* The individual also stated that, at the request of *Carlos Hermosillo,* the invoice for the cattle was issued in the name of *Cesar Adrian Duarte Gomez.* The latter, according to the investigation, happens to be a son of *Cesar Horacio Duarte Jaquez and Bertha Olga Gomez Fong.*

- On *October 30, 2012,* a payment was made in the amount of *$1,206,930.00 (one million two hundred six thousand nine hundred thirty pesos, 00/100, Mexican currency) by means of* <u>Check</u> number     0700, debited to account number     4800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte and* credited *to Jose Angel Chavez Soto.* In this regard, *Jose Martin Chavez Carrasco,* son of Mr. *Jose Angel Chavez Soto,* stated that both he and his father are cattle breeders and are engaged in the sale and purchase of cattle, and that in *2012 they* made a cattle sale in the amount of *$1,206,930.00 (one million two hundred six thousand nine hundred thirty pesos, 00/100, Mexican currency)* to *Union Ganadera Regional Division del Norte* in a deal made with a male individual whose name he does not know. He also added that he was not required to provide a tax invoice in that sale and, therefore, he does not have one. It should be noted that the purpose of the alleged economic support was for "*of compensation to producers transporting their unproductive cattle to places where they were to be sacrificed,*" so the purchase of livestock from individuals does not justified this purpose.

- On *October 31, 2012,* a payment was made in the amount of *$6,000,000.00 (six million pesos, 00/100, Mexican currency) by means of* <u>Check</u> number     0705, debited to account number     4800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte and* credited *to account number*     0723 from Akala, S.A. de C.V. S.F.P. in the name of *Carlos Gerardo Hermosillo Arteaga.* In this regard, as noted in the <u>*Financial-Accounting Technical Report*</u> itself, that very day two other deposits were made to account number     0723 held by *Akala S.A. de C.V. S.F.P.* in the name of *Carlos Gerardo Hermosillo Arteaga,* in the amounts of *$5,000,000.00 (five million pesos, 00/100, Mexican currency)* and *$9,000,000.00 (nine million pesos, 00/100, Mexican currency)* which, together with the *$6,000,000.00 (six million pesos, 00/100, Mexican currency)* mentioned above, totaled the amount of *$20,000,000.00 (twenty million pesos, 00/100, Mexican currency)* which, on that same date, were deposited in account     2115 from HSBC *Mexico S.A.* in the name of *Union de Credito Progreso S.A. de C.V.* and <u>were allocated to *Trust* number     4743 from Banco Mercantil *del Norte S.A.* In the name of *Cesar Horacio Duarte Jaquez and Bertha Olga Gomez Fong.*</u>


At this point, it is also important to mention that the deviated money was subject to legal availability[47] and due to that, was to be managed by the implicated public officials, since, as a result of their duties at different positions held within the state bureaucracy, they had powers that enabled to them to make binding decisions in relation to the management and allocation of said funds to make them be allocated out of the treasury; this is the case of the State Governor, the Secretary of the Treasury, the General Director of Public Investment Programs under the Secretary of the Treasury, the Head Chief of the Division of Programming and Payment Control under the Secretary of the Treasury, the Secretary of Rural Development, and the Director of Rural Planning under the Secretary of Rural Development.  And the fact is, as already stated, that part of the duties conferred to Cesar Horacio Duarte Jaquez as head of the Executive Branch was the management of the assets owned by the state[48].

---

[47] *See* Superior Court of Justice of the Nation: First Division, "Non-binding legal precedent: 1a./ J. 27/99, " *op. cit.* (n. 23).

[48] *See* Mexico: Chihuahua, "Political Constitution of the State of Chihuahua," *op. cit.* (n. 10), art. 93 Section XXXIV.

*The following are powers and obligations of whoever becomes the head of the State Executive Branch: [...] XXXIV. To acquire, <u>administer,</u> and dispose <u>the State-owned assets,</u> pursuant to the terms and conditions stipulated in this Constitution and the Law. The latter shall set out the system to which the assets acquired to perform the duties of the State legislative and judicial branches shall be subject. [...]*

41

Sworn statement

6. Economic support itemized with number 305/2012 in favor of *Union Ganadera Regional Division del Norte* in the amount of $2,692,288.00 (two million six hundred ninety-two thousand two hundred eighty-eight pesos, 00/100, Mexican currency).

On *April 25, 2012,* a payment was made in the amount of *$2,692,288.00 (two million six hundred ninety two thousand two hundred eighty-eight pesos, 00/100, Mexican currency)* by means of *Check* number    *7910*, debited to account number          *9005* from Santander *Mexico S.A.* in the name of the *Secretary of the Treasury of the Government of the State of Chihuahua;* and credited to account number          *1800* from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte.*

| Secretary of the Treasury Gov. of the St. of Chih. Acct.      9005 Santander S.A. | | 25/Apr/2012 $2,692,288.00 Check   7910 | | Union Ganadera Regional Division del Norte Acct.      5800 HSBC Mexico S.A. |
|---|---|---|---|---|

The attempt was made to justify this payment as *economic support itemized with number 305/2012,* for the alleged *"acquisition of 116 (one hundred and sixteen) equipment devices for artificial insemination in order to increase the genetic quality of the cattle".* However, there are witness statements rendered by *public officials* who corroborate that the administrative procedure was *fraudulent:*

- *Protected witness identified with code 5M4GYUH19A/2019*[49], assisted by his defense counsel, indicated he acted as *General Director of Investment Programs of the Secretary of the Treasury.* He also alluded to *Official letter of approval number 2012-INE-A-0306,* dated *April 17, 2012,* signed by *Jose Luis Garcia Mayagoitia, Secretary of the Treasury; thereby,* the release of the aforementioned public funds was authorized. He stated that said document corresponded to one of the irregular procedures of simulated economic support that he mentioned in his statement, which was granted to the *Union Ganadera Regional Division del Norte del Estado* at the instruction of then Governor *Cesar Duarte,* as indicated to him by *Carlos Hermosillo* when he called his office phone to tell him that it was urgent for him to authorize the request for *proof of budgetary allocation* that the *Office of the Secretary of Rural Development* had sent him days before in that amount; and to pass said authorization with whatever he had (he actually meant that it had to be done even if no integrated technical file was available). This individual also stated that, when *Carlos Hermosillo* requested something, it was at the instruction of then Governor *Cesar Duarte,* and that the former would continue insisting until whatever was requested was finally complied; due to that, the deponent commented this with *Jose Luis Garcia Mayagoitia,* then *Secretary of the Treasury,* and the latter, in turn, gave his authorization to release the funds. For this reason, the Office under this charge had to comply with the request even when the necessary technical file was not available, so the procedure was done outside the established procedures and regulations. Said witness also affirmed that this expense was recorded in the *Miscellaneous Cuenta Deudora* because no documentation to prove the above was available. Subsequently, the documentation to prove it was sent for it to be removed from the *Cuenta Deudora,* but this was insufficient, the above was not proved; then they attempted again and it was thus complied.

---

[49] In the Agreement dated April 10, 2019, there was determined that the information 5M4GYUH19A/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

EX - DUARTE JAQUEZ - 000090

Sworn statement

- Guillermina Hernandez Vazquez, who acted as Director of Investment Programs of the Secretary of the Treasury[50], refers to Official Letter denominated Verification Debtors Number 2015-PROINECD15-CD-0006, dated June 9, 2015, as well as to an enclosure titled "Technical Enclosure", saying that both were drafted in the Division of Investment Programs. However, she does not know for a fact that the money intended for economic support was factually delivered to the beneficiaries nor was she placed at sight supporting documents; so, she cannot tell that the release of funds was fully proved, but she may assert that the accounting verification was made in the system three years after it was paid, and that was the reason why the money was withdrawn from the *Cuenta Deudora.*

- *Protected witness identified with code FE54HD7SHJW/2019[51],* assisted by his defense counsel, indicated that he acted as *Chief Head of the of Programming and Payment Control under the Secretary of the Treasury.* He also pointed out that this case is one of the irregular procedures that were conducted at the instruction of *Cesar Horacio Duarte Jaquez* when he was Governor of the State, and continued by saying that *Carlos Hermosillo* (who already worked for the *Secretary of the Treasury as General Director of Administration)* called him to his office, as there was common every time he required an urgent payment to be made, and told him that the *Office of the Secretary of Rural Development* had sent a *request for payment* of another subsidy to *Union Ganadera Regional Division del Norte del Estado,* and that he needed for it to be immediately released as there was being instructed by the then Governor, and for this purpose, said *Office of the Secretary* would later send him the supporting documentation. The witness indicated that, prior to making the payment, he commented the matter *to Rafael Arteaga,* who at that time was his supervisor, and the former told the witness to pay, as it was a procedure that he had already discussed with *Carlos Hermosillo,* and he pointed out that it was an urgent matter for the then governor, therefore, he instructed his subordinate personnel to follow up on the request and make the payment as soon as possible.

  This witness also alluded to *Official letter number SDR-DPP-015/2015,* dated *February 20, 2015,* whereby, pursuant to *Official letter number SDR-DPP-312/2013* and, in relation to work order itemized with number *6800720 Economic Support for Union Ganadera Regional Division del Norte for the Acquisition of Equipment for Beef-Cattle Artificial Insemination,* alleged supporting documentation was being sent, but the verification requested in said official letter was not complied, since the acknowledgement of receipt from the final beneficiaries had not been enclosed, and by that date it was an indispensable requirement to include them in the file.

- Protected witness identified with code 56RT65PW7, assisted by his defense counsel, indicated he acted as Secretary of the Treasury and that at the beginning of 2013, the former Governor *Cesar Duarte* asked him expressly and directly, together *with Octavio Legarreta,* then *Secretary of Rural Development,* at a meeting held at the *House of Government,* to carry out the corresponding procedures to discharge this item from the so-called *Cuenta Deudora* in the amount of more than *two and a half million* pesos, delivered in 2012 to *Union Ganadera Regional Division del Norte* as economic support, for producers from said Association could acquire artificial insemination thermos. The witness also said that Octavio Legarreta told the witness that the task requested by the then Governor was almost ready so as to verify and discharge from the *Cuenta Deudora* the payment granted to Union Ganadera. Therefor, Leonel De Las Casas, then Director of Rural Planning, and Roberto *Ditrich Nevarez,* then *Director of Agricultural Development, both under the Secretary of Agricultural Development,* had to integrate the file with some documents, either simulated or similar to others; however, no specification was provided in regard to the type of documents, but they were already being drafted and this would be ready days ahead for it to be submitted before the Secretary of the Treasury. The

---

[50] As stated by the aforementioned witness, in September 2014, the Secretary of the Treasury was restructured; thus, the 'General Division of Investment Programs' was degraded to 'Division of Investment Programs'.

[51] In the Agreement dated October 25, 2018, there was determined that the information FE54HD7SHJW/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

43

witness stated that the Secretary of Rural Development filed documents that were presented before the Secretary of the Treasury with the purpose of documenting the expenditure, which did not happen because the documentation produced was not sufficient. The witness stated that during the first months of 2014, the Secretary of Rural Development remitted other documents, but they were not sufficient to document the expenditure either. The deponent added that in early 2015, the Secretary of Rural Development filed different documents, but those were not sufficient for the intended purposes; and it was until amid 2015 when finally, before insistence of Governor Duarte, the expenditure was fully proved and record thereof was discharged from the *Cuenta Deudora*.

Moreover, the procedure carried out to execute the economic-support agreement, after analysis thereof by the technical body in charge of supervising the public expenditure in the entity, the State Superior Auditor, was deemed fraudulent, since it violated multiple legal provisions related to the management of public funds. According to the State Superior Auditor, allocating funds to the entity in question was not admissible, owing to the existence of a conflict of interest, because upon execution of the agreement, Cesar Horacio Duarte Jaquez was acting as the Governor of the State of Chihuahua, and at the same time, he was the chairman of the Board of Directors of Union Ganadera Regional Division del Norte del Estado de Chihuahua. This conflict of interest resulted in personal profits or undue benefits for the former governor Cesar Horacio Duarte Jaquez.

In addition to the irregularities noted, there was detected that:

- There were inconsistencies in the proof of *budgetary allocation*, because in the *official letter for request number SDR-PP-575-112/2012*, dated April *17, 2011,* signed by *Ramon Leonel Casas Dominguez,* then *Director for Rural Planning,* reference is made to *the Regular State Investment Program 2011;* however, the official letter number corresponded to *tax year 2012,* despite being allegedly dated *April 17, 2011,* and making a request from the *Regular State Investment Program 2011.* It was on *April 17, 2012* that *Jose Luis Garcia Mayagoitia,* acting in his capacity as *Secretary of the Treasury,* issued official letter *SH 0359/2012,* through which he authorized additional budgetary allocation through public investment in the amount of *$2,692,288.00 (two million six hundred ninety-two thousand two hundred eighty-eight pesos, 00/100, Mexican currency),* as support for the acquisition of artificial insemination equipment (116 equipment devices), so that social sector breeders could inseminate their cattle to enhance genetic quality. Therefore, there is no time correspondence between the budgetary allocation request and the authorization of additional budgetary allocation.

- Inconsistencies were evident in different verifications, inasmuch as three official letters were drafted by personnel of the *Office of the Secretary of Rural Development,* addressed to the *General Director of Public Investment Programs,* noting that they sent *supporting* documentation in an amount of *$2,692,288.00 (two million six hundred and ninety-two one thousand two hundred eighty-eight pesos, 00/100, Mexican currency)* in relation to work itemized with number *6800779,* economic support for *Union Ganadera Regional Division del Norte* for the acquisition of artificial insemination equipment for beef cattle. These are *Official letter* number SDR-DPP-193/2013, dated August 12, 2013; *Official letter* number SDR-DPP-312/2013, dated December 11, 2013, and Official *letter* number SDR-DPP-015/2015 dated February 20, 2015.

Traceability of the public funds confirms that the money was not used for its intended purpose and that, in addition, it generated a benefit for the accused person and/or the people related to him, since the significant amount of $1,112,698.08 (one million one hundred twelve thousand six hundred ninety-eight pesos, 08/100, Mexican currency) was allocated to legal entities directly linked *to Cesar Duarte:*



Sworn statement

- On *April 27, 2012*, a payment was made in the amount of *$612,698.08 (two hundred fifty thousand pesos, 00/100, Mexican currency)* by means of <u>Check</u> number     0308, debited to account number 4800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte* and credited *to Genera Proyectos Agroindustriales Inmobiliarios, Federal Taxpayer Registry Code 9KZ5*. In this regard, and as is evident from the statement of the individual identified as *NI37SC94WQ/2019*, the company *"Genera Proyectos Agroindustriales e Inmobiliarios S.A. de C.V."* was owned by *Ruth Sarahi Martinez Mariscal*, an employee of *Cesar Horacio Duarte Jaquez* at both *Union Ganadera Regional Division del Norte* and *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR;* a company that she incorporated together with her husband *Carlos Rafael Encinas "to deviate funds from the State Government"*.

- On *June 25, 2012*, a payment was made in the amount of *$500,000.00 (five hundred thousand pesos, 00/100, Mexican currency)* by means of <u>Check</u> number     0658, debited to account number 4800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte* and credited *to Valles Baca Hermanos S.P.R. de R.L. de C.V.* In this regard, there must be noted that the shareholders of said legal entity are bound to former Governor *Cesar Duarte*, as previously stated.

At this point, it is also important to mention that the deviated money was subject to legal availability[52] and due to that, was to be managed by the implicated public officials, since, as a result of their duties at different positions held within the state bureaucracy, they had powers that enabled to them to make binding decisions in relation to the management and allocation of said funds to make them be allocated out of the treasury; this is the case of the State Governor, the Secretary of the Treasury, the General Director of Public Investment Programs under the Secretary of the Treasury, the Head Chief of the Division of Programming and Payment Control under the Secretary of the Treasury, the Secretary of Rural Development, and the Director of Rural Planning under the Secretary of Rural Development and the Director of Agricultural Development. And the fact is, as already stated, that part of the duties conferred to Cesar Horacio Duarte Jaquez as head of the Executive Branch was the management of the assets owned by the state[53].

7. **Economic support itemized with number 376/2012 in favor of *Union Ganadera Regional Division del Norte* in the amount of $10,000,000.00 (ten million pesos, 00/100, Mexican currency).**

On *July 12, 2012*, a payment was made in the amount of *$10,000,000.00 (ten million pesos, 00/100, Mexican currency)* by means of <u>Check</u> number     9552, debited to account number     9005 from Santander *Mexico S.A.* in the name of the *Secretary of the Treasury of the Government of the State of Chihuahua;* and credited *to* account number     4800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte.*



| Secretary of the Treasury Gov of the St. of Chih. Acct.     9005 Santander S.A. | | 12/Jul/2012 $10,000,000.00 Check   8552 | | Union Ganadera Regional Division del Norte Account     1800 HSBC Mexico S.A. |

An attempt was made to justify this payment as economic support number *376/2012,* for an alleged *"acquisition of cattle food"*. However, there is testimonial evidence by *public officials* at that time, who corroborated that the administrative procedure conducted was *fraudulent:*

---

[52] *See* Superior Court of Justice of the Nation: First Division, "Non-binding legal precedent: 1a./ J. 27/99, " *op. cit.* (n. 23).

[53] *See* Mexico: Chihuahua, "Political Constitution of the State of Chihuahua," *op. cit.* (n. 10), art. 93 Section XXXIV
*The following are powers and obligations of whoever becomes the head of the State Executive Branch: [...] XXXIV. To acquire, <u>administer,</u> and dispose <u>the State-owned assets</u>, pursuant to the terms and conditions stipulated in this Constitution and the Law. The latter shall set out the system to which the assets acquired to perform the duties of the State legislative and judicial branches shall be subject. [...]*

EX - DUARTE JAQUEZ - 000093

Sworn statement

- *Protected witness identified with code 5M4GYUH19A/2019[54], assisted by his defense counsel, stated that he acted as General Director of Investment Programs. He also alluded to Official letter of approval number 2012-INE12-A-0391, dated May 24, 2012, signed by Jose Luis Garcia Mayagoitia, Secretary of the Treasury; thereby, the investment of eighty million pesos was approved as support for primary production and production subsidy), stating that said official letter was issued because Carlos Hermosillo said that former gfovernor Cesar Duarte instructed him to provide Union Ganadera Regional Division del Norte with the support. There must be noted that the support was illegal because this group was led by the former Governor; therefore, the money went directly to his own patrimony and in order to conceal the deviation in question, the support was justified stating that the beneficiaries thereof would be the members of the group who would allegedly receive cattle food, but in fact, it was a false pretense. The witness in question also pointed out that, days before the official letter was issued, Carlos Hermosillo requested on a telephone call to expedite the procedure, but since the necessary supporting documentation was not available, he informed Jose Luis Garcia Mayagoitia, then Secretary of the Treasury, of the situation. When the latter found out that it was an instruction from former Governor Cesar Duarte, he immediately signed the official letter of authorization; therefore, the procedure was done outside the established procedure and regulations.*

  *Official letter number SDR-DPP-241/2012, dated June 5, 2012, signed by Roberto Dittrich Nevarez, Director of Agricultural Development under the Office of the Secretary of Rural Development, must be noted. Thereby, he requested a check in favor of Union Ganadera Regional Division del Norte del Estado de Chihuahua in the amount of $10,000,000.00 (ten million pesos, 00/100, Mexican currency), based on Official letter of approval number 2012-INE12-A-0391, dated May 24, 2012, as indicated above.*

- *Protected witness identified with code FE54HD7SHJW/2019[55], who acted as Chief Head of the Division of Programming and Payment Control, assisted by his defense counsel, indicated that this case is one of the irregular procedures that was conducted at the instruction of Cesar Horacio Duarte Jaquez when he was the Governor of the State, and continued by saying that Carlos Hermosillo (already acting as Director General of Administration under the Secretary of the Treasury) exerted pressure by telephone to expedite his payment. However, since the amount was substantial, it was not possible to release it the same day (although he does not remember the exact date on which the check was issued or the transfer was made). The witness added that, in this case, the Cuenta Deudora was not impacted and the amount was directly debited to capital expenditure-production subsidy, and, only for that purpose, they submitted a Regionalization by Municipalities. However, once again, this documentation did not prove the acquisition of cattle food and its delivery to the beneficiaries, because the list of beneficiaries, duly signed and with the necessary data, was not submitted. Nevertheless, it was done at the request of Carlos Hermosillo on behalf of then governor and because Rafael Arteaga, his then supervisor, gave his approval to do so.*

Moreover, the procedure carried out to execute the economic-support agreement, after analysis thereof by the technical body in charge of supervising the public expenditure in the entity, the State Superior Auditor, was deemed fraudulent, since it violated multiple legal provisions related to the management of public funds. According to the State Superior Auditor, allocating funds to the entity in question was not admissible, owing to the existence of a conflict of interest, because upon execution of the agreement, Cesar Horacio Duarte Jaquez was acting as the Governor of the State of Chihuahua, and at the same time, he was the chairman of the Board of

---

[54] In the Agreement dated April 10, 2019, there was determined that the information 5M4GYUH19A/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

[55] In the Agreement dated October 25, 2018, there was determined that the information FE54HD7SHJW/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

EX - DUARTE JAQUEZ - 000094

Sworn statement

Directors of Union Ganadera Regional Division del Norte del Estado de Chihuahua. This conflict of interest resulted in personal profits or undue benefits for the former governor Cesar Horacio Duarte Jaquez. Likewise, there is lack of documentation and information for *Union Ganadera Regional Division del Norte del Estado de Chihuahua* to prove that the economic support was used for the purpose stipulated in the agreement.

According to the banking information obtained during the investigation and analyzed by a financial expert, traceability of the public funds confirms that they were not used for their intended purpose and that, in addition, they generated a benefit for the defendant and/or people related to him, given that:



- On *August 10, 2012*, a payment was made in the amount of *$1,360,00000 (one million three hundred sixty thousand pesos, 00/100, Mexican currency) by means of* <u>Check</u> *number      )665*, debited to account number      *4800 from HSBC Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte and* credited *to Valles Baca Hermanos S.P.R. de R.L. de C.V.* In this regard, the shareholders of said legal entity are bound to former Governor *Cesar Duarte*, as previously stated.

- On *August 13, 2012*, a payment was made in the amount of *$3,987,500.00 (three million nine hundred eighty-seven thousand five hundred pesos, 00/100, Mexican currency) by means of* <u>Check</u> *number    0666,* debited to account number       *4800 from HSBC Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte and* credited *to Grupama S.A. de C.V., Federal Taxpayer Registry Code        52R7*. According to the investigation, this company is engaged in wholesale trade of fertilizers, pesticides and seeds for sowing, not in the purchase of cattle food.

- On *August 28, 2012*, a payment was made in the amount of *$2,652,500.00 (two million six hundred fifty-two thousand five hundred pesos, 00/100, Mexican currency) by means of* <u>Check</u> *number      )672*, debited to account number      *4800 from HSBC Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte and* credited *to Francisco Javier Diaz Batrez*. In this regard, this individual is designated by the *Tax Administration Service* (SAT) as an EFOS (Company that Bills Simulated Operations, due to its initials in the Spanish language) and is listed in the *final global list[56]* published in the *Official Gazette of the Federation* on October 9, 2018.

---

[56]See "Federal Tax Code", 1981, art. 69-B. Published in the Official Gazette of the Federation on December 31, 1981.

*Should the tax authority detect that a taxpayer has been issuing receipts without directly or indirectly having the assets, personnel, infrastructure or material capacity to render the services or produce, trade or deliver the goods covered by such receipts, or if the taxpayer is not found, there shall be assumed that the operations covered in such receipts are non-existent. [...]*

*The effects of the publication of this list shall be to consider, for general purposes, that the operations listed in the tax receipts issued by the taxpayer in question do not generate nor have generated any tax effect.*

47

Sworn statement

- On *August 29, 2012,* a payment was made in the amount of *$ 2,000,000.00 (two million pesos, 00/100, Mexican currency) by means of* <u>*check*</u> *number   0673;* debited to account number '800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte* and credited *to Promotora Ganadera Del Real S.A. de C.V.,* Federal Taxpayer Registry Code *2UU7,* for the purchase made by *Carlos Hermosillo* of a property allocated to process beef from the partners of said entity, as already mentioned above.

At this point, it is also important to mention that the deviated money was subject to legal availability[57] and due to that, was to be managed by the implicated public officials, since, as a result of their duties at different positions held within the state bureaucracy, they had powers that enabled them to make binding decisions in relation to the management and allocation of said funds to make them be allocated out of the treasury; this is the case of the State Governor, the Secretary of the Treasury, the General Director of Public Investment Programs under the Secretary of the Treasury, the Head Chief of the Division of Programming and Payment Control under the Secretary of the Treasury, the Secretary of Rural Development, and the Director of Rural Planning under the Secretary of Rural Development. And the fact is, as already stated, that part of the duties conferred to Cesar Horacio Duarte Jaquez as head of the *Executive Branch* was the management of the assets owned by the state[58].

8. **Payment in favor of *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR* in the amount of $8,000,000.00 (eight million pesos, 00/100, Mexican currency) for the acquisition of a real estate property.**

On *September 25, 2012,* a payment was made in the amount of *$8,000,000.00 (eight million pesos, 00/100, Mexican currency)* by means of a wire transfer from account number   8637 from *Santander Mexico S.A.* in the name of the *Secretary of the Treasury of the Government of the State of Chihuahua* to account number   8360 from Banco Mercantil *del Norte S.A.* of *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR.*



| Secretary of the Treasury<br>Gov of the St. of Chih.<br>Acct.   3637<br>Santander S.A. | | 25/Sep/2012<br>$8,000,000.00<br>Transfer | | Financiera de la Division del Norte<br>S.A. de C.V. SOFOM ENR<br>Account   8360<br>Banco Mercantil del Norte S.A. |

The attempt was made to justify this payment as acquisition, by the *Government of the State of Chihuahua,* of the urban property located at *Calle Guillermo Prieto* No. *4,* by the corner with *Calle Mercaderes, Hidalgo del Parral, Chihuahua.* However, there are witness statements from the public officials involved, affirming that this justification was a false pretense, because it was only done to justify the diversion of public money for the benefit of then governor *Cesar Duarte Jaquez.*

- Protected witness identified with code 56RT65PW7[59] stated that in *September 2012,* days before he took the position as Head of the *Secretary of the Treasury,* a deviation of state funds was made by *Cesar Duarte* and operated by *Carlos Hermosillo,* this consisted of the release of *$8,000,000.00 (eight million pesos, 00/100, Mexican currency)* by the Secretary of the Treasury which went directly into one of the bank accounts of *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR;* this was justified

---

[57]See Superior Court of Justice of the Nation: First Division, "Non-binding legal precedent: 1a./1. 27/99, " *op. cit.* (n. 23).

[58]See "Political Constitution of the State of Chihuahua," *op. cit.* (n. 10), art. 93 Section XXXIV

*The following are powers and obligations of whoever becomes the head of the State Executive Branch: [...] XXXIV. To acquire,* <u>*administer, and dispose*</u> *the* <u>*State-owned assets,*</u> *pursuant to the terms and conditions stipulated in this Constitution and the Law. The latter shall set out the system to which the assets acquired to perform the duties of the State legislative and judicial branches shall be subject. [...].*

[59] In the <u>Agreement</u> dated December 8, 2018, there was determined that the information 56RT65PW7 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

48

Sworn statement

by the alleged acquisition of real estate property in *Hidalgo del Parral, Chihuahua,* to presumably build a square in front of *Palacio de Alvarado.* And this is why, in *2014,* under the instruction of *Cesar Duarte* and derived from the pressure exerted by *Carlos Hermosillo,* an official letter of verification was drafted to discharge said record from the *Cuenta Deudora,* which was completely illegal because the only real verification to justify the disbursement of said amount of money for that item would have been the deed related to said property issued in the name of the State Government, which did not happen: *the State does not have ownership of this property, so the diversion of the funds is therewith evidenced.* Likewise, the witness alluded to <u>*Debit Verification Official Letter*</u> [sic] number 2014-INE12-CD-0003, dated *October 30, 2014,* which he signed, noting that this document is part of the procedure that was undertaken to try to conceal the diversion made by *Cesar Duarte,* specifically, to justify the alleged acquisition of the property in the historic center of *Hidalgo del Parral,* hometown of the former governor.

- Guillermina Hernandez Vasquez, who acted as Director of the Office of Investment Programs under the Secretary of the Treasury[60] recalls the specific case of a payment made by the Government of the State of Chihuahua to *Financiera Division del Norte* for the purchase of a property located in Hidalgo del Parral, Chihuahua. In this regard, she states that three properties were acquired to be demolished and then rebuilt in the historic center area. However, one of the payments had been debited to the *Cuenta Deudora* since 2012 and they were facing difficulties completing the verification file because they did not have a deed of ownership stating that the Government of the State of Chihuahua was the owner thereof, which was a requirement to prove the purchase. She also refers to <u>*Debit Verification Official Letter*</u> 2014/INE12-CD-0003, dated October 30, 2014, and to enclosure made up of one page bearing the legend "Technical Enclosure", indicating they were drafted by the Division of Investment Programs, under her command, to prove the purchase of the property above mentioned; she reiterated that she never saw the ideal document to prove that expense and the purchase of the property such as a deed of ownership issued to the Government of the State or proof of registration before the Public Registry of Property, in which the Government of the State already appeared as the owner.

- Protected witness identified with code *FE54HD7SHJW/2019*[61] , who worked as *Chief Head of the Division of Programming and Payment Control,* said, with the assistance of his defense counsel, that the payment of *$8,000,000.00 (eight million pesos, 00/100, Mexican currency)* for the acquisition of a real estate property was made in the Department then under his charge, in 2012, because it was requested by *Beatriz Torrecillas,* then *Chief Head of the Division of Administrative Services* under the *Secretary of the Treasury,* who asked him to follow up on it, because the procedure had already been authorized by her supervisor, *Carlos Gerardo Hermosillo Arteaga,* then *General Director of Administration* of the *Secretary of the Treasury.* After the telephone call, the witness became engaged in corroborating the information with his superior, who then was *Rafael Arteaga, Director of Expenditure,* who factually instructed him to make the payment because it had already been authorized by *Carlos Hermosillo* and corresponded to one of the real estate properties that were being acquired in the city of *Hidalgo del Parral* at the instruction of then Governor *Cesar Duarte.* The witness pointed out that in the official letter for payment request signed by *Beatriz Torrecillas,* there was required that the payment be made to *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR,* and said official letter was presened together with an unofficial receipt signed by *Carlos Hermosillo;* therein, there was established that the payment would be debited to the *Cuenta Deudora,* that its verification was pending, and that the acquisition would be to the aforementioned financing company. For this reason, the corresponding payment was made by means of a wire transfer to an account of *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR.* However, it was not right for the payment

---

[60] As stated by the aforementioned witness, in September 2014, the Secretary of the Treasury was restructured; thus, the 'General Division of Investment Programs' was degraded to 'Division of Investment Programs'.

[61] In the <u>Agreement</u> dated October 25, 2018, there was determined that the information FE54HD7SHJW/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

EX - DUARTE JAQUEZ - 000097

Sworn statement

to be made to Financiera because there was no such legal support for processing thereof, as a contract or agreement from which the obligation would derive, in addition to the fact that the official letters sent showed that the property belonged to a private individual and the existence of a potential conflict of interest, because publicly it was said that Governor *Cesar Duarte* had a particular interest in that company.

Moreover, the procedure carried out to make the payment, after analysis thereof by the technical body in charge of supervising the public expenditure in the entity, the *State Superior Auditor,* was deemed *fraudulent,* since it violated multiple legal provisions related to the management of public funds. According to the State Superior Auditor, allocating funds to the entity in question was not admissible, owing to the existence of a *conflict of interest,* because upon execution of the agreement, *Cesar Horacio Duarte Jaquez* was acting as the *Governor of the State of Chihuahua,* and at the same time, *a majority shareholder* of *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR.* This conflict of interest resulted in *personal profits* or *undue benefits* for the former governor *Cesar Horacio Duarte Jaquez.* Likewise, there is no valid justification for making the payment, since on *September 25, 2012,* the *Secretary of the Treasury,* made a transfer to account number      3603 in the amount of *$8,000,000.00 (eight million pesos, 00/100, Mexican currency)* , which is reflected that same day on folio *9040077* of *the Account Statement for* the term from September *1 to 30, 2012* of account          363-7 from Banco Santander S.A., whose holder is stated as GOB EDO CHIH SECRETARIA DE HACIENDA OBRA PUBLICA. Also, on that date, *Carlos Gerardo Hermosillo Arteaga* signed a document whereby there was stated that he received from the *Government of the State of Chihuahua $8,000,000.00 (eight million pesos, 00/100, Mexican currency)* for expenses pending verification for the acquisition of a real estate property to *Financiera Division del Norte S.A. de C.V.* However, there is no evidence or supporting documentation to prove the purchase of the property, in that amount, to *Consuelo Garcia Chavez* and *Luz Maria Torres Garcia.* Therefore, there was no reason for the payment *to be* made *to Financiera de la Division del Norte, S.A. de C.V. SOFOM ENR,* since there is no evidence that the sellers of the asset had requested so, or that an agreement had been made between the *State Government* and the aforementioned Financing Company, or between the latter and the selling party.

In addition, according to the bank accounts subject to the analysis of a financial expert, traceability or the route that the money took confirms that the economic support was a false pretense, since said funds were not used for the purpose intended in the agreement and this also generated a direct, immediate benefit for *Cesar Duarte,* given that he was the majority shareholder in *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR.* But added to that, the public funds deviated were used to *fund a Trust* in the name of the *former governor himself, Cesar Duarte,* and his wife, *Bertha Gomez Fong,* inasmuch as:



- On October 31, 2012 (reflected on November 1, 2012), a payment was made in the amount of *$9,000,000.00 (nine million pesos, 00/100, Mexican currency)* by means of Check number      0895, debited to account number         3360 from Banco Mercantil del Norte S.A. in the name of *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR;* and credited to account number       0723 from *Akala*

EX - DUARTE JAQUEZ - 000098

Sworn statement

S.A. de C.V. S.F.P. in the name of *Carlos Gerardo Hermosillo Arteaga*. In this regard, as there can be seen in the same *Financial-Accounting Technical Report,* on that same date, two other deposits were made to account number      )723 from *Akala S.A. de C.V. S.F.P.* in the name of *Carlos Gerardo Hermosillo Arteaga,* in the amounts of *$5,000,000.00 (five million pesos, 00/100, Mexican currency)* and *$6,000,000.00 (six million pesos, 00/100, Mexican currency)* which, together with the *$9,000,000.00 (nine million pesos, 00/100, Mexican currency)* mentioned above, totaled the amount of *$20,000,000.00 (twenty million pesos, 00/100, Mexican currency),* which on that same date was deposited in account      ?115 from HSBC *Mexico S.A.* in the name of *Union de Credito Progreso S.A. de C.V.* and were allocated to *Trust* number     4743 from Banco Mercantil *del Norte S.A. in the name of Cesar Horacio Duarte Jaquez and Bertha Olga Gomez Fong* pursuant to the information provided by the former State governor himself.

At this point, it is also important to mention that the *deviated money was subject to legal availability*[62] *and due to that, was to be managed by the implicated public officials,* since, as a result of their duties at different positions held within the state bureaucracy, they had powers that enabled to them to make binding decisions in relation to the management and allocation of said funds to make them be allocated out of the treasury; this is the case of the *State Governor,* the *Secretary of the Treasury,* the Head Chief of the Administrative Services Department under the Secretary of the Treasury, and Chief Head of the Department of Programming and Payment Control under the Secretary of the Treasury. And the fact is, as already stated, that part of the duties conferred to *Cesar Horacio Duarte Jaquez* as head of the *Executive Branch* was the management of the assets owned by the state[63].

9. **Economic supports 384/2013 and 0426/2013 in favor of *Union Ganadera Regional Division del Norte* in the respective amounts of $ 250,000.00 (two hundred and fifty thousand pesos, 00/100, Mexican currency) and $ 60,000.00 (sixty thousand pesos, 00/100, Mexican currency).**

On *April 1, 2013,* the *Government of the State of Chihuahua* made a payment in the amount of *$250,000.00 (two hundred and fifty thousand pesos, 00/100, Mexican currency)* by means of *Check* number     ?178, and on *October 18, 2013* another payment was made in the amount of *$60,000.00 (sixty thousand pesos, 00/100, Mexican currency)* by means of *Check* number     1771, to *Union Ganadera Regional Division del Norte.*

In both cases, they were made to account number      1179 of BBVA Bancomer, *S.A.* in the name of the *Secretary of the Treasury of the Government of the State of Chihuahua,* and credited to account number     4800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte.*



An attempt was made to justify these payments as *economic support numbers 384/2013 and 0426/2013,* to allegedly *"compensate the costs of moving exhibition cattle to the San Marcos fair in the State of Aguascalientes".* However, there are witness statements rendered by then public officials, who corroborate that the administrative procedure conducted was fraudulent:

---

[62] *See* Superior Court of Justice of the Nation: First Division, "Non-binding legal precedent: 1a./I.27/99, " *op. cit.* (n. 23).

[63] *See* "Political Constitution of the State of Chihuahua," *op. cit.* (n. 10), art. 93 Section XXXIV

*The following are powers and obligations of whoever becomes the head of the State Executive Branch: [...] XXXIV. To acquire, administer, and dispose the State-owned assets, pursuant to the terms and conditions stipulated in this Constitution and the Law. The latter shall set out the system to which the assets acquired to perform the duties of the State legislative and judicial branches shall be subject. [...].*

51

Sworn statement

- *Protected witness identified with code 56RT65PW7[64], assisted by his defense counsel, stated that he acted as Secretary of the Treasury, and as to Economic Support Agreement number 384/2013, dated March 26, 2013, and to Economic Support Agreement number 0426/2013, allegedly dated March 26, 2013, assisted by his defense counsel, he stated that between April and May 2013, Carlos Hermosillo went to his office and, based on instruction given by Cesar Duarte, he requested to carry out the processing necessary to immediately deposit the amount of $60,000.00 (sixty thousand pesos, 00/100, Mexican currency) to Union Ganadera Regional Division del Norte; since there was no documentation to justify such disbursement, only an unofficial receipt indicating that the money had been received, this was registered in the Cuenta Deudora. The witness also noted that months later Octavio Legarreta, then Secretary of Rural Development, went to his office and asked him to sign a pre-dated agreement he had presented. Said agreement was to try to justify the disbursement of the $60,000.00 (sixty thousand pesos, 00/100, Mexican currency). He also confirms to have signed the other agreement in the amount of $250,000.00 (two hundred and fifty thousand pesos, 00/100, Mexican currency), derived from instructions he had received from then Governor Cesar Duarte.*

- *Protected witness identified with code FE54HD7SHJW/2019[65], who acted as Head of the Department of Programming and Payment Control, assisted by his defense counsel, stated in reference to the document called detail of payment receipt, proof of advance payment, folio CP-48-90/2013 dated April 16, 2013, that, with the latter, the Office of the Secretary of Rural Development requested a payment to Union Ganadera Regional Division del Norte for it to be allocated for expenses related to participation in the San Marcos Fair, in the amount of $60,000.00 (sixty thousand pesos, 00/100, Mexican currency). The witness continued by stating that it was used as proof of an advance payment because at the time it was generated there was no agreement or documentation to verify and justify the expenditure, and clarified that this was also part of the irregular procedures that then Governor Cesar Duarte instructed to do through Carlos Hermosillo for the payment to be generated, and he would constantly call his office to see the status of the procedure, until the payment was finally made.*

Moreover, the procedure carried out to execute the economic-support agreement, after analysis thereof by the technical body in charge of supervising the public expenditure in the entity, the *State Superior Auditor,* was deemed *fraudulent,* since it violated multiple legal provisions related to the management of public funds. According to the State Superior Auditor, allocating funds to the entity in question was not admissible, owing to the existence of a *conflict of interest,* because upon execution of the agreement, *Cesar Horacio Duarte Jaquez* was acting as the *Governor of the State of Chihuahua,* and at the same time, he was the *chairman* of the *Board of Directors* of *Union Ganadera Regional Division del Norte del Estado de Chihuahua.* This conflict of interest resulted in *personal profits* or *undue benefits* for the former governor *Cesar Horacio Duarte Jaquez.* Moreover, there is no documentation or information whereby *Union Ganadera Regional Division del Norte del Estado de Chihuahua* proved that the economic support was allocated for the purpose established in the agreement.

In addition to the irregularities noted, it was detected that:

---

[64] In the Agreement dated December 8, 2018, there was determined that the information 56RT65PW7/2019 would provide would jeopardize his/her physical integrity; therefore, the Public Prosecutor decided on the mechanism to protect their identity.
[65] In the Agreement dated October 25, 2018, there was determined that the information FE54HD7SHJW/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

EX - DUARTE JAQUEZ - 000100

Sworn statement

- The execution of *economic support agreement number 384/2013* was subsequent to the delivery of the funds subject of the agreement, since on *April 1, 2013 Check number* '178 in the amount of *$250,000.00 (two hundred and fifty thousand pesos, 00/100, Mexican currency)* was issued to *Union Ganadera Regional Division del Norte*, and it was reflected on *April 2, 2013* in the *Account Statement* for the period *from April 1 to 30, 2013* of account 1179 from *BBVA Bancomer S.A.*, whose holder is *GOB EDO CHIH SECRETARIA DE HACIENDA.* Although the agreement through which the funds were granted is dated *March 26, 2013,* it did not have the signatures required at the time the funds were delivered, according to the provisions of *Official Letter J 0558/2013,* dated *April 8, 2013,* signed by *Susana Patricia Tamez Aguilera,* where she stated that was remitting three copies of *Economic Support Agreement number 384/2013,* in order to obtain the signature of the Head of the entity.

Traceability regarding the public funds confirms that they were not used for the intended purpose and that, also, they generated a benefit for the defendant and/or the people related to him, given that:



EX - DUARTE JAQUEZ - 000101

Sworn statement

- On *April 2, 2013*, a payment was made in the amount of *$80,000.00 (eighty thousand pesos, 00/100, Mexican currency) by means of* <u>Check</u> *number* 0733, debited to account number 4800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte and credited to American Express Company.*

- On *April 15, 2013*, a payment was made in the amount of *$18,000.00 (eighteen thousand pesos, 00/100, Mexican currency) by means of* <u>Check</u> *number* 7734, debited to account number 4800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte and credited to Brando S.A. de C.V.* In this regard, and as previously noted, this legal entity is associated with former Governor *Cesar Duarte.*

- On *April 16, 2013*, a payment was made in the amount of *$80,000.00 (eighty thousand pesos, 00/100, Mexican currency) by means of* <u>Check</u> *number* 7735; debited to account number 4800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte and* credited to an account whose holder is federal taxpayer registry code 3HL8, who, according to the records, coincides with an individual named Ana Lilia Nuñez Mendoza, who has no visible links to the purpose of the support.

- On *April 17, 2013*, a payment was made in the amount of *$30,000.00 (thirty thousand pesos, 00/100, Mexican currency) by means of* <u>Check</u> *number* 7736, debited to account number 4800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte and* credited *to Diana Alejandra Renteria Ortiz.* In this regard, as evidenced by the testimony of *Irvin Jahir Ontiveros Vasquez, Fernando Tarango Mendoza, Carlos Sancen Contreras and* Protected witness number *PYRTEJ/2018, Diana Renteria* worked for *Union Ganadera Regional Division del Norte.* It is important to point out that, according to the statement rendered by *Carlos Sancen, Diana Renteria* was responsible for reproduction (insemination, selection and nutrition) of the cattle in the ranches of former Governor *Cesar Duarte.*

At this point, it is also important to mention that the *deviated money was subject to legal availability*[66] and due to that, was to be managed by the *implicated public officials,* since, as a result of their duties at different positions held within the state bureaucracy, they had powers that enabled them to make binding decisions in relation to the management and allocation of said funds to make them be allocated out of the treasury; this is the case of the State Governor, the Secretary of the Treasury, the General Director of Public Investment Programs under the Secretary of the Treasury, the Head Chief of the Division of Programming and Payment Control under the Secretary of the Treasury, the Secretary of Rural Development, and the Director of Rural Planning under the Secretary of Rural Development. And the fact is, as already stated, that part of the duties conferred to Cesar Horacio Duarte Jaquez as head of the Executive Branch was the management of the assets owned by the State[67]

   10. **Economic support number 995/2012 in favor of *Union Ganadera Regional Division del Norte* in the amount of $4,600,000.00 (four million six hundred thousand pesos, 00/100, Mexican currency).**

On *October 18, 2013*, a payment was made in the amount of *$4,600,000.00 (four million six hundred thousand pesos, 00/100, Mexican currency) by means of* <u>Check</u> *number* 1937, debited to account number 7005 from Santander *Mexico S.A.* in the name of the *Secretary of the Treasury of the Government of the State of Chihuahua;* and credited to account number 4800 from HSBC *Mexico S.A.* in the name of *Union*

---

[66]See Superior Court of Justice of the Nation: First Division, "Non-binding legal precedent: 1.a./J. 27/99, " *op. cit.* (n. 23).

[67]See "Political Constitution of the State of Chihuahua", *op. cit.* (n. 9), art. 93 Section XXXIV

   *The following are powers and obligations of whoever becomes the head of the State Executive Branch: [...] XXXIV. To acquire, <u>administer,</u> and dispose <u>the State-owned assets,</u> pursuant to the terms and conditions stipulated in this Constitution and the Law. The latter shall set out the system to which the assets acquired to perform the duties of the State legislative and Judicial branches shall be subject. [...]*

EX - DUARTE JAQUEZ - 000102

Sworn statement

*Ganadera Regional Division del Norte.*

| Secretary of the Treasury<br>Gov of the St. of Chih.<br>Acct.          9005<br>Santander S.A. | | 18/Oct/2012<br>$4,600,000.00<br>Check    1937 | | Union Ganadera Regional<br>Division del Norte<br>Account          1800<br>HSBC Mexico S.A. |
|---|---|---|---|---|

An attempt was made to justify this payment as economic support number *995/2013,* for an alleged *"execution of the Program for Repopulation of Beef Cattle in the State"* in favor of *Union Ganadera Regional Division del Norte*. However, there is witness statements rendered by *public officials* who corroborate that said economic support was a *false pretense:*

- *Protected witness identified with code 56RT65PW7*[68], stated, assisted by his defense counsel, that he acted as Secretary of the Treasury, and that this diversion in the amount of *$4,600,000.00 (four million six hundred thousand pesos, 00/100, Mexican currency)* was intended to be justified with an alleged program implemented by the *Secretary of Rural Development* to benefit small producers in the State, therefor, an authorization in that amount of funds was requested. For that reason, he signed *Official Letter of Approval* number *2013-INE13-A-0528,* dated *September 20, 2013,* because he was instructed by *Cesar Duarte* to approve the authorization with his signature. However, since no documentation was submitted to prove the disbursement of the funds, this was recorded in the *Cuenta Deudora* since 2013, this is so, that there is an *Official Letter of Approval* number *2016-PESP13-A-0005,* dated *August 04, 2016,* issued for the purpose of verifying the alleged that expenditure. Likewise, said witness alluded to *Economic Support Agreement number 995/2013,* on the " execution of the Program for Repopulation of Beef Cattle in the State" in the name of *Union Ganadera Regional Division del Norte* dated *October 20, 2013,* indicating that it was the agreement that was illegally used to provide the diversion made by *Cesar Duarte* in his capacity as Governor with legal appearance, thus intending to justify the delivery of the funds to the account of *Union Ganadera Regional Division del Norte,* which was part of the direct patrimony of the former governor.

- *Protected witness identified with code 5M4GYUH19A/2019*[69], assisted by his defense counsel, indicated that he acted as *General Director of Investment Programs*. He also alluded to *Economic Support Agreement number 995/2013,* dated *October 20, 2013,* signed by *the person identified with code 56RT65PW7,* then Secretary of the Treasury, noting that it corresponded to one of the irregular economic support agreements for the purchase of heifer that *Carlos Hermosillo* requested at the instruction of then Governor *Cesar Duarte,* for an authorization of budgetary allocation to be granted so as to release State funds directly to his assets by means of *Union Ganadera Regional Division del Norte*. And this turns out to be irregular because it was requested that the expense be charged *to the Cuenta Deudora* inasmuch as the necessary requirements to verify the expenditure of the funds were not available, in addition to the fact that *Carlos Hermosillo* called him by telephone to exert pressure on him for the procedure that he had sent him days before to be expedited.

- Guillermina Hernandez Vazquez, who acted as Director of Investment Programs under the Secretary of the Treasury[70], refers to Official Letter of Approval number 2016-PESP13-A-0005, dated August 4, 2016, and to two enclosures. The first enclosure is titled "SUPPLEMENTAL INFORMATION" and 2016-PESP13-A-0005, and the second enclosure is titled "Technical Enclosure" and 2016-PESP13-A-0005. The Official

---

[68] In the Agreement dated December 8, 2018, there was determined that the information 56RT65PW7/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

[69] In the Agreement dated April 10, 2019, there was determined that the information 5M4GYUH19A/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

[70] As stated by the aforementioned witness, in September 2014, the Secretary of the Treasury was restructured; thus, the 'General Division of Investment Programs' was degraded to 'Division of Investment Programs'

EX - DUARTE JAQUEZ - 000103

Sworn statement

Letter of Approval to verify debtors was drafted by the Direction of Investment Programs because designated person *FE54HD7SHJW/2016* called her and asked her to issue the Official Letter of Approval so that he could enter it into the system. She does not know for a fact that the abovementioned verification was made because she never had it at sight, neither did she review supporting documents because that was under the responsibilities of the Division of Programming and Payment Control. She also states that the verification for accounting purposes was entered into the system in 2016, this is, three years after the funds were disbursed, and that information was discharged from the *Cuenta Deudora.*

- *Protected witness identified with code FE54HD7SHJW/2019[71], who worked as Chief Head of the Department of Programming and Payment Control,* assisted by his defense counsel, and in reference to the payment in question, said that *Carlos Hermosillo* (acting as *Director General of Administration of the Secretary of the Treasury)* asked him to release funds to *Union Ganadera Regional Division del Norte* because he was instructed by then Governor *Cesar Duarte* to do it on the same date in which the request was made. He also noted that, upon completing the instruction, said expense was entered into the *Cuenta Deudora* because there was no supporting documentation available, as confirmed by *Carlos Hermosillo.* The witness also indicated that the payment was released with the authorization of *the person identified with code 56RT65PW7,* then *Secretary of the Treasury,* since prior to releasing the funds he consulted him, and then corroborated through him that those were instructions from the Governor, so he proceeded with the corresponding payment despite the irregularity.

Moreover, the procedure conducted to sign the economic support agreement, after being analyzed by the technical body in charge of supervising public spending at the entity, the *State Comptroller General,* was deemed fraudulent because it violated several legal provisions related to the management of public funds. According to the aforementioned *State Comptroller General,* the granting of funds to the entity in question was improper because of the existence of a *conflict of interest,* because at the time of signing the agreement, *Cesar Horacio Duarte Jaquez* served as *Constitutional Governor of the State of Chihuahua* while being, at the same time, *president* of the *Board of Directors of Union Ganadera Regional Division del Norte in the State of Chihuahua.* This conflict of interest resulted in personal gain or undue benefit by former Governor *Cesar Horacio Duarte Jaquez.* Likewise, there is a lack of documentation and information through which *Union Ganadera Regional Division del Norte del Estado de Chihuahua* can verify that the economic incentive was used for the purpose set forth in the agreement.

In addition, according to the bank accounts subject to the analysis of a financial expert, traceability or the route that the money delivered to the *Union Ganadera Regional Division del Norte* took confirms that the economic support was a false pretense to divert funds from the State of Chihuahua in order to meet the interests of then governor *Cesar Duarte,* since, in addition to not being used for the purposes for which they were granted, they were allocated to benefit his own interests, since:



---

[71] In the <u>Agreement</u> dated October 25, 2018, there was determined that the information FE54HD751-11W/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

EX - DUARTE JAQUEZ - 000104

Sworn statement

- On *October 31, 2013*, a transfer was made in the amount of *$2,049,893.71 (two million forty-nine thousand eight hundred and ninety-three pesos, 71/100, Mexican currency)* by means of <u>*Check number*</u> *0854*; on *November 22, 2013* a transfer was made in the amount of *$1,586,467.10 (one million five hundred eighty-six thousand four hundred sixty-seven pesos, 10/100, Mexican currency)* by means of <u>*Check number*</u> *0855; and* on *January 7, 2014* another transfer was made in the amount of *$562,540.66 (five hundred sixty-two thousand five hundred forty pesos, 66/100, Mexican currency)* by means of <u>*Check number*</u> *0857;* in all three cases, debited to account number *1800* from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte and credited* to account number *5355* from *BBVA Bancomer S.A.* in the name of *Union Ganadera Regional Division del Norte.*

    - On *January 6, 2014,* a payment was made in the amount of *$562,540.66 (five hundred sixty-two thousand five hundred forty pesos, 66/100, Mexican currency)* to *Brando S.A. de C.V.; debited* to account number *5355* at *BBVA Bancomer S.A.* in the name of *Union Ganadera Regional Division del Norte.* In this regard, and as previously noted, *Brando S.A. de C.V.* is associated with former Governor *Cesar Duarte* given that, among the evidence found inside his domicile, located in Tecolotes and Calle San Patricio, without number, Colonia Esmeralda, Hidalgo del Parral, Chihuahua, multiple documents regarding said company were found. Likewise, one of the shareholders at Brando S.A. de C.V. is *Gustavo Alfonso Gonzalez Duarte,* in whose name the property identified as *Rancho Santa Rita* is also registered; that is, the ranch that was purchased from *Bonifacio, Margarita, Mauro, Luz and Josefina,* all surnamed *Carrasco Garcia,* and which, according to the evidence in the case, is property of *Cesar Duarte.*

- On *December 9, 2013,* a payment was made in the amount of *$461,642.16 (four hundred sixty-one thousand six hundred forty-two pesos, 16/100, Mexican currency)* by means of <u>*Check*</u> number *0856,* debited to account number *1800* from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte* and credited to Construcciones Marro S.A. de C.V. In this regard, in the statement rendered by *Mario Rodriguez Garcia,* owner of the construction company denominated *Construcciones Marro S.A. de C.V.,* he noted that in the year *2013 he* was appointed by *Carlos Hermosillo* at the Government House, located on *Avenida Zarco and Calle 26 in the city of Chihuahua, Chihuahua,* where former Governor *Cesar Duarte* resided; therein, he requested his professional services to demolish an adobe fence located at that same *Government House.* The witness also reported that, in the same year, *Carlos Hermosillo* contacted him again to perform another job, but not for the *State Government,* but for *Union Ganadera Regional Division del Norte,* which consisted of installing a scale at a slaughterhouse that was located by the exit from the city of *Delicias,* heading *to Saucillo,* and payments were accordingly received.

    At this point, it is also important to mention that the *deviated money was subject to legal availability*[72] *and due to that, was to be managed by the implicated public officials,* since, as a result of their duties at different positions held within the state bureaucracy, they had powers that enabled to them to make binding decisions in relation to the management and allocation of said funds to make them be allocated out of the treasury; this is the case of the *State Governor,* the *Secretary of the Treasury,* the *General Director of Public Investment Programs* under the *Secretary of the Treasury,* the *Head Chief of the Division of Programming and Payment Control* under the *Secretary of the Treasury,* the *Secretary of Rural Development.* And the fact is, as already stated, that part of the duties conferred to *Cesar Horacio Duarte Jaquez* as head of the *Executive Branch* was the management of the assets owned by the state[73] .

---

[72]See Supreme Court of Justice of the Nation: First Division, "Non-binding legal precedent: 1a./J. 27/99, " *op. cit.* (n. 23).

[73]See "Political Constitution of the State of Chihuahua," *op. cit.* (n. 10), art. 93 Section XXXIV

EX - DUARTE JAQUEZ - 000105

Sworn statement

---

11. **Economic support granted by means of the SIGOS - SFI Interface. Compensation registered with folio numbers CP-S-27151/2014, CP-S-27152/2014, and CP-S-27153/2014 in the name of *Union Ganadera Regional Division del Norte* in the amount of $5,500,000.00 (five million five hundred thousand pesos, 00/100, Mexican currency).**

On *November 28, 2014*, a payment was made in the amount of *$5,500,000.00 (five million five hundred thousand pesos, 00/100, Mexican currency)* by means of Check number    1937, debited to account number    8637 from Santander *Mexico S.A.* in the name of the *Secretary of the Treasury of the Government of the State of Chihuahua;* and credited to account number          4800 from HSBC *Mexico S.A.* in the name of *Union Ganadera Regional Division del Norte.*

| Secretary of the Treasury Gov of the St. of Chih. Acct.    )005 Santander S.A. | | 28/Nov/2014 $5,500,000.00 Transfer | | Union Ganadera Regional Division del Norte Account    4800 HSBC Mexico S.A. |
|---|---|---|---|---|

An attempt was made to justify this payment as financial support granted through the *SIGOS - SFI interface. Compensation,* registered with folio numbers *CP-S-27151/2014, CP-S-27152/2014 and CP-S-27153/2014,* for an alleged *"support for the acquisition of oat, bean and corn for livestock producers of the referred Association".* However, there are witness statements rendered by the public officials involved, affirming that this justification was a false pretense, because it was only done to justify the diversion of public money for the benefit of former Governor *Cesar Duarte Jaquez,* among which, there stands out:

- Protected witness identified with code 56RT65PW7[74], assisted by his defense attorney, stated that he acted as Secretary of the Treasury and in late *November 2014,* the *General Director of Administration,* then *Gerardo Villegas Madriles,* illegally requested a compensation in a total amount of *$5,500,000.00 (five million five hundred thousand pesos, 00/100, Mexican currency)* debited to the budget of *the Secretary of Rural Development,* to be delivered to *Union Ganadera Regional Division del Norte.* Likewise, the witness stated that said subsidy was requested and fully paid with funds from the state treasury, by direct instruction from *Cesar Duarte* to cover his personal expenses, and he knows this because *Cesar Duarte* himself told him that he needed money to cover some expenses and he wanted to use the funds, taking advantage of the fact that the state finances had a good liquidity level from restructuring processing and the stock issuance from the previous year. The witness commented that a couple of days after the meeting, his staff informed him that several requests signed by *Gerardo Villegas,* then *General Director of Administration, and by Adrian Dozal Dozal,* then *Chief Head of Administrative Coordination,* there was requested the payment of a subsidy in the amount of *$5,500,000.00 (five million five hundred thousand pesos, 00/100, Mexican currency)* in favor of *Union Ganadera Regional Division del Norte,* as support for its producers for the purchase of corn and other grains, and that *Adrian Dozal* told the then *Chief of the Division of Programming and Payment Control* that there was urgently needed to pay the subsidy on that same date, but, in order to justify the payment they were only submitting a receipt signed by the representative of the aforementioned *Union Ganadera,* and that the *General Division of Administration* requested that the subsidy be charged to the budget of the *Office of the Secretary of Rural Development,* without there being at least a written authorization by said Secretary justifying the disbursemente. Added to this, the witness himself ordered them to proceed

---

*The following are powers and obligations of whoever becomes the head of the State Executive Branch: [...] XXXIV. To acquire, administer, and dispose the State-owned assets, pursuant to the terms and conditions stipulated in this Constitution and the Law. The latter shall set out the system to which the assets acquired to perform the duties of the State legislative and judicial branches shall be subject. [...]*

[74] In the Agreement dated December 8, 2018, there was determined that the information 56RT6SPW7/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

58

to make the payment because it had already been authorized by the former governor, since he already had given the instruction. Likewise, he remembers that on the same payment date, *Carlos Gerardo Hermosillo Artega* called him by telephone at least twice to instruct him that the payment be immediately made.

- Protected Witness identified with code 67HD6JA9K2S/2018, who acted as Director General of Expenditures of the Secretary of the Treasury, stated that in late November 2014, the Head of the Department of Programming and Payment Control informed him that he had received two or three payment requests in favor of *Union Ganadera Regional Division del Norte*, in a total amount of $5,500,000.00 (five million, five hundred thousand pesos, *00/100, Mexican currency*), itemized as subsidy for its members to purchase oat and other grains, and that Adrian Dozal Dozal, then Director of Administrative Services, told him to immediately make these payments, but the witness needed to confirm the supporting information, because the only documentation available to justify and verify the payment was a receipt signed by the representative of *Union Ganadera* and also told him that the request had been signed by Dozal and Gerardo Villegas (then General Director of Administration), but they intended to affect the budget of the Secretary of Rural Development, because as to the Secretary of the Treasury, they did not have any other documentation. The witness indicates that they confirmed the instruction directly with the Secretary of the Treasury, who also instructed them to make the payment inasmuch as former Governor Duarte had authorized it and also, Carlos Hermosillo was pushing them to immediately make the payment. The witness considers this subsidy payment was illegal for the following reasons: a) the main beneficiary would directly be Governor Cesar Horacio Duarte Jaquez, for the inference he had in the patrimony of Union Ganadera; b) there was no agreement by which the Secretary of the Treasury could justify the subsidy and the terms granting it, since as it was a requirement due to the subsidy amount; c) there were no operating rules or supporting documents to support delivery of the subsidy to all the beneficiaries thereof; d) the request should have been made directly by the Secretary of Rural Development because it was the entity that would have its budget affected and they were obligated to justify the need for the delivery of the subsidy and to verify that the purpose for which the funds were allocated would be complied, as neither the General Division of Administration nor the Office of Administrative Services had the capacity to do it; and e) in order to grant a subsidy, they should take into account cash outflow availability and in those days, as it was almost the end of the fiscal year, there was not enough cash because Christmas bonus and vacation had been paid to employees, and other mandatory expenses had to be covered.

- *Protected witness identified with code FE54HD7SHJW/2019[75], who acted as Chief Head of the Division of Programming and Payment Control*, stated that at the end of 2014, he received three payment requests in a total amount of $5,500,000.00 (five million five hundred thousand pesos, *00/100, Mexican currency*) for subsidy to *Union Ganadera Division del Norte*, for the purchase of grain for its members. Every payment request was signed by Adrian Dozal Dozal and Gerardo Villegas Madriles. The witness also points out that none of these requests had supporting documentation for the payments to be made to *Union Ganadera*. The only document that was attached to the requests was an unofficial receipt signed by the Representative of *Union Ganadera*, which was insufficient to justify the subsidy, particularly because it was a large amount of money. However, the payment requests were validated because the person identified with code 56RT65PW7, who acted as the Chief Head of the Secretary of the Treasury, ordered to do so. In this regard, the witness states that Adrian Dozal called him to inform that he had sent those payment requests to his division, and due to superior orders, they had to be paid immediately. After reviewing the payment requests, he noted that supporting documents were not included to justify

---

[75] In the Agreement dated October 25, 2018, there was determined that the information FE54HD7SHJW/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

EX - DUARTE JAQUEZ - 000107

Sworn statement

the payments and that the budget of the Secretary of Rural Development was intended to be affected; this was illegal because said Secretary, as the entity in charge of guarding the interests of the rural sector, had the task of requesting and justifying impact on their budget. The witness says that he talked to the person identified with code 67HD6JA9K2S/2018, his supervisor, who referred him to the person identified with code 56RT65PW7, so they could talk about the situation and confirm the instruction received. This is, Adrian Dozal requested the immediate payment of the subsidy, but there was no documentation to support and justify the payment, added to the fact that the account of the Secretary of Rural Development would be affected. The witness states that the person identified with code 56RT65PW7 instructed them to make the payment as shortly as possible because Carlos Gerardo Hermosillo Arteaga was pressuring for the payment to be made and the person identified with code 56RT65PW7 had already discussed this issue with former Governor Cesar Horacio Duarte Jaquez, therefore, the payment was authorized. For this reason, as stated by the witness instructions were provided to his staff for them to process the request as shortly as possible.

- Witness Oscar Rene Leos Rodriguez, who acted as Administrative Supervisor for the *Department of Programming and Payment Control,* stated that in late 2014, his division processed a subsidy payment request in the amount of five million pesos in favor of *Union Ganadera Regional Division del Norte*, for the purchase of corn and bean. These payment requests were validated even though they had serious irregularities, because supporting documentation was not included in the request. The only document that was attached to the request was an unofficial receipt signed by the Representative of the beneficiary *Union Ganadera*, whereas, due to the amount to be disbursed, this request should have been supported with an Agreement validated by the legal division of the Secretary of the Treasury, since the Secretary always presented an Agreement, and this did not happen this time. The witness also states that another irregularity found was that the payment requests had been made by the Administrative and Services Coordination of the Secretary of the Treasury and not through the Secretary of Rural Development, which had an impact in its budgetary structure once the subsidy was granted. This was illegal because one division should not affect the budget of another entity. Every government entity has its own budget, duly itemized for use in a specific purpose. On the other hand, the Department of Programming and Payment Control never received a document authorizing the Administrative and Services Coordination to affect the budget of the Secretary of Rural Development. The witness also notes that the person identified with code FE54HD7SHJW/2019, his supervisor, called him to his office and ordered him to immediately process and approve all payment requests as they had been presented, without documentation to justify the payment and therefore affecting the budgetary structure. Then, the witness instructed Sandra Esparza to immediately process and validate the payment requests.

- Witness Sandra Luz Esparza Dominguez, who acted as Administrative Assistant and part of the specialized staff for the Department of Programming and Payment Control, said that in late 2014, derived from her duties, she drafted three subsidy payment request documents (Payment Control) for the acquisition of corn and other grains to the members of *Union Ganadera Regional Division del Norte* in the amount of five and a half million pesos, which affected the budget of the Secretary of Rural Development. The witness say she reviewed the payment requests and noted that the only supporting documents attached were the payment receipt, the budgetary allocation document, an unofficial receipt, and the subsidy request made by *Union Ganadera*, both signed by their representatives. The witness noted that according to her experience, those receipts were not enough to justify the payment, because the large amount of money subject matter of the subsidy should have been given through an Agreement and a list of beneficiaries, and not with a simple receipt as there happened in this case. The witness said that even though it was an irregular

60

procedure, she drafted the payment control documents because it was the instruction provided by her supervisor Oscar Leos.

Moreover, the procedure carried out to execute the economic-support agreement, after analysis thereof by the technical body in charge of supervising the public expenditure in the entity, the *State Superior Auditor*, was deemed *fraudulent*, since it violated multiple legal provisions related to the management of public funds. According to the State Superior Auditor, allocating funds to the entity in question was not admissible, owing to the existence of a *conflict of interest*, because upon execution of the agreement, *Cesar Horacio Duarte Jaquez* was acting as the *Governor of the State of Chihuahua*, and at the same time, he was the *chairman* of the *Board of Directors* of *Union Ganadera Regional Division del Norte del Estado de Chihuahua*. This conflict of interest resulted in *personal profits* or *undue benefits* for the former governor *Cesar Horacio Duarte Jaquez*. Likewise, there is no documentation or information whereby *Union Ganadera Regional Division del Norte del Estado de Chihuahua* proved that the economic support was allocated for the purpose established in the agreement.

In addition to the irregularities noted, it was detected that:

- There is a discrepancy between the purpose of the subsidy granted and the budgetary allocation authorized by the *Secretary of the Treasury*. This is due to the fact that on *November 27, 2014*, *Adrian Dozal Dozal*, of Administrative Services, drafted and signed the documents called *"Government of the State of Chihuahua, Subsidies"*, supported in *Official Letter* with folio 32-3079/2014, *Official Letter* with folio 32-3080/2014, and *Official Letter* with folio 32- 3081/2014, which indicate the same budgetary allocation debited to *Budget Program 1301700, Definition and Conduction of Rural Development Planning*, in activity *2* of component *1*. In addition to the above, *the person identified with code 56RT65PW7*, then *Secretary of the Treasury*, by means of *Official Letter* number DP-2348/2014, *Official Letter* number DP-2349/2014, and *Official Letter* number DP-2350/2014 authorized the subsidy for the acquisition of corn, oat, and bean also within *Budgetary Program 1301700 C0102, Definition and Conduction of Rural Development Planning*, which was intended to contribute in enhancing the integral development of rural communities through processes to define and conduct strategic development planning. Component *C01* is the agreed program for institutional support, and activity *C0102* refers to the authorization of funds. However, the delivery of diverse support to *Union Ganadera Regional Division del Norte del Estado*, is not a set of actions that directly contribute to complying with the objectives and goals of activity *C0102* of component *C01*, Budget Program *1301700, Definition and Conduction of Rural Development Planning*. The foregoing in violation of articles *46 and 56* of the *Law on Expenditure Budget, Government Accounting and Public Expenditure in the State of Chihuahua*, which stipulates that *"no expenditure may be made without there being an express item line of the budget authorizing it with sufficient balance to cover it [...]"* and that *" the financial management of the funds received by way of transfers, allocations, subsidies or other types of assistance, must be congruent with the objectives and goals of the programs under the responsibility of public entities and municipalities."*

- The funds were disbursed by a department not authorized to do so. This is due to the fact that on *November 27, 2014,* the *Administrative and Services Coordination* of the *Secretary of the Treasury*, drafted three documents denominated *"Government of the State of Chihuahua, Detail of Proof of Payment, Subsidies"*, identified as *Official Letter* with folio CP-32-3152 27/11/2014, *Official Letter* with folio CP-32-3153 / 27/11/2014 and *Official Letter* with folio CP-32-3154/11/27/2014; the three of them were signed, drafted and reviewed by *Adrian Dozal Dozal*, of Administrative Services, and signed and authorized by *Gerardo Villegas Madriles* acting in his capacity as Head of the Administrative Unit. From the foregoing, it is worth noting that the *Detail of Proof of Payment, Subsidies* of support provided to *Union Ganadera Regional Division del Norte* in a total amount of *$5,500,000.00 (five million five hundred thousand pesos, 00/100, Mexican currency)* was prepared by the *Administrative and Services Coordination* of the *Secretary of the Treasury;* however, within the Department duties, pursuant to Article *61* of the *Internal Regulations of the Secretary of the Treasury,* this division does

61

Sworn statement

not have the jurisdiction to issue documents regarding verification of subsidy payment, much less in the case of an Office other than *the Secretary of the Treasury*. Thus, the Department did not have the power to make use of the funds of the *Office of the Secretary of Rural Development; therefore,* there was determined that the disposition of funds by the *Administrative and Services Coordination* of the *Secretary of the Treasury* was illegal.

In addition, according to the bank accounts subject to the analysis of a financial expert, traceability or the route that the money took confirms that the economic support was a false pretense, since said funds were not used for the purpose intended in the agreement, but rather to pay *taxes* of former Governor Cesar Duarte related to tax year 2014 to the *Tax Administration Service,* given that:



- After release of the public money to *Union Ganadera Regional Division del Norte* on November 28, 2014, a payment was made in the amount of *$5,500,000.00 (five million five hundred thousand pesos, 00/100, Mexican currency)* by means of <u>Check</u> number 0968, debited to account number 4800 from HSBC *Mexico S.A.* in the name of that *corporation,* and credited to account number 8360 from Banco Mercantil *del Norte S.A.* in the name of *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR.*

-Then, on December 2, 2014 a payment was made in the amount of *$5,500,000.00 (five million five hundred thousand pesos, 00/100, Mexican currency)* by means of <u>Check</u> number 0947, debited to account number 8360 from *Banco Mercantil del Norte S.A.* in the name of *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR,* and credited to account number 0076 from *BBVA Bancomer S.A.* in the name of *Cesar Horacio Duarte Jaquez.*

- Now then, on *April 28, 2014,* a payment was made in the amount of *$3,105,364.00 (three million one hundred five thousand three hundred sixty-four pesos, 00/100, Mexican currency)* debited to account number 0076 from BBVA Bancomer S.A. in the name of *Cesar Horacio Duarte Jaquez,* and paid to *the Tax Administration Service* (SAT).

- From the above, there is noted that *Cesar Horacio Duarte Jaquez* received public funds in his own bank account, and that he also knew that he had received them because he used a large part of this amount to pay his own taxes for tax year *2014.*

At this point, it is also important to mention that the *deviated money was subject to legal availability[76] and due to that, was to be managed by the implicated public officials,* since, as a result of their duties at different positions held within the state bureaucracy, they had powers that enabled to them to make binding decisions in relation to the management and allocation of said funds to make them be allocated out of the treasury; this is the case of the *State Governor,* the *Secretary of the Treasury,* the *General Director of Administration under the*

---

[76]See Superior Court of Justice of the Nation: First Division, "Non-binding legal precedent: 1a./J. 27/99," *op. cit.* (n. 23).

EX - DUARTE JAQUEZ - 000110

Sworn statement

*Secretary of the Treasury, and the Chief Head of the Division of Programming and Payment Control of the Office the Secretary of the Treasury. And the fact is, as already stated, that part of the duties conferred to Cesar Horacio Duarte Jaquez as head of the Executive Branch was the management of the assets owned by the state[77].*

### C. Conspiracy.

With all of the above, we have been able to see the existence of a criminal group. Conspiracy exists provided that several people appear jointly for a common end; that is, the group of several people for a specific purpose defines conspiracy[78].

There was confirmed the existence of a group of people engaged in the organized and reiterated commission of criminal acts; in this case, consisting of diversion and misappropriation of public funds through the use of the structure of the *Government of the State of Chihuahua*.

- *Protected witness identified with code N52S1-6FDX37M / 2017[79]*, assisted by his defense counsel, stated that he acted as a top-level public official in the Government of the State of Chihuahua during the 2010-2016 Administration, and *Cesar Horacio Duarte Jaquez* was the governor during that period. Therefore, he had direct knowledge regarding the existence and operation of a structure, headed by the former governor, engaged in taking advantage of state public funds for his own benefit. It operated through a comprehensive organization that was consolidated particularly since 2012, and was made up of top-level public officials, such as State Secretaries. This witness also mentioned that the following officials were in this organization: *Javier Garfio Pacheco, Pedro Hernandez Flores, Marcelo Gonzalez Tachiquin, Carlos Hermosillo Arteaga, Gerardo Villegas Madriles, Sergio Medina, Antonio Tarin, Santiago Moreira, Everardo Medina, Manuel Bremer, Sergio Jurado, Ricardo Yañez Herrera, and Jesus Alonso Duarte Garcia.* Similarly, from 2012, some entrepreneurs had a very close relationship with the former governor, including *Jose Yañez, Jaime Galvan, Parrish Cardenas, Anuar Elias, Gabriel Aude, Eduardo Gonzalez, and Eugenio Baeza.* Likewise, the witness in question affirmed that the management of the money of the treasury was managed differently: a) real-estate related services with surcharges which generated margins of deliverable resources; b) fake services for the delivery of non-existent services or products; and c) in some cases and without performing the procedures required by Law, the direct adjudication or payment of public works or services that did not bind to any regulatory framework. The authorization process would be bound to the budgeted amounts, but in the stages of adjudication, bidding, etc., which were performed by the General Division of Administration and the Acquisition Division, winners were selected as previously designated by instruction from the former governor, and the delivery of public funds was defined based on that during the process of routing the money. In the cases of companies created to generate invoicing without providing services (shell companies), these were operated directly by the Director General of Administration and his closest team. The collection mechanism was carried out through the various

---

[77]See "Political Constitution of the State of Chihuahua," *op. cit.* (n. 10), art. 93 Section XXXIV

*The following are powers and obligations of whoever becomes the head of the State Executive Branch: [...] XXXIV. To acquire, administer, and dispose the State-owned assets, pursuant to the terms and conditions stipulated in this Constitution and the Law. The latter shall set out the system to which the assets acquired to perform the duties of the State legislative and judicial branches shall be subject. [...]*

[78] *See* 1St Chamber, Contradiction of Non-binding legal precedent number 399/2011 [Penalty Enhancement], Mexico, 2012 (March 14) section 8.

*Indeed, according to the Mexican Legal Dictionary, by the Institute of Legal Research of the National, Autonomous University of Mexico, the word association [conspiracy] derives from the Latin sociato, which means union, company. It is defined as the action and effect of joining activities or efforts; collaboration; togetherness that joins men in organized groups and entities; it is the group made up of two or more individuals for a specific purpose, and it can specifically occur with a determined purpose; as there may specifically happen that the aims pursued are illegitimate; from these groups, it can be said that the knowledge held by their members contributes to the group's life span.*

*There is a conspiracy provided that several people become together for a common end; that is, the union of several individuals for a specific purpose defines conspiracy.*

[79] In the Agreement dated May 4, 2017, there was determined that the information N52S1-6FDX37M/2017 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

EX - DUARTE JAQUEZ - 000111

external operators indicated; that is, the entrepreneurs mentioned above, and the delivery of funds in cash was transferred and delivered to former Governor *Cesar Horacio Duarte Jaquez.*

- *Protected witness identified with code 56RT65PW7*[80] stated that he had direct knowledge that *Cesar Horacio Duarte Jaquez,* when acted as *Governor of the State of Chihuahua* during the years from 2010 to 2016, instructed and operated multiple deviations of public money from the State for his own benefit, the accumulated totals of which amount to large sums. To that end, as first stage, public money was deviated, through certain procurement and bidding processes, as goods, services or financial products by companies created expressly for that purpose that could show any of the following variables: a) real-estate related services, but with overpricing that generated profits from the funds delivered; b) fake or non-existent financial services or products, which generated direct resources processed by various operators, both within the government structure and external; and c) the direct adjudication or payment of public works or services, in some cases, without undergoing the processes required by law. The other stage consisted of money recovery mechanisms, and was carried out according to the specific case; for example, in the cases of companies created to generate billing without services or products rendered, known as EFOS (Company that Bills Simulated Operations), recovery was done directly by the *General Director of Administration, and* his closest team. In these cases, the collection mechanism was performed through the various external operators indicated, who were responsible for delivering the resources in cash to be taken to the former governor and his closest group. In other cases, the intermediary operator with overpricing delivered a certain percentage or amount directly to the then Governor and his close associates. The witness said that public resources were also deviated through the granting of subsidies, financial support and loans to legal entities over which *Cesar Duarte* had full control of assets, such as *Union Ganadera Regional Division del Norte del Estado* of which he was listed as a member and Chairman of the Board of Directors (at the same time he acted in the capacity as Governor of the State), as well as *Financiera de la Division del Norte S.A. de C.V. SOFOM ENR,* of which he was a majority shareholder by holding about 99% of its shares and also being the Chairman of the Board of Directors. Thus, the final beneficiaries of the subsidies, financial support and credits granted were former Governor *Cesar Duarte* (by having control of the assets of the entities to which the funds in question were allocated) his family, or his close operators, such as *Carlos Hermosillo* and the companies of *Otto Valles Baca.* Regarding the most relevant aspects, the witness in question pointed out that then Governor *Cesar Duarte,* to conceal the series of irregular activities carried out in the administrative processes, had the participation and support of various entities, such as, for example, the *State Superior Auditor,* which on that date was headed by *Jesus Manuel Esparza Flores,* who was a member of the exclusive circle formed by *Cesar Duarte.*

- *Protected witness identified with code KA5P23/2019*[81], assisted by his defense counsel, said that he acted as *Secretary of the Treasury* in the *Government of the State of Chihuahua* during the administration of *Cesar Horacio Duarte Jaquez,* and that, derived from his duties, he knew of payments made to *Union Ganadera Regional Division del Norte,* in charge of the Government of the State, for the benefit of former Governor *Cesar Duarte* and that, at the express instructions of former Governor *Cesar Duarte,* he signed an irregular support agreement whereby public money was allocated to the aforementioned *Union Ganadera Regional Division del Norte.* The witness also noted that the instructions by former Governor *Cesar Duarte was* all expenses related to the rural sector had to be authorized and personally approved by himself, through the *Secretary of Rural Development, Octavio Legarreta.* By means of the above, he learned that former Governor *Cesar Duarte* had a special interest in public spending related to the agroindustry, which began with an increase of the budget in budgetary projects.

---

[80] In the Agreement dated December 8, 2018, there was determined that the information 56RT65PW7/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.
[81] In the Agreement dated April 30, 2019, there was determined that the information KA5P23/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

EX - DUARTE JAQUEZ - 000112

Sworn statement

- *Protected witness identified with code 5M4GYUH19A/2019[82], assisted by his defense counsel, said that he acted as General Director of Investment Programs in the state administration from 2010-2016 and due to the close relationship he developed with its public officials, he knew of various irregularities in the management of resources of the state treasury, since through the practice of administrative acts or agreements carried out outside the established regulations and ordinary procedures, resources were released to directly benefit then Governor Cesar Horacio Duarte Jaquez. He added that the mechanism to release public funds in favor of Union Ganadera Regional Division del Norte and Financiera de la Division del Norte was the use of payments recorded in the so-called Cuenta Deudora, which was given an undue use, since this account was allocated to make emergency expenditure that could be justified and verified much after the payment was made, once the emergency was attended. However, during the administration of Cesar Duarte, this Cuenta Deudora was unduly used, since its nature was distorted by not using it only for emergency matters but for those cases in which it was necessary to release funds without binding to legal procedures and verification, precisely to facilitate their diversion. Said witness also indicated that the resources of more than one hundred million pesos disbursed during the years 2010 to 2014 itemized as subsidies or economic support that were delivered to the Union Ganadera Regional Division del Norte and Financiera de la Division del Norte (directly associated with then governor Cesar Duarte Jaquez) through irregular administrative procedures performed in a discretionary manner without support and with an evident conflict of interest, came from the Regular State Investment Program, and were earmarked in the State Expenditure Budget. He reiterated that, as far as himself was concerned, the person who gave him instructions regarding these procedures was Carlos Gerardo Hermosillo Arteaga and he would in turn inform this to his supervisors.*

These people were organized hierarchically: *Cesar Horacio Duarte Jaquez* performed management duties, and his subordinates those related to operation thereof. Regarding the latter, several Public officials were involved, including the person identified with code *KA5P23/2019, Jose Luis Garcia Mayagoitia,* and the person identified with code *56RT65PW7,* who held the position as *Secretary of the Treasury;* the *person identified with code 5M4GYUH19A/2019,* then *General Director of Public Investment Programs; Octavio Legarreta Guerrero,* then *Secretary of Rural Development; Roberto Dittrich Nevarez,* then *Director of Agricultural Development* of the *Secretary of Rural Development,* and *Ramon Leonel Casas Dominguez,* then *Director of Rural Planning;* but other individuals closely related *to Cesar Horacio Duarte Jaquez* also participated*, such as Carlos Gerardo Hermosillo Arteaga and Guadalupe Medina Aragon.*

The objective of this group of people was the organized and reiterated execution of criminal acts, in particular, the diversion and misappropriation of public funds through the use of the structure of the *Government of the State of Chihuahua.* In particular, the criminal intent of this group of people was reflected in the commission of criminal acts that gave rise to this investigation, in which, between the years *2011 and 2014,* 11 fraudulent administrative procedures were conducted to divert funds from the *Government of the State of Chihuahua* both to *Union Ganadera Regional Division del Norte* and *to Financiera de la Division del Norte S.A. de C.V. SOFOM ENR,* corporations in which *Cesar Horacio Duarte Jaquez* had both personal and business interests.

Having nothing further to add, allow me to take this opportunity to send you my best regards.

Chihuahua, Chih., October 19, 2019
[signed]
Cesar Augusto Peniche Espejel
General Prosecutor for the State of Chihuahua

---

[82] In the Agreement dated April 10, 2019, there was determined that the information 5M4GYUH19A/2019 would provide would jeopardize their physical integrity; therefore, the Public Prosecutor decided on the legal mechanism for protecting their identity.

EX - DUARTE JAQUEZ - 000113



FISCALÍA GENERAL
DE LA REPÚBLICA

[A SEAL THAT READS: MEXICAN COAT OF
ARMS,
UNITED MEXICAN STATES,
MINISTRY OF THE INTERIOR,
GOVERNMENT UNIT]

**00427**

**ALEJANDRO LOPEZ GONZALEZ**, ADJUNCT GENERAL DIRECTOR OF THE OFFICIAL GAZETTE OF THE FEDERATION, ASSISTING THE HEAD OF THE GOVERNMENT UNIT, GROUNDED ON ARTICLES 11 (I) AND (II) AND 12 LAST PARAGRAPH OF THE INTERNAL REGULATIONS OF THE MINISTRY OF THE INTERIOR, HEREBY **CERTIFIES:** THAT DAISY ALVAREZ ZAVALA WAS CHIEF EXECUTIVE PROSECUTOR ASSIGNED TO THE DIVISION OF EXTRADITIONS OF THE GENERAL DIVISION OF INTERNATIONAL PROCEEDINGS UNDER THE OFFICE OF THE PROSECUTOR GENERAL OF THE REPUBLIC, ON DECEMBER 19, 2019 AND THE SIGNATURE APPEARING IN THE PRESENT DOCUMENT IS HER OWN.

[A HOLOGRAM
THAT READS:
MINISTRY OF THE
INTERIOR]

NAME OF THE RESPONSIBLE ENTITY: OFFICE OF THE PROSECUTOR GENERAL OF THE REPUBLIC
TYPE OF DOCUMENT: STATEMENT
MEXICO CITY ON NOVEMBER 28, 2019
REGISTRATION No.: **10623**
This Secretariat accepts no responsibility or liability whatsoever for the contents of this document.

WAV/SMC/ALG

[QR CODE]

[SIGNED]
CODE: **PCWRMSP1Y**
Authenticity of this legalization and its electronic signature may be verified at:
www.dicoppu.gobernacion.gob.mx/registro

| [A SEAL THAT READS:<br>MEXICAN COAT OF ARMS<br>UNITED MEXICAN STATES<br>MINISTRY OF FOREIGN AFFAIRS<br>CUAUHTEMOC DELEGATION] | [A SEAL THAT READS:<br>MEXICAN COAT OF ARMS<br>UNITED MEXICAN STATES<br>CONSULAR SERVICE OF<br>LEGALIZATIONS] |
|---|---|

F8
FOLIO **628912**

**THE MINISTRY OF FOREIGN AFFAIRS HEREBY CERTIFIES:**
That ALEJANDRO LOPEZ GONZALEZ WAS THE ADJUNCT GENERAL DIRECTOR OF THE OFFICIAL GAZETTE OF THE FEDERATION ASSISTING THE HEAD OF THE GOVERNMENT UNIT UNDER THE MINISTRY OF THE INTERIOR ON NOVEMBER 28, 2019 and that the preceding signature is his own.
MEXICO CITY ON DECEMBER 13, 2019.

BY ORDER OF THE CLERK
THE REPRESENTATIVE

[SIGNED]
ALEJANDRA SANCHEZ ARRIOLA

This Secretariat accepts no responsibility or liability
whatsoever for the contents of this document