Exhibit 1

[emblem]

**Chihuahua**

STATE GOVERNMENT

STATE ATTORNEY GENERAL'S OFFICE

**Investigation Case File No. 19-2018-28510**

**Date: May 25, 2020**

**Time: 5:00 p.m.**

### ADDITION TO STATEMENT TO THE PROSECUTOR'S OFFICE
### WITH CONFIDENTIAL IDENTITY CODE

### <u>56RT65PW7</u>

In the city of Chihuahua, Chihuahua, at 5:00 p.m. (five o'clock in the afternoon) on MAY TWENTY-FIFTH, IN THE YEAR TWO THOUSAND TWENTY, before the undersigned, Eduardo Cháirez Cos, Prosecutor for the Chihuahua State Attorney General's Office, who acts pursuant to articles 21 of the Political Constitution of the United Mexican States, 118 and 119 of the Political Constitution of the State of Chihuahua, 131, 212, 213, 215, and 251 section X of the National Code of Criminal Procedure; as well as numbers 1, 2 paragraph B, and 12 of the Organic Law of the State Attorney General's Office; and 19 and 20 of its internal Regulations, there appears freely and voluntarily the person with confidential identity code **56RT65PW7**, whose personal information is contained in a secret sealed envelope of this institution and is likewise available to the Court for the relevant purposes. He is informed of his right to appoint a Defense Attorney to assist him and may consult with that attorney regarding everything related to this proceeding; therefore **MR. MARTÍN EDUARDO CASTAÑEDA** is appointed in this act as his Defense Attorney, and he is present at the act, and states that his name is as written, and he may be notified at the same address as the declarant, his occupation is **Attorney**, with professional license number **5280133**, and he states that at this time he accepts the conferred position and affirms that he will faithfully discharge his duties. Next, once he has the technical legal assistance of his defense attorney, he is informed of his constitutional and legal rights, established in article 20 paragraph B of the Political Constitution of the United Mexican States and numbers 113 and 114 of the National Code of Criminal Procedure, which state, respectively: "**Article 20**. […] B. Regarding the rights of all suspects: I. They will be presumed innocent until found guilty via judgment handed down by the judge in the case; II. They may make a statement or remain silent. They will be informed of the reasons for their arrest at the time of arrest, and of their right to remain silent, which may not be used against them. Holding them incommunicado or intimidating or torturing them is prohibited and will be sanctioned by criminal law. Confession made without the presence of the defense attorney will lack all probative value; III. They will be informed of the acts with which they are charged and their rights both at the time of arrest and at their appearance before the Prosecutor's Office or judge. In the case of organized crime, the judicial authority will be able to authorize keeping the accuser's name and information confidential. The law will establish benefits for the accused, defendant, or convict who effectively assists in the investigation and prosecution of organized crime; IV. Offered witnesses and other relevant evidence will be received, granting the time deemed necessary by law for that purpose and assisting to secure the appearance of the people whose testimony is requested, as set forth by law; V. They will be tried at a public hearing by a judge or court. Publicity may only be restricted in exceptional cases determined by law

[fingerprint]

[signature]

Page | 1

[emblem]
**Chihuahua**
STATE GOVERNMENT

STATE ATTORNEY GENERAL'S OFFICE

for reasons of national security, public safety, protection of victims, witnesses, and minors, when the disclosure of legally protected information is put at risk, or when the court deems that there are well-founded reasons to justify it. In organized crime, the records made in the investigation phase may have probative value when they cannot be reproduced at trial or there is a risk to witnesses or victims. The foregoing is without prejudice to the right of the accused to object to or challenge them and provide evidence against them; VI. They will be provided all of the information requested for their defense that is recorded in the case. The suspect and their defense attorney will have access to the records of the investigation when the suspect has been arrested and when the intent is to take their statement or interview them. Likewise, before their first appearance before a judge they will be able to consult those records, with sufficient time to prepare a defense. From this time the proceedings of the investigation will not be able to be kept confidential, except in those exceptional cases expressly identified by law when it is essential to safeguard the success of the investigation and provided they are disclosed in a timely manner so as not to affect the right to a defense; VII. They will be tried within four months if the maximum penalty for the crimes in question does not exceed two years in prison, and within one year if the penalty exceeds that time, unless a longer period is requested for the defense; VIII. They will have the right to an adequate defense by an attorney, who they will freely choose even from the time of arrest. If they do not want to or cannot appoint an attorney, after having been asked to do so, the judge will appoint a public defender. They will also have the right for their defense attorney to appear in all acts of the case and the attorney will be obligated to do so as often as requested, and IX. In no case will imprisonment or detention be extended as a result of failure to pay defense attorney's fees or for any other provision of money, due to civil liability, or any other similar reason. Pretrial detention may not exceed the maximum time of the penalty set by law for the crime that led to the case and in no event will it be longer than two years, unless its extension is a result of the suspect's exercise of the right to a defense. If this term comes to an end without judgment having been rendered, the suspect will be immediately released while the case continues, without detriment to the imposition of other precautionary measures. All prison sentences imposed by judgment will count the time in custody. […]"; "**Article 113**. Rights of the suspect. The suspect will have the following rights: I. To be considered and treated as innocent until their guilt is proven; II. To communicate with a family member and with their Defense Attorney when they are arrested, and the Prosecutor's Office must make every effort to help them achieve this; III. To make a statement or remain silent, with the understanding that their silence will not be able to be used against them; IV. To be assisted by their Defense Attorney at the time they make their statement, as well as during any other proceeding, and to consult privately with the attorney beforehand; V. To be informed at the time of arrest, as well as at their appearance before the Public Prosecutor's Office or Due Process Judge, of the acts of which they are accused and their rights, as well as, where applicable, the reason for their detention and the public official who ordered it, showing them, as appropriate, the warrant issued for them; VI. Not to be subjected at any time during the proceeding to techniques or methods that threaten their dignity, induce or alter their free will; VII. To request before the judicial authority the modification of the precautionary measure that has been imposed, in event they are in pretrial detention, under the circumstances indicated in this Code; VIII. For the suspect and their attorney to have access, except as provided by law, to the records of the investigation, as well as to obtain a free copy, photographic or electronic record of the same, pursuant to articles 218 and 219 of this Code; IX. To receive the relevant evidence offered, being granted the necessary time for that purpose and assistance to secure the appearance of the people

[fingerprint]
[signature]

[emblem]
**Chihuahua**
STATE GOVERNMENT

STATE ATTORNEY GENERAL'S OFFICE

whose testimony is requested and cannot be directly presented, as established in this Code; X. To be tried at a hearing by a trial court, within four months if the maximum penalty for the crimes in question does not exceed two years in prison, and within one year if the penalty exceeds that time, unless a longer period is requested for their defense; XI. To have an adequate defense by a lawyer or an attorney-at-law, with professional license, who may be freely selected from the time of arrest and, barring this, by the corresponding Public Defender, as well as to meet or talk with that attorney in strict confidentiality; XII. To be assisted at no charge by a translator or interpreter should they not understand or speak the Spanish language; when the suspect belongs to an indigenous group or community, the Defense Attorney must know their language and culture, and, if this is not possible, must be assisted by an interpreter of the culture and language in question; XIII. To be presented before the Prosecutor's Office or before the Due Process Judge, as appropriate, immediately after arrest or apprehension; XIV. Not to be exhibited to the media; XV. Not to be presented to the community as guilty; XVI. To request from the time of their arrest, social assistance for minors or disabled persons whose personal care is their responsibility; XVII. To obtain their release should the arrest have been made without a pretrial detention order or other precautionary measure limiting their freedom; XVIII. To have the corresponding embassy or consulate informed upon arrest, and to be provided immigration assistance when they are a foreign national, and XIX. The rest as set forth in this Code and other applicable provisions. The terms to which section X of this article refer will be counted from the initial hearing to the time in which judgment is handed down by the competent Court. When the suspect has minors or disabled persons under their care, or adult dependents, and there is no one else to provide that care, the Public Prosecutor's Office must direct them to the corresponding social welfare institutions so that they may receive protection." "**Article 114.** Statement of the suspect. The suspect will have the right to make a statement at any stage of the proceeding. In this event, they will be able to do it before the Public Prosecutor's Office or before the Court, with full respect for their rights and in the presence of their Defense Attorney. Should the suspect tell the Police they wish to make a statement regarding the acts under investigation, the Police must communicate this to the Public Prosecutor's Office in order for the statements to be received with the formalities set forth in this Code." As a result, once the content of the previous articles is read and the appearing party duly informed of his rights, he states that it is his wish to participate in this proceeding through his statement, so he is instructed to tell the truth before this authority and says that he will do so, and he is informed of his right to remain silent at any time, if any of the acts regarding which he is going to make a statement is prejudicial to him, to which the appearing party acknowledges that he is informed of this and he adds that his name and other general information is correct as they have been entered on the personal identification record sheet with confidential identity code. Next and with regard to the acts related to Investigation Case File **19-2018-28510**, after a discussion with his attorney, he states that he is appearing before the Public Prosecutor's Office to provide an addition to his statement as follows: *As I already said in my previous statement dated December 8, 2018, I am afraid that the information provided puts my surroundings at risk, given its sensitive nature, specifically because I have been the victim of threats against my person, issued by the former governor himself, CESAR HORACIO DUARTE JAQUEZ, and also by people who have attempted to harm me, operating under the extensive networks of influence that this man has developed*

[fingerprint]
[signature]

[emblem]
**Chihuahua**
STATE GOVERNMENT                                    STATE ATTORNEY GENERAL'S OFFICE

*throughout his career as a politician and that carried him to the governor's office in the State of Chihuahua, in the 2010−2016 term. So, with regard to the threats of which I have been a victim, I want to state that as a result of the events that took place on March 20, 2017, after the death of CARLOS HERMOSILLO, following his unexpected roadway "accident," and as a result of a leak so that CÉSAR DUARTE knew or was informed by GERARDO VILLEGAS that I was cooperating with the State authorities who were investigating acts of corruption that took place in the state government precisely when he was serving as governor in the 2010−2016 period, GERARDO VILLEGAS openly threatened me through a Blackberry text message on Thursday, March 23, with alleged criminal acts that he would make known about me. The next day, Friday, March 24, 2017, I received a call from CESAR DUARTE himself, summoning me to come as soon as possible, setting as a date the next Sunday, March 26, in the city of El Paso, Texas, in the United States of America, in a restaurant located in the Sunland Park area, very close to the shopping center of the same name, specifically the IHOP restaurant, we agreed to meet at one in the afternoon, so that Sunday the 26th I went to the meeting with my wife, we traveled by land from the city of Chihuahua, we crossed to El Paso, and we went to the indicated restaurant, and as soon as we arrived we went in and my wife and I were ordering coffee and in a few minutes CÉSAR DUARTE arrived, and he came alone, which led my wife to go to one of these stores that sell name-brand clothes at big discounts, Ross or Marshalls (one of these) and I stayed alone with former governor DUARTE, and at that time he asked me if it wouldn't be better to go out walking in the parking lot of the plaza where the IHOP was located, and that's what we did. Clearly, from the start, his gestures and attitude towards me were of anger and he had an aggressive tone, I had started the conversation regarding the accident and death of CARLOS HERMOSILLO, just the week before, to which he immediately said that CARLOS HERMOSILLO had been with him in El Paso a day before the accident, and that he had incidentally told him that he had seen me at the Mexico City airport two weeks before, and that I had avoided him, making my disapproval clear, which I told him had not been the case. Then DUARTE told me that he knew through several sources that he did not identify, that they had seen me meet with my attorney and that I was desperately trying for a State Government authority to receive me, and that he knew that I wanted to be a protected witness. He indicated to me in a joking and sarcastic tone that the concept did not exist, but he let me know that because I was acting in that regard, and because of what GERARDO VILLEGAS had told him, he wanted to know directly from me whether I was going to be with him or against him. And if it was the latter, that I would experience the consequences. I let him know, faced with a clear threat of that type, that all I wanted was to take care of my family and confronted with the questions that the authorities would ask me about various acts, I was going to be truthful. And right away he asked me what acts they could ask me about where I could be accused of some responsibility, and I started by referring to the FEPADE [Special Prosecutor's Office for Electoral Crimes] case, in which I had been identified as arranging and carrying out the discounts in wages of State government workers in order to direct those funds to the Institutional Revolutionary Party (PRI), making him see that this had started in the year 2010 and not in 2012 when I entered. On that matter he responded to me that he wasn't at all concerned since he had asked GUILLERMO DOWELL, then the State PRI chairman, to resolve the issue with the PRI National Executive Committee, and it was not all that serious. Next I let him know that GERARDO VILLEGAS had checked with him and he had authorized them to carry out a diversion of around 400 million pesos with the company ONLINE S.A. de C.V., to which he said that he didn't know anything, and as he had always said, he would always deny this and all of the other acts*

[fingerprint]
[signature]

[emblem]
**Chihuahua**
STATE GOVERNMENT

STATE ATTORNEY GENERAL'S OFFICE

*attributed to him. So next I referred to another matter he knew about, and that was a transaction carried out by RICARDO YAÑEZ and ALEJANDRO GUTIERREZ, in which they diverted funds belonging to the public treasury of the State of Chihuahua, as much as 250 million pesos, that were allocated to the national PRI. Concerning this he told me that was RICARDO YAÑEZ's problem, and that he was going to deny knowledge of everything that connected it to him. Finally, I told him that GERARDO VILLEGAS had previously told me about a case that I was not familiar with where they invoiced the Government of the State of Chihuahua for sham operations through a company called KEPLER S.A. de C.V., in the amount of 120 million pesos. As in the previous cases, the former governor indicated to me that he didn't know anything, and that he was always going to deny these acts, and he directly and bluntly reiterated, with anger towards me, that he was not responsible for any of this, and that where applicable, if I participated as a protected witness, that I was wrong and all they wanted was to use me in order to then prosecute me. During about an hour of rough and threatening conversation, he let me know that they were never going to be able to arrest him and on the contrary, there would come a time when he would first put the current Governor Javier Corral in prison, because he had the full support of the federal authorities, and he likewise let me know that he would get those federal authorities to go after me and put me in prison. Finally, and after these warnings and threats, he again told me that I would be better off with him and with that he shook my hand, with enough force to intimidate me, and concluded by asking me if I had stolen money to which I answered no, and he bluntly told me "me neither." And that was the goodbye. He went back to his vehicle and I went to find my wife. And that is how this chapter with the former governor ended.*

*I want to add that before that encounter I had in several calls and in some meetings with him and his family specific communication in which I was trying to get the process he was carrying out with the Office of the Attorney General of the Republic to finally arrive at a conclusion and decision in the UNION PROGRESO case, however this did not progress, and the final agreement with my attorney was that this meeting on Sunday, March 26, would be the last one with CESAR DUARTE, and that in it I would be clear about my future actions, completely separating myself from this man; nevertheless, that same Sunday, upon returning to the city of Chihuahua, it was already late, around 10 in the evening, I received a call on my cell phone from Mr. RICARDO SANCHEZ REYES RETANA, who was CÉSAR DUARTE's defense attorney, telling me that it was urgent that I speak with GERARDO VILLEGAS, because they knew that the authority was investigating what he called a "big case," and later he specified that it was a case involving the company ONLINE S.A. de C.V.—regarding the diversion of funds in a very high amount, which I already mentioned, totaling nearly $400 million pesos—and in view of that investigation I should go to Mexico City right away the next day, and I let him know that GERARDO VILLEGAS was no longer taking my calls, that it had been several days, to which he said that he would talk to GERARDO, to coordinate that meeting in Mexico City so we could come to an agreement to find an alternative that would allow us to avoid the charges since this case was for a very significant amount, even if it was necessary to create documents that did not exist in order to verify the payment of the diverted funds. And so GERARDO VILLEGAS got in touch with me right after I hung up with the attorney SANCHEZ REYES RETANA, and he told me that he and EVER AGUILAR would travel to Mexico City the next day, Monday, that they would leave early and wait for me there, without specifying a place to meet, just that they would be on Paseo de la Reforma, to which I said that I would have to check flight options as appropriate to see if it would be possible to*

[fingerprint]
[signature]

[emblem]
**Chihuahua**
STATE GOVERNMENT

STATE ATTORNEY GENERAL'S OFFICE

*meet them, a situation that I had definitely decided would not happen. The next morning, it was March 27, 2017, I sent a message to GERARDO VILLEGAS to ask him if they had agreed on a place for us to meet in Mexico City, but he did not reply to me, so I assumed he had turned off his cell phone. Around nine in the morning I contacted Mr. SANCHEZ REYES RETANA to see about the place where the meeting would be held, clarifying that as I already indicated, I had no intention of going, and then he told me that there was no longer a need to go to Mexico City because they had just arrested GERARDO VILLEGAS. And that same day there were more arrests, they also arrested JAVIER GARFIO PACHECO, who had been Secretary of Communications and Public Works, in the morning; and in the evening, RICARDO YAÑEZ, who held various positions and ended the 2010−2016 state administration as Secretary of Education, and GERARDO VILLEGAS himself had also been a public official as he held the position of Director General of Administration of the State Government Office of the Secretary of the Treasury. Just that same Monday afternoon, around 5 in the afternoon, I was at home, with my attorney, when I received a call on the home phone, and on answering it turned out that CÉSAR DUARTE was calling me, he told me that what was happening was "bullshit," that what they had done to his nephew GERARDO VILLEGAS was bullshit, and then he asked me if I was covered, to which I replied yes, and he immediately hung up. I understand that he called the house to learn whether they had arrested me too. After this call, I never again had contact with CÉSAR DUARTE. The next day, March 28, it was published in some media outlets that an arrest warrant had been issued against CÉSAR DUARTE, and since then he has been a fugitive, perhaps hidden somewhere in the United States, which was the country where I saw him for the last time. Nevertheless, due to his political contacts and the corruption networks he developed, as well as his extensive financial capacity in large part because of the funds he obtained illegally, he may still have the influence to at any time carry out the threats that he made against me from that time that I saw him for the last time in El Paso, Texas, or they may harm my family, since he is a vindictive person.*

*It is relevant to note that throughout this entire time, and above all stemming from the arrest of Mr. ALEJANDRO GUTIERREZ GUTIERREZ, Director General of Finance of the PRI National Executive Committee, in December of 2017, since a note was published in the national newspaper Reforma about that arrest—and I do not understand why my name was mentioned in it as a person who testified against Mr. GUTIÉRREZ and former governor DUARTE given that my identity was confidential—as a result of that Diario Reforma publication the threats against me were again renewed, even a friend of mine, a former representative named LAURA DOMINGUEZ, talked to me to tell me to be very careful because they were going to come after me, and that CÉSAR DUARTE still had federal support, from the then Office of the Attorney General of the Republic (PGR) and from the Ministry of Internal Affairs, to go after me. To the extent that on February 6, 2018, they arranged a meeting for me with ALFONSO NAVARRETE PRIDA, who at that time was in the Ministry of Internal Affairs, and the meeting took place in Bucareli, in Mexico City, and there NAVARRETE PRIDA told me to change my testimony to disassociate CÉSAR DUARTE and ALEJANDRO GUTIÉRREZ, and that in exchange they would give me a plea bargain. I refused this given that what he was asking from me was not the truth of the matter. And since I didn't change my statement, that is what I said before the State authorities, which led to the arrest of ALEJANDRO GUTIÉRREZ GUTIÉRREZ, on February 9, they started an investigation against me in the then Office of the Attorney General of the Republic. And at that time the PGR told me that they had been instructed to go after me whatever the cost, and that they were going to*

[fingerprint]
[signature]

[emblem]
**Chihuahua**
STATE GOVERNMENT

STATE ATTORNEY GENERAL'S OFFICE

*go after my family. All of these threats continued until the new federal administration came in, in December of 2018, from a party other than PRI, and they ended with the departure of Attorney General ALBERTO ELIAS BELTRAN, and the arrival of the new Attorney General ALEJANDRO GERTZ MANERO. And I am saying this to show the vast sphere of influence of former governor CESAR HORACIO DUARTE JÁQUEZ and his networks of complicity, which have sought to injure and harm me, including through the manipulation of public officials who instead of seeking justice, focused on trying to harm me and my family. This is all I have to say in this matter.* Having nothing further to state, in this act he is informed of the content of article 256 of the National Code of Criminal Procedure, regarding cases in which Plea Bargains apply, which indicates in its section V as follows: "**Article 256**. […] When the suspect provides essential information useful for the prosecution of a crime more serious than the one of which they are accused […]" In addition, he is informed of his obligation to appear at the trial, as well as the obligation to communicate any change of address or residence. Next, after a conversation held with his attorney, he states: *I acknowledge what you just told me and I promise to appear at trial if called and to give my testimony based on everything I have declared regarding these acts, and I likewise promise to communicate to this authority any change of address I might have. This is all I have to say.* This is all he has to say. Next, the Suspect's Defense Attorney is given the floor, and he says: *I do not wish to make any type of statement.* With the foregoing, this proceeding is concluded, and after the declarant reads this document in its entirety, he ratifies its content and states his agreement with it by affixing his fingerprint in the margin at the bottom of each page of this record, for the relevant purposes, and the Public Defender likewise signs, before the Prosecutor for the State Attorney General's Office.

[fingerprint]
"56RT65PW7"
Declarant

[signature]
MARTÍN EDUARDO CASTAÑEDA
Defense Attorney

[signature]
EDUARDO CHÁIREZ COS
Prosecutor



**Chihuahua**
GOBIERNO DEL ESTADO

FISCALIA GENERAL DEL ESTADO

**C.I. No.- 19-2018-28510**

**Fecha: 25 de mayo de 2020.**

**Hora: 17:00 horas.**

## AMPLIACIÓN DE DECLARACIÓN MINISTERIAL CON CLAVE DE IDENTIDAD RESERVADA

### 56RT65PW7

En la Ciudad de Chihuahua, Chihuahua, siendo las 17:00 diecisiete horas del día VEINTICINCO DE MAYO DEL AÑO DOS MIL VEINTE, ante el suscrito Licenciado Eduardo Cháirez Cos, Agente del Ministerio Público de la Fiscalía General del Estado de Chihuahua, quien actúa con fundamento en lo dispuesto por los artículos 21 de la Constitución Política de los Estados Unidos Mexicanos, 118 y 119 de la Constitución Política del Estado de Chihuahua, 131, 212, 213, 215 y 251 fracción X del Código Nacional de Procedimientos Penales; así como en los numerales 1º, 2º apartado B, y 12 de la Ley Orgánica de la Fiscalía General del Estado; y 19 y 20 de su Reglamento interior, comparece de manera libre y voluntaria la persona con clave de identidad reservada **56RT65PW7**; y cuya información personal obra en sobre lacrado en la secrecía de esta Institución, y del mismo modo a disposición del Órgano Jurisdiccional para los efectos conducentes, a quien se le hace de su conocimiento el derecho que tiene de nombrar a un Defensor para que lo asista y pueda consultar con él todo lo relacionado con la presente diligencia; por lo que en este acto designa como su Defensor al **LICENCIADO MARTÍN EDUARDO CASTAÑEDA**, quien se encuentra presente en el acto, y manifiesta llamarse como ha quedado escrito, el cual puede ser notificado en el mismo domicilio que el declarante, de ocupación **Abogado**, con número de cédula profesional **5280133**, manifestando dicho profesionista que en este momento acepta el cargo conferido y protesta cumplir su leal desempeño. A continuación, una vez que con la asistencia técnico jurídica de su defensor, se le ha hecho del conocimiento de los derechos que tanto constitucionales como legales le asisten, consignados en el artículo 20 apartado B de la Constitución Política de los Estados Unidos Mexicanos y numerales 113 y 114 del Código Nacional de Procedimientos Penales, que a la letra, respectivamente establecen: "**Artículo 20.** [...]B. De los derechos de toda persona imputada: I. A que se presuma su inocencia mientras no se declare su responsabilidad mediante sentencia emitida por el juez de la causa; II. A declarar o a guardar silencio. Desde el momento de su detención se le harán saber los motivos de la misma y su derecho a guardar silencio, el cual no podrá ser utilizado en su perjuicio. Queda prohibida y será sancionada por la ley penal, toda incomunicación, intimidación o tortura. La confesión rendida sin la asistencia del defensor carecerá de todo valor probatorio; III. A que se le informe, tanto en el momento de su detención como en su comparecencia ante el Ministerio Público o el juez, los hechos que se le imputan y los derechos que le asisten. Tratándose de delincuencia organizada, la autoridad judicial podrá autorizar que se mantenga en reserva el nombre y datos del acusador. La ley establecerá beneficios a favor del inculpado, procesado o sentenciado que preste ayuda eficaz para la investigación y persecución de delitos en materia de delincuencia organizada; IV. Se le recibirán los testigos y demás pruebas pertinentes que ofrezca, concediéndosele el tiempo que la ley estime necesario al efecto y auxiliándosele para obtener la comparecencia de las personas cuyo testimonio solicite, en los términos que señale la ley; V. Será juzgado en audiencia pública por un juez o tribunal. La publicidad sólo podrá restringirse en los casos de excepción que determine la

FISCALIA GENERAL DEL ESTADO

# Chihuahua
GOBIERNO DEL ESTADO

ley, por razones de seguridad nacional, seguridad pública, protección de las víctimas, testigos y menores, cuando se ponga en riesgo la revelación de datos legalmente protegidos, o cuando el tribunal estime que existen razones fundadas para justificarlo. En delincuencia organizada, las actuaciones realizadas en la fase de investigación podrán tener valor probatorio, cuando no puedan ser reproducidas en juicio o exista riesgo para testigos o víctimas. Lo anterior sin perjuicio del derecho del inculpado de objetarlas o impugnarlas y aportar pruebas en contra; VI. Le serán facilitados todos los datos que solicite para su defensa y que consten en el proceso. El imputado y su defensor tendrán acceso a los registros de la investigación cuando el primero se encuentre detenido y cuando pretenda recibírsele declaración o entrevistarlo. Asimismo, antes de su primera comparecencia ante juez podrán consultar dichos registros, con la oportunidad debida para preparar la defensa. A partir de este momento no podrán mantenerse en reserva las actuaciones de la investigación, salvo los casos excepcionales expresamente señalados en la ley cuando ello sea imprescindible para salvaguardar el éxito de la investigación y siempre que sean oportunamente revelados para no afectar el derecho de defensa; VII. Será juzgado antes de cuatro meses si se tratare de delitos cuya pena máxima no exceda de dos años de prisión, y antes de un año si la pena excediere de ese tiempo, salvo que solicite mayor plazo para su defensa; VIII. Tendrá derecho a una defensa adecuada por abogado, al cual elegirá libremente incluso desde el momento de su detención. Si no quiere o no puede nombrar un abogado, después de haber sido requerido para hacerlo, el juez le designará un defensor público. También tendrá derecho a que su defensor comparezca en todos los actos del proceso y éste tendrá obligación de hacerlo cuantas veces se le requiera, y IX. En ningún caso podrá prolongarse la prisión o detención, por falta de pago de honorarios de defensores o por cualquiera otra prestación de dinero, por causa de responsabilidad civil o algún otro motivo análogo. La prisión preventiva no podrá exceder del tiempo que como máximo de pena fije la ley al delito que motivare el proceso y en ningún caso será superior a dos años, salvo que su prolongación se deba al ejercicio del derecho de defensa del imputado. Si cumplido este término no se ha pronunciado sentencia, el imputado será puesto en libertad de inmediato mientras se sigue el proceso, sin que ello obste para imponer otras medidas cautelares. En toda pena de prisión que imponga una sentencia, se computará el tiempo de la detención. [...]"; "**Artículo 113.** Derechos del Imputado. El imputado tendrá los siguientes derechos: I. A ser considerado y tratado como inocente hasta que se demuestre su responsabilidad; II. A comunicarse con un familiar y con su Defensor cuando sea detenido, debiendo brindarle el Ministerio Público todas las facilidades para lograrlo; III. A declarar o a guardar silencio, en el entendido que su silencio no podrá ser utilizado en su perjuicio; IV. A estar asistido de su Defensor al momento de rendir su declaración, así como en cualquier otra actuación y a entrevistarse en privado previamente con él; V. A que se le informe, tanto en el momento de su detención como en su comparecencia ante el Ministerio Público o el Juez de control, los hechos que se le imputan y los derechos que le asisten, así como, en su caso, el motivo de la privación de su libertad y el servidor público que la ordenó, exhibiéndosele, según corresponda, la orden emitida en su contra; VI. A no ser sometido en ningún momento del procedimiento a técnicas ni métodos que atenten contra su dignidad, induzcan o alteren su libre voluntad; VII. A solicitar ante la autoridad judicial la modificación de la medida cautelar que se le haya impuesto, en los casos en que se encuentre en prisión preventiva, en los supuestos señalados por este Código; VIII. A tener acceso él y su defensa, salvo las excepciones previstas en la ley, a los registros de la investigación, así como a obtener copia gratuita, registro fotográfico o electrónico de los mismos, en términos de los artículos 218 y 219 de este Código; IX. A que se le reciban los medios pertinentes de prueba que ofrezca, concediéndosele el tiempo necesario para tal efecto y auxiliándosele para obtener la comparecencia de las personas

FISCALIA GENERAL DEL ESTADO

# Chihuahua
GOBIERNO DEL ESTADO

cuyo testimonio solicite y que no pueda presentar directamente, en términos de lo establecido por este Código; X. A ser juzgado en audiencia por un Tribunal de enjuiciamiento, antes de cuatro meses si se tratare de delitos cuya pena máxima no exceda de dos años de prisión, y antes de un año si la pena excediere de ese tiempo, salvo que solicite mayor plazo para su defensa; XI. A tener una defensa adecuada por parte de un licenciado en derecho o abogado titulado, con cédula profesional, al cual elegirá libremente incluso desde el momento de su detención y, a falta de éste, por el Defensor público que le corresponda, así como a reunirse o entrevistarse con él en estricta confidencialidad; XII. A ser asistido gratuitamente por un traductor o intérprete en el caso de que no comprenda o hable el idioma español; cuando el imputado perteneciere a un pueblo o comunidad indígena, el Defensor deberá tener conocimiento de su lengua y cultura y, en caso de que no fuere posible, deberá actuar asistido de un intérprete de la cultura y lengua de que se trate; XIII. A ser presentado ante el Ministerio Público o ante el Juez de control, según el caso, inmediatamente después de ser detenido o aprehendido; XIV. A no ser expuesto a los medios de comunicación; XV. A no ser presentado ante la comunidad como culpable; XVI. A solicitar desde el momento de su detención, asistencia social para los menores de edad o personas con discapacidad cuyo cuidado personal tenga a su cargo; XVII. A obtener su libertad en el caso de que haya sido detenido, cuando no se ordene la prisión preventiva, u otra medida cautelar restrictiva de su libertad; XVIII. A que se informe a la embajada o consulado que corresponda cuando sea detenido, y se le proporcione asistencia migratoria cuando tenga nacionalidad extranjera, y XIX. Los demás que establezca este Código y otras disposiciones aplicables. Los plazos a que se refiere la fracción X de este artículo, se contarán a partir de la audiencia inicial hasta el momento en que sea dictada la sentencia emitida por el Órgano jurisdiccional competente. Cuando el imputado tenga a su cuidado menores de edad, personas con discapacidad, o adultos mayores que dependan de él, y no haya otra persona que pueda ejercer ese cuidado, el Ministerio Público deberá canalizarlos a instituciones de asistencia social que correspondan, a efecto de recibir la protección."; "**Artículo 114.** Declaración del imputado. El imputado tendrá derecho a declarar durante cualquier etapa del procedimiento. En este caso, podrá hacerlo ante el Ministerio Público o ante el Órgano jurisdiccional, con pleno respeto a los derechos que lo amparan y en presencia de su Defensor. En caso que el imputado manifieste a la Policía su deseo de declarar sobre los hechos que se investigan, ésta deberá comunicar dicha situación al Ministerio Público para que se reciban sus manifestaciones con las formalidades previstas en este Código." En consecuencia, una vez que se le dio lectura al contenido de los artículos anteriores y quedando el compareciente debidamente enterado de sus derechos, manifiesta que es su deseo de intervenir en la presente diligencia a través de su declaración, por lo que se exhorta para que se conduzca con verdad ante esta autoridad aseverando así hacerlo, y se le hace saber el derecho que tiene de guardar silencio en cualquier momento, si alguno de los hechos sobre los que va a declarar le depara perjuicio, a lo que el compareciente manifiesta quedar enterado de ello, para lo cual agrega que su nombre correcto y demás datos generales son tal y como han quedado asentados en la hoja de registro de datos de individualización de persona con clave de identidad reservada. Acto seguido y respecto a los hechos relacionados con la Carpeta de Investigación **19-2018-28510,** previa charla que sostuvo con su abogado, manifiesta que comparece ante el Ministerio Público para rendir una ampliación de declaración en los siguientes términos: *Como ya lo manifesté en mi declaración anterior de fecha ocho de diciembre de 2018, tengo temor que la información aportada ponga en riesgo mi entorno, dada la delicadeza de la misma, en específico porque ya he sido víctima de amenazas en contra de mi persona, emitidas por el propio exgobernador CESAR HORACIO DUARTE JAQUEZ, y también por personas que han tratado de hacerme daño, operando bajo las amplias redes de influencia que este señor ha tejido a*



FISCALIA GENERAL DEL ESTADO

**Chihuahua**
GOBIERNO DEL ESTADO

lo largo de su carrera como político y que lo llevaron a ser gobernador del Estado de Chihuahua, por el sexenio 2010-2016. Así pues, en relación a las amenazas de las que he sido víctima, quiero manifestar que derivado de los sucesos ocurridos el 20 de marzo de 2017 tras el fallecimiento de CARLOS HERMOSILLO, luego de su inesperado "accidente" carretero, y que derivado de una filtración respecto a que CÉSAR DUARTE supo o fue informado por GERARDO VILLEGAS, de que yo estaba colaborando con las autoridades del Estado que estaban investigando hechos de corrupción ocurridos al interior de la administración pública estatal cuando precisamente fungió como gobernador por el periodo 2010-2016, y en donde abiertamente a través de un mensaje de texto por Blackberry el jueves 23 de marzo GERARDO VILLEGAS me amenazó con supuestos hechos delictivos que él daría a conocer respecto a mi persona, fue que al día siguiente viernes 24 de marzo del 2017, recibí una llamada del propio CESAR DUARTE, para citarme a la brevedad posible, fijándose como fecha el próximo domingo 26 de marzo en la ciudad de El Paso, Texas, en los Estados Unidos de América, en un restaurante ubicado en la zona de Sunland Park, muy cerca del centro comercial con el mismo nombre, concretamente en el restaurante Ihop, siendo que a la una de la tarde quedamos de vernos, por lo que ese domingo 26 yo acudí a la cita en compañía de mi esposa, nos trasladamos vía terrestre desde la ciudad de Chihuahua, cruzamos a El Paso, y nos dirigimos al restaurant indicado, e inmediatamente que llegamos ingresamos y mi esposa y yo estábamos ordenando un café y a los pocos minutos llegó CÉSAR DUARTE, y llegó solo, lo que motivó que mi esposa se fuera a una de estas tiendas comerciales que venden ropa de marca con grandes descuentos, Ross o Marshalls (algunas de estas) y pues yo me quedé solo con el exgobernador DUARTE, y en eso él me pidió que mejor nos saliéramos a caminar por todo el estacionamiento de la plaza en donde se ubicaba el Ihop, y así lo hicimos. Claramente, de entrada su gesto y actitud hacia mi persona era de enojo y de tono agresivo, habiendo iniciado el dialogo de mi parte respecto al accidente y muerte de CARLOS HERMOSILLO, apenas la semana pasada, a lo que de inmediato él se refirió que CARLOS HERMOSILLO había estado con él en El Paso, un día antes del accidente, y que por cierto le había manifestado que me había encontrado en el aeropuerto de la Ciudad de México dos semanas atrás, y que yo lo había evadido mostrándole un rechazo, cosa que le manifesté que no había sido así. Acto seguido, DUARTE, me hizo saber que él tenía conocimiento, por diversas fuentes que no me precisó, respecto que me habían visto reunirme con  mi abogado en la que yo estaba buscando desesperadamente que me recibiera alguna autoridad del Gobierno del Estado, y que él sabía que yo quería ser testigo protegido. Señalándome en tono burlón y sarcástico, que esa figura no existía, pero me hizo saber que por el hecho de estar  yo actuando en ese sentido, y por lo que GERARDO VILLEGAS le había informado, pues él quería saber directamente de mi si iba a estar con él o iba a enfrentarlo. Y que de ser lo segundo, que me atuviera a las consecuencias. Yo le hice saber, ante una clara amenaza de ese tipo, que lo único que yo quería era cuidar a mi familia y que ante los cuestionamientos que la autoridad me hiciera sobre diversos hechos, yo iba a actuar con la verdad. Y enseguida él me preguntó que sobre cuáles hechos podrían cuestionarme por los cuales se  me acusara de alguna responsabilidad, por lo que inicié refiriéndole al caso de FEPADE, en el que se me había señalado de haber organizado y operado los descuentos en sueldos por compensación de los trabajadores de gobierno del Estado para dirigir esos recursos al Partido Revolucionario Institucional (PRI), haciéndole ver que esto había iniciado desde el año 2010 y no en el 2012 en que yo entré. Sobre ello me respondió que no le preocupaba en lo más mínimo ya que él le había pedido a GUILLERMO DOWELL, entonces presidente Estatal del PRI, que ese tema lo resolviera con el Comité Ejecutivo Nacional del PRI, y que no tenía mayor gravedad el asunto. Enseguida le hice saber que GERARDO VILLEGAS, había visto con él, y él le había autorizado que operaran con la empresa ONLINE S.A. de C.V., un desvío por cerca de 400 millones de pesos, a lo que él se refirió que él no sabía nada, y que como siempre lo había manifestado, él siempre negaría este y todos los demás hechos que le

FISCALIA GENERAL DEL ESTADO

# Chihuahua
GOBIERNO DEL ESTADO

*atribuyeran. Por lo que seguidamente le hice referencia a otro asunto del cual él tenía conocimiento, y era una operación realizada por RICARDO YAÑEZ, y ALEJANDRO GUTIERREZ, por medio de la cual habían desviado recursos pertenecientes al erario público del Estado de Chihuahua, hasta por 250 millones de pesos, que se habían destinado al PRI nacional. Sobre ello me indicó que eso era problema de RICARDO YAÑEZ, y que él iba a desconocer todo lo que lo vinculara. Finalmente le señalé que GERARDO VILLEGAS me había manifestado en días anteriores un caso que yo desconocía y en el que facturaron a Gobierno del Estado de Chihuahua, operaciones simuladas a través de una empresa denominada KEPLER S.A. de C.V., por la cantidad de 120 millones de pesos. De igual forma que en los casos anteriores, el exgobernador me señaló que no sabía nada, y que él iba a negar siempre estos hechos, y me reiteró de manera directa y contundente, con enojo hacia mi persona, que él no tenía ninguna responsabilidad sobre nada de esto, y que en su caso, si yo caía en una participación como testigo protegido, que yo estaba equivocado y que lo único que querían era usarme para luego proceder contra mi. Durante aproximadamente una hora de una conversación ríspida y amenazante hacia mí, me hizo saber que a él jamás lo iban a lograr detener y que por el contrario, llegaría el momento en que primero él metería a la cárcel al actual Gobernador Javier Corral, porque él tenía todo el apoyo de las autoridades federales, haciéndome saber que de igual forma él buscaría que estas autoridades federales se fueran contra mi y me metieran a la cárcel. Finalmente, y después de estas advertencias y amenazas, nuevamente me indicó que más me valía que estuviera con él y en eso me dio un apretón de mano, con bastante fuerza así para intimidarme, y concluyó cuestionándome si yo me había robado dinero a lo que le respondí que no, y él de manera contundente me dijo "yo tampoco". Y esa fue la despedida. Él se retiró a su vehículo y yo me fui a buscar a mi esposa. Y pues así fue como concluyó este capítulo con el exgobernador.*

*Quiero agregar que hasta ese encuentro yo había mantenido en diversas llamadas y en algunas reuniones con él y su familia, cierta comunicación por medio de la cual yo buscaba que las gestiones que él estaba haciendo ante la Procuraduría General de la República para la conclusión y determinación del caso UNION PROGRESO, finalmente ocurriera, sin embargo esto no avanzó, y el acuerdo final con mi abogado fue que esta cita del domingo 26 de marzo, fuera la última con CESAR DUARTE, y que en ella dejara en claro mi actuación hacia el futuro deslindándome totalmente de este señor; sin embargo, ese mismo domingo, al regresar a la ciudad de Chihuahua, ya era tarde, alrededor de las 10 de la noche, recibí una llamada a mi celular del Licenciado RICARDO SANCHEZ REYES RETANA, quien era el abogado defensor de CÉSAR DUARTE, diciéndome que era urgente que hablara con GERARDO VILLEGAS, porque tenían conocimiento de que la autoridad estaba llevando a cabo investigaciones de lo que él llamó un "caso grande", y que posteriormente especificó que se refería a un caso que involucraba a la empresa ONLINE S.A. de C.V. —por un desvío de recursos por un monto altísimo, que ya mencioné, hasta por una suma que casi alcanzaba los $400 millones de pesos— y que ante tales investigaciones había la necesidad urgente de que me trasladara al día siguiente a la Ciudad de México, y yo le hice saber que GERARDO VILLEGAS ya no me tomaba ninguna llamada, desde hacía varios días, a lo que él me indicó que él hablaría con GERARDO, para coordinar esa reunión en la ciudad de México y con ello ponernos de acuerdo para buscar una alternativa que nos permitiera eludir los cargos ya que este caso era por un monto muy relevante, ya fuera que se tuvieran que crear documentos que no existían para comprobar la salida del recurso que se desvió. Fue así que GERARDO VILLEGAS se comunicó conmigo inmediatamente después de que colgué con el abogado SANCHEZ REYES RETANA, y me dijo que él junto con EVER AGUILAR viajarían a la Ciudad de México el día de mañana lunes, que saldrían temprano y que me esperarían allá, sin indicarme un lugar específico para vernos, solo que estarían por Paseo de la Reforma, a lo que le indiqué que yo tendría que ver en su caso opciones de vuelos para ver esa posibilidad de*

FISCALIA GENERAL DEL ESTADO

# Chihuahua
GOBIERNO DEL ESTADO

*acompañarlos, situación que claramente yo tenía definido no realizaría. A la mañana siguiente, ya siendo 27 de marzo del 2017, yo le envié un mensaje a GERARDO VILLEGAS, para preguntarle si ya habían acordado un lugar donde reunirnos en la Ciudad de México;, pero ya no me contestó, por lo que yo supuse que ya había apagado su celular. Ya alrededor de las nueve de la mañana me comuniqué con el Licenciado SANCHEZ REYES RETANA, para ver lo del lugar en donde sería la reunión, aclarando que como ya lo señalé yo no tenía intención alguna de acudir, y pues el Licenciado me dijo que ya no había necesidad de que acudiera a la Ciudad de México porque acababan de detener a GERARDO VILLEGAS. Y en ese mismo día tuvieron lugar más detenciones, también por la mañana detuvieron a JAVIER GARFIO PACHECO, quien había sido Secretario Comunicaciones y Obras Públicas,  y por la noche a RICARDO YAÑEZ, quien ocupó varios cargos y terminó la administración estatal 2010-2016 siendo Secretario de Educación,  y pues el mismo GERARDO VILLEGAS, también había sido servidor público ya que ocupó el cargo de Director General de Administración de la Secretaría de Hacienda de Gobierno del Estado. Justamente, ese mismo lunes por la tarde, alrededor de las 5 de la tarde, yo me encontraba en mi casa, y estaba conmigo mi abogado, cuando recibí una llamada en el teléfono de la casa, y al contestar resultó que quien me llamaba era CÉSAR DUARTE, me dijo que lo que estaba pasando eran "chingaderas", que eso que le habían hecho a su sobrino GERARDO VILLEGAS, eran chingaderas, y enseguida me preguntó que si yo me encontraba amparado, a lo que le contesté que sí, y enseguida me colgó. Entiendo que marcó a la casa para saber si a mi me habrían detenido también. Después de esta llamada nunca más he vuelto a tener contacto con CÉSAR DUARTE. Al día siguiente 28 de marzo salió publicado en algunos medios que se había librado una orden de aprehensión en contra de CÉSAR DUARTE, y desde entonces el señor se encuentra prófugo, tal vez oculto en algún lugar de los Estados Unidos, que fue el país en donde lo vi por última vez. Sin embargo, por ser una persona que debido a sus contactos en la política y mediante las redes de corrupción que desarrolló, además de su amplia capacidad económica debido en gran parte a los recursos que obtuvo ilícitamente, pues puede seguir teniendo influencia para cumplir en cualquier momento las amenazas que me dijo desde aquella vez que lo vi por última vez en El Paso, Texas, o que le puedan hacer daño a mi familia, ya que se trata de una persona vengativa.*

*Siendo pertinente señalar, que a lo largo de todo este tiempo, y sobre todo derivado de la detención del señor ALEJANDRO GUTIERREZ GUTIERREZ, Director General de Finanzas del Comité Ejecutivo Nacional del PRI, en diciembre del año 2017, siendo que sobre dicha detención salió una nota publicada en el diario de circulación nacional Reforma —y en la cual no entiendo por qué se mencionaba mi nombre como una persona que declaraba en contra del señor GUTIÉRREZ y del exgobernador DUARTE, cuando yo contaba con resguardo de mi identidad— y es a raíz de dicha publicación del Diario Reforma, que de nueva cuenta se renovaron las amenazas en mi contra, incluso una amiga mía, exdiputada de nombre LAURA DOMINGUEZ, me habló para decirme que tuviera mucho cuidado porque se iban a ir en contra mía, y que CÉSAR DUARTE contaba aún con el apoyo federal, de la entonces Procuraduría General de la República (PGR) y de la Secretaría de Gobernación para ir por mi. Al grado de que el día 6 de febrero de 2018 me gestionaron un encuentro con el propio ALFONSO NAVARRETE PRIDA, en aquél entonces en la Secretaría de Gobernación,  y la reunión tuvo lugar en Bucareli, en la Ciudad de México, y ahí me dijo NAVARRETE PRIDA que cambiara mi testimonio para deslindar a CÉSAR DUARTE y a ALEJANDRO GUTIÉRREZ, y que a cambio me darían un criterio de oportunidad. A lo que yo me negué puesto que lo que me pedía no era la verdad de los hechos. Y pues derivado de que no cambié mi declaración, es decir lo manifestado ante las autoridades del Estado y que originó la detención de ALEJANDRO GUTIÉRREZ GUTIÉRREZ, el día 9 de febrero me iniciaron una investigación en la entonces Procuraduría General de la República. Y en esos días me dijeron de la PGR que tenían la instrucción de ir por mi a como diera lugar, y que se*



FISCALIA GENERAL DEL ESTADO

# Chihuahua
GOBIERNO DEL ESTADO

*iban a ir por mi familia. Todas estas amenazas continuaron hasta que entró la nueva administración federal, en diciembre del año 2018, de un partido político distinto al PRI, habiendo cesado con la salida del Procurador General de la República ALBERTO ELIAS BELTRAN, y la llegada del nuevo Procurador ALEJANDRO GERTZ MANERO. Y esto lo manifiesto para reflejar el vasto ámbito de influencia del exgobernador CESAR HORACIO DUARTE JÁQUEZ, y de sus redes de complicidad que han buscado perjudicarme y hacerme daño, incluso mediante la manipulación de servidores públicos que en lugar de procurar justicia, se enfocaron en tratar de lastimarme a mi y mi familia. Siendo todo lo que tengo que manifestar al respecto.* No teniendo más que manifestar, por lo que en este acto se le hace de su conocimiento el contenido del artículo 256 del Código Nacional de Procedimientos Penales, en relación a los casos en que opera el Criterio de Oportunidad, señalando en su fracción V lo siguiente: "**Artículo 256.** [...] Cuando el imputado aporte información esencial y eficaz para la persecución de un delito más grave del que se le imputa [...]".Además, se le informa de su obligación de comparecer a la Audiencia de Debate, así como la obligación de comunicar cualquier cambio de domicilio o morada. Seguidamente previa charla que sostuvo con su abogado, manifiesta: *Quedo enterado de esto último que me acaban de informar y me comprometo a comparecer a Juicio en caso de ser llamado y a rendir mi testimonio en base a todo lo que he declarado relacionado con estos hechos, y de la misma manera me comprometo a comunicar a esta autoridad cualquier cambio de domicilio que llegara a tener. No teniendo más que manifestar.* Siento todo lo que tiene que manifestar. Acto seguido, se le concede el uso de la palabra al Defensor del Imputado, quien señala: *No es mi deseo hacer algún tipo de manifestación.* Con lo anterior se da por terminada la presente diligencia, por lo que previa lectura que hace el declarante del presente documento en todas y cada una de sus partes, ratifica su contenido y manifiesta su conformidad a través de la impresión de su huella digital al margen y al calce de cada una de las fojas que integran la presente actuación, para los efectos conducentes, y de la misma manera plasma su firma el Defensor Público, ante el Agente del Ministerio Público de la Fiscalía General del Estado.- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

_____
"56RT65PW7"

**Declarante**

_____
LIC. MARTÍN EDUARDO CASTAÑEDA

**Defensor**

_____
LIC. EDUARDO CHÁIREZ COS

**Agente del Ministerio Público**



JTG, inc.
8245 Boone Boulevard
Suite 700
Vienna, Virginia
22182

1.703.548.7570  voice
1.877.746.8906  toll free
1.703.548.8223  fax

jtg-inc.com

## CERTIFICATE OF TRANSLATION

I, ___Heather Oland_____ , certify that I am competent to translate this document, and that the translation is true and accurate, to the best of my abilities. Archival seals, stamps, and  certifications have been translated here.

Spanish file name:
PRIORITY Anexo¿ Declaración Ministerial de 56RT65PW7

English file name:
PRIORITY Anexo¿ Declaración Ministerial de 56RT65PW7_T

I certify under penalty of perjury, pursuant to 28 U.S.C. 1746, that the attached translation of the referenced file is true and correct.

Executed this 14th day of July, 2020.

_____
Signature