UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-mc-022829-UNA

IN THE MATTER OF
THE EXTRADITION OF
CESAR HORACIO DUARTE JAQUEZ
_____/

## DETENTION ORDER

This cause is before the Court on Defendant's Motion for Release (ECF No. 14) and the Government's Motion for Detention Pending Extradition Proceedings (ECF No. 10). Respondent Cesar Horacio Duarte Jacquez was arrested in this District on July 8, 2020, on a warrant and complaint issued pursuant to 18 U.S.C. § 3184 (ECF No. 1). Mr. Duarte first appeared before me on July 10, 2020, via videoconference. At the request of the Parties, a hearing was scheduled for July 30, 2020, for the determination of release or detention pending proceedings. Respondent Duarte appeared via videoconference, represented by retained counsel. Family members appeared on behalf of and in support of Respondent Duarte. After the hearing, counsel was afforded an opportunity to file additional exhibits under seal, to which the Government had an opportunity to respond, but did not.

Though the circumstances of Respondent's case are unusual, and he has made a strong case for his release, bail cannot be here granted. The general rule that release is not afforded to a respondent in extradition proceedings will be followed as special circumstances warranting his release have not been shown.

**I. BACKGROUND**

This case concerns the potential extradition of Respondent Duarte, the former Governor of the Mexican state of Chihuahua, Mexico, from the United States to Mexico. The Government of

1

Mexico seeks to extradite Respondent on charges of aggravated embezzlement and conspiracy. The charges arise from conduct allegedly committed during Duarte's tenure as Governor, between 2010 and 2016. According to the Complaint, accounting performed after Duarte left office revealed that public funds were diverted to companies in which Duarte or his family had ownership interest. Monies were additionally traced to an account controlled by Duarte and his wife, and used to purchase assets for her business. Millions of dollars in diverted funds have allegedly been traced to Duarte's control or that of his family members, allegations he vehemently contests. According to the Request for Extradition, however, it is alleged that following the 2016 election, Duarte expressed concern to his cabinet members for the need to document every expenditure he diverted and set weekly meetings for the purpose of creating justification for those expenditures.

On October 8, 2019, a judge sitting in Chihuahua, Mexico, issued a warrant for Duarte's arrest on these allegations. An extradition complaint was first presented in the District of New Mexico, upon belief that Duarte was located there, and a magistrate judge in that District issued a warrant for his arrest on the complaint. He was subsequently found and arrested in Miami-Dade County, where he has been living since 2017.

Respondent has been residing in the United States since 2016. Duarte contends that he arrived in 2016 seeking medical care following a helicopter crash, and that he arrived here before he was aware of the criminal allegations against him. In his Motion for Release, Duarte provides substantial support for his contention that the charges against him have been brought at the behest of his political rival, successor to his post, Javier Corral Jurado. Duarte avers that Corral has focused his administration on Duarte's extradition and conviction. Though it is not clear what Duarte believes fuels this motivation, he argues that Corral has used this prosecution to distract from his own poor performance as governor. Whatever motivates Corral, he has apparently

campaigned for Duarte's extradition by raising billboards calling for his arrest and marches to drive support for his extradition.

## II. STANDARD OF LAW

The applicable law is not disputed, and both Parties have similarly described the standard this Court applies in deciding whether to grant bail to a respondent in extradition proceedings. A foreign or international extradition proceeding is not a criminal case. *Martin v. Warden, Atlanta, Pen.*, 993 F.2d 824, 829 (11th Cir. 1993). The process of formal extradition is a diplomatic process, governed generally by the applicable extradition treaty and the federal extradition statute, 18 U.S.C. §§ 3181–3196. *In re Extradition of Shaw*, No. 14-M C-81475-WM, 2015 WL 521183, at *4 (S.D. Fla. Feb. 6, 2015). The Bail Reform Act does not apply to extradition proceedings, *see* 18 U.S.C. § 3142; and the federal extradition statute does not provide any authority for a district court to grant bail to a potential extraditee. *In re Extradition of Berrocal*, 263 F. Supp. 3d 1280, 1292 (S.D. Fla. 2017) (citing 18 U.S.C. § 3184)). In the absence of statutory guidance on bond or release pending extradition proceedings, federal case law has developed a standard for considering the present motions.

There is a presumption against bond in extradition proceedings. *Martin v. Warden, Atlanta Pen*, 993 F.2d 824, 827 (11th Cir 1993). "A defendant in an extradition case will be released on bail only if he can prove 'special circumstances.'" *Matter of Extradition of Ricardo Alberto Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1293 (S.D. Fla. 2017) (quoting *Martin*, 993 F.2d at 827). Respondent's burden here in showing special circumstances warranting release on bond cannot be overstated; considering this Court's limited role in an extradition proceeding, contemplating any bond is antithetical to that process. It is with this legal context that the Court has evaluated Respondent Duarte's motion.

3

A. **Special Circumstances Warranting Release**

Respondent advances three grounds for finding special circumstances. First, he contends that since first becoming aware of Mexico's charges against him in 2017, he has engaged in cooperative communications with the United States Government through counsel. Second, he contends that the COVID-19 restrictions on visitation at the prison facility defeat his ability to prepare his defense to these proceedings with counsel. Finally, he contends that the non-violent nature of the charges against him constitute a special circumstance.

1. **Cooperation**

Duarte contends that he has cooperated with the government by providing voluntary information to assist the investigation, offering his voluntary surrender to authorities, and keeping his whereabouts in the United States open. In 2018, Duarte represents that he retained a private firm to investigate witnesses likely to provide testimony against him and produced the ensuing recordings, which tend to support his claim that his life may be in danger and that Corral is driving his prosecution, to the United States Government. None of the cases cited by either party contemplate similar facts and it may indeed be a unique circumstance: the extent of communications between counsel for Duarte and the U.S. Attorney's Office is significant and unusual. I nonetheless find that on this record, his voluntary communications with the government in 2017 and 2018 insufficient to amount special circumstances warranting his release.

Duarte's evidence of cooperation has been filed under seal and substantively will not be described other than to note that the facts advanced therein are consistent with the positions taken in the present motion for release; that is to say, the communications may fairly be described as efforts to dissuade the Government from accepting the extradition request from Mexico. While the letters do evidence Duarte's transparency with the government at least with respect to his intention

4

to answer to the United States Government as required, they do not, importantly, refute the government's charge that Duarte knowingly failed to appear in Mexico upon the issuance of an arrest warrant in 2016 and 2017. Thus, the evidence of Duarte's cooperation with the United States Government, viewed in this context, reveals a simultaneous resistance to comply with the government seeking his extradition. The acceptance of responsibility normally attendant to cooperation with the government is not present under these circumstances, and I do not here find that his communication with the U.S. Attorney's office substantiates his argument that it evidences that he is not a flight risk.

Additionally, while counsel argued at the hearing that he offered to voluntarily surrender Duarte repeatedly over the three years that he communicated with the Government, the letters advanced do not reveal an offer to surrender was communicated therein. Maybe this occurred orally, but there is no competent evidence in this record of the proffered offers to surrender.

Accordingly, I do not here find that his cooperation amounts to a special circumstance warranting his release pending extradition proceedings.

### 2. Restrictions on Defense

Duarte contends that due to COVID-19 restrictions on visitation at the prison, his ability to assist in the preparation of his defense is so impaired as to rise to a special circumstance. While the Court appreciates the difficulty presented by the visitation restrictions, I do not find the limitations constitute special circumstances to meet the standard for extradition bail. Other courts to have considered the argument have likewise rejected it where phone calls with counsel are still available to the Respondent. *Matter of Extradition of Carr*, No. 20 CR 370, 2020 WL 4816052, at *6 (N.D. Ill. Aug. 18, 2020). Duarte represents that there has been a significant delay in the delivery of his mail from counsel but acknowledges that he has been able to speak to counsel by

phone. The pandemic has strained the preparation of every incarcerated criminal defendant, no less so than Mr. Duarte, yet it has not been recognized as a special circumstance for purposes even of deciding release under the Bail Reform Act; nor is it sufficient to meet Mr. Duarte's burden here.

### 3. Economic Nature of Crime

Duarte urges that the non-violent nature of the underlying allegations may be considered a special circumstance warranting his release on bond. Respondent's reliance on *United States v. Taitz*, 130 F.R.D. 442, 45-46 (S.D. Cal 1990) is misplaced. While the court there noted both that the respondent had no criminal history and was charged with a non-violent offense, additional facts that the court relied upon included the complexity of the case; the expectation that proceedings would take at least six months; defendant's allergy to a compound present in the food and soap in the institution; an inability to practice his religion while incarcerated and finally, the fact that the fraud charged was an bondable offense in the country seeking his extradition. None of these additional facts have been advanced in this case. Standing alone, "[t]he fact that an accused is charged only with nonviolent, economic crimes is not a special circumstance justifying release on bail." *In re Extradition of Boeyink*, No. MISC. 2:04M30, 2004 WL 6074945, at *3 (E.D. Va. Jan. 28, 2004) (quoted in *Matter of Extradition of Ricardo Alberto Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1300 (S.D. Fla. 2017)). *Taitz* must be further distinguished on the basis that respondent there was not accused of abusing a position of trust or stealing from public coiffures, as Duarte is.

Having considered the special circumstances identified by Respondent, I find none that warrant his release on bond.

### B. Risk of Flight

Courts in this Circuit consider whether the extraditee presents a flight risk or a danger to

the Community separately from the inquiry into special circumstances. *In re Berrocal*, 263 F. Supp. 3d at 1303-04. In evaluating whether Duarte presents a risk of flight, I have considered his financial means, foreign connections, his age, and the seriousness of the offenses alleged. *Id.* at 1304.

Respondent, through counsel, proffered a spreadsheet of assets to substantiate his lack of significant financial wealth (and also demonstrate what assets are available for the purpose of securing a bond). The spreadsheet represents that Mr. Duarte has a number of assets, if largely not liquid ones, such as livestock and parcels of land.[1] The Government disputes Respondent's relatively modest assets as accurate and argues that the underlying allegations accuse Duarte of taking at least 30 million Mexican pesos, worth more than one million United States dollars, into a personal trust for himself and his wife. Even without taking into consideration the hidden wealth alleged by the Government, Duarte's financial condition suggests wealth sufficient to support himself should he attempt to evade apprehension.

Mr. Duarte's family connections weigh in favor of not finding a flight risk; his family primarily resides in the United States, and he and his wife have initiated immigration proceedings in effort to remain in the United States. Indeed, Respondent advanced evidence that he had disclosed his true address in his asylum proceedings, and was scheduled to appear for an interview with an immigration officer the week of his arrest; both facts tending to show that Duarte was not attempting to conceal his whereabouts from the United States Government but rather intends to make his life here in the United States. His many family members, who appeared at the hearing to offer their support and assets as collateralization on a bond, are U.S. citizens and residents.[2]

Duarte argues that he has shown that he is not a flight risk: despite Corral's multi-year

---

[1] Respondent additionally advanced evidence that his assets in Mexico have been frozen.
[2] No witness was called to offer sworn testimony at the hearing.

efforts to charge and extradite him since his arrival to the United States, Duarte continues to live openly and cooperate with the government seeking to extradite him to Mexico. Because he has not fled yet, he argues, he has shown he is not a risk of flight. As another court has noted on similar facts and argument: "Maybe." *Matter of Extradition of Manrique*, 442 F. Supp. 3d 1172, 1176 (N.D. Cal. 2020), *appeal dismissed sub nom. United States v. Toledo Manrique*, No. 20-10089, 2020 WL 2974858 (9th Cir. Apr. 15, 2020) (finding absence of pre-arrest flight insufficient evidence to carry extraditee's burden on risk of flight). Duarte's communications with the Government demonstrate his intention to challenge the extradition proceedings and the very real chance that if extradited, he may spend many years in jail. In sum, the circumstances have changed with his arrest, and the absence of evidence of earlier flight are not sufficient to meet his burden to show that he is not a risk of flight *now*.

### III. CONCLUSION

For the foregoing reasons, it is hereby Ordered:

1. Duarte's Motion for Release (ECF No. 14) is denied and the Government's Motion for Detention Pending Extradition Proceedings (ECF No. 10) is granted.

2. Respondent Cesar Horacio Duarte Jacquez shall remain in the custody of the United States Marshal pending further Order of the Court.

**DONE and ORDERED** in Chambers in Miami, Florida, on this 14th day of September, 2020.

_____
LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE