**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-mc-22829-UNA

IN THE MATTER OF
THE EXTRADITION OF
CESAR HORACIO DUARTE JAQUEZ

_____/

## ORDER, CERTIFICATION OF EXTRADITABILITY, AND ORDER OF COMMITMENT

The United States seeks to extradite Cesar Horacio Duarte Jaquez ("Duarte") to Mexico to face charges of conspiracy and embezzlement of government funds. Duarte opposes this request and has moved to dismiss the Government's extradition complaint as beyond the relevant statutes of limitations under the laws of Mexico and the United States. The Government opposes dismissal. The Parties argued the Motion to Dismiss at a hearing on November 18, 2020. ECF No. 53. The Court also held an extradition hearing on January 26, 2021, ECF No. 69, at which the Parties submitted evidence and made legal arguments addressing whether Duarte is extraditable under the Treaty.[1]

For the reasons that follow, Duarte's Motion to Dismiss, ECF No. 29, is **DENIED**. Further, I find that the extradition request satisfies the Treaty's requirements and that there is probable cause to believe that Duarte committed the crimes charged in the extradition complaint. I therefore **CERTIFY** that Duarte is extraditable as to those crimes and **ORDER** Duarte detained pending both a review of Mexico's extradition request by the Secretary of State and Duarte's potential surrender to Mexico.

---

[1] Extradition Treaty Between the United States of America and the United Mexican States, U.S.-Mex., May 4, 1978, 31 U.S.T. 5059, as amended by the Protocol to the Extradition Treaty Between the United States of America and the United Mexican States of May 4, 1978, U.S.-Mex., Nov. 13, 1997, S. TreatyDoc. No. 105-46 (1998) [hereinafter Treaty].

## I.      FACTUAL BACKGROUND

The facts giving rise to the charges alleged in the Extradition Complaint relate back to the time when Respondent served as Governor for the State of Chihuahua, Mexico, from 2010 to 2016. After his term, Duarte entered the United States with his family in November 2016 and has remained here continuously. Respondent was arrested in Miami-Dade County on July 8, 2020.

According to the Complaint, while Governor, Duarte directed a series of transactions from which either he or his family received government funds. Beginning in June 2011, Duarte is alleged to have diverted government funds approved for agricultural purposes to companies associated with Duarte, his family, and his wife's business. The latest of the alleged transactions was completed in December of 2014 and involved the diversion of over $5 million Mexican pesos intended for the purchase of feed for use by livestock producers, but instead ended up in an account held by Duarte and was later used to pay his taxes.

The Arrest Warrant alleges that the evidence of the fraud exists in the absence of records to show the appropriate use of State of Chihuahua funds that found their way into accounts controlled by Duarte, his family, or into two corporations in which he is financially invested: Union Ganadera Regional General Division Del Norte Del Estado De Chihuahua ("Union Ganadera") and Financiera De La Division Del Norte, S.A. De C.V. Sofom, E.N.R. ("Financiera"). In 2016, after an election in the State of Chihuahua concluded, it is alleged that Duarte called together his staff and expressed concern over the lack of documentation for a number of public expenditures, asking his staff to create documentation to justify the deviated funds.

The Complaint alleges that the Mexican State has charged Duarte with "*peculado*," or willful appropriation of government funds and with "*asociacion para delinquir*," or joining with

others to commit one or several crimes.[2] Both are charged with aggravated penalty.  ECF No. 1-5, Arrest Warrant, at EX – Duarte Jaquez – 000116. According to the Arrest Warrant issued by a Constitutional Rights Judge for the State of Chihuahua on October 8, 2019, the evidence advanced to the judge led her to find that "the conduct lies on the deviation of public funds, patrimony of the State of Chihuahua in the amount of $96,685,253.90" Mexican Pesos "withdrawn between 2011 and 2014 from diverse accounts … by means of 11 fraudulent administrative proceedings in which there were made 17 payments to" Union Ganadera and Financiera. *Id.*, at EX – Duarte Jaquez – 000117.

## II.   DISCUSSION

### a.  Motion to Dismiss

Respondent contends that the Extradition Complaint is barred by either Mexican or United States' statutes of limitations applicable to the crimes for which extradition is based. The Court has considered the Motion, Response filed by the Government, and Respondent's Reply, and conducted a hearing for oral argument, which Respondent attended via telephone.

### i.  Applicable Law

Article 7 of the Treaty provides that "Extradition shall not be granted when the prosecution or the enforcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the laws of the requesting or requested Party." Treaty, *supra* note 1, art. 7. In deciding Respondent's challenge, the Court must determine if the prosecution against him is barred either by the statute of limitations of Mexico or that of the United States. *United States v. Gonzalez*, No. CV 13-1867 R FFM, 2014 WL 1383972, at *7 (C.D. Cal. Apr. 9, 2014) (certifying extradition and finding prosecution not barred).

---

[2] These are the translations advanced by Respondent (ECF No. 29, at n.2). Throughout the proceedings, the charges have been described as the "embezzlement" and "conspiracy" charges, respectively.

Under Mexican law, the statute of limitations applicable to the offense is determined by calculating the mean of the maximum and minimum possible sentences for that offense, though the minimum statute of limitations is three years.[3]  For *peculado*, the penalty ranges from six months to four years, unless the offense involved a loss in excess of 500 minimum salaries[4]; this loss amount results in aggravated *peculado*, which carries a penalty range of four to twelve years. Thus, the statute of limitations applicable is either three years, or eight if the offense is aggravated.

Respondent Duarte's *asociacion* charge carries a penalty range of nine months to seven and a half years, as a result of an applicable enhancement due to his status as a public official at the time. The applicable statute of limitations is the mean, or fifty-eight and a half months. Additionally, Article 107 of the Criminal Code of the State of Chihuahua provides that the statute of limitations will be doubled when the defendant is outside of Mexico, and, if as a result of the defendant's location, the Chihuahuan Government cannot conclude its investigation.

Under the laws of the United States, a five-year statute of limitations applies to most non-capital offenses, *see* 18 U.S.C. § 3282(a), and both Parties agree here that it applies to both offenses charged. However, no statute of limitations applies to a person fleeing from justice, 18 U.S.C. § 3290; crimes for which the statutes of limitations have not expired before the person takes flight will not be time barred.

ii.  <u>The Charges</u>

The Arrest Warrant, which was issued by a Constitutional Rights Court Judge of the Judicial District of Morelos, State of Chihuahua, charges Duarte with the crimes of Embezzlement of Public Funds with aggravated penalty and Criminal Association with aggravated penalty to the detriment of the Government of the State of Chihuahua. The Arrest Warrant describes the alleged

---

[3] Art. 111, Chihuahua Crim. Code.
[4] *Id*. at Art. 270.

*peculado* in relation to the eleven "Administrative Procedures" or agreements that defined the intended use of the respective funds. ECF No. 1-5, at EX – Duarte Jaquez – 000128. It is alleged that all $96 million Mexican pesos disbursed in relation to these eleven Administrative Procedures or agreements were diverted in seventeen transactions to Duarte either directly or through companies controlled by him. ECF No. 1-3, Diplomatic Note, at EX – Duarte Jaquez – 0001046; ECF No. 1-4, Affidavit of Prosecutor Daisy Alvarez Zavala, at EX – Duarte Jaquez – 000067 ("There was [sic] a total of 11 fraudulent administrative procedures orchestrated by *Cesar Duarte Jaquez* to release public funds in favor of the corporations with ties to him."). In her description of the respective transfers or withdrawals that gives rise to the charge of *peculado*, the Mexican Judge made findings that the loss amount exceeded 500 times the daily minimum wage[5] and ultimately considered the loss amount in total in support of her finding that the evidence supported the charge for the crime of embezzlement, aggravated. ECF No. 1-5, at EX – Duarte Jaquez – 000192).

The Judge considered the applicable statute of limitations and specifically considered Article 107 of the Criminal Code for the State of Chihuahua, which establishes that the statute of limitations is doubled for those out of the territory of the State of Chihuahua. *Id.*, at EX – Duarte Jaquez – 000195. The Judge concluded that doubling was applicable here because Duarte failed to appear when summoned, and on account of the Interpol red notice issued for Duarte on March 31, 2017; both facts were sufficient for the Judge to find that Duarte had evaded law enforcement. *Id.*, at EX – Duarte Jaquez – 000201. The Judge determined that the statute of limitations for the first event of *peculado*, which occurred on June 17, 2011, would expire 16 years later (June 16, 2027); and for the last, which occurred on November 28, 2014, also 16 years later (November 27, 2030).

---

[5] *See, e.g.*, ECF No. 1-5, at EX – Duarte Jaquez – 000133, 000140, 000146, 000152, 000160, 000163, 000168, 000171, and 000188.

*Id.*, at EX – Duarte Jaquez – 000196. With respect to the charge of Criminal Association, the Chihuahuan Judge determined that the statute of limitations will expire on August 27, 2024. *Id.*

The Motion to Dismiss is predicated on Duarte's interpretation of the charges against him as eleven distinct crimes, or counts, each of which he argues must be evaluated for compliance with the statutes of limitations under both Mexican and U.S. law. Individually considered, Duarte argues that most of the counts of *peculado* are subject to the standard, not aggravated, penalty and corresponding standard three-year statute of limitations. For this conclusion, Duarte relies on the opinion of a proffered expert on Chihuahua law who contends that the aggravated penalty (and eight-year statute of limitations) is triggered by a loss amount in excess of 500 times the <u>annual</u> minimum salary; only three of the individual acts underlying the charge of *peculado* exceeded this threshold. Finally, with respect to the *asociacion* charge, Duarte argues that under Mexican law, the statute of limitations was not tolled by the issuance of the arrest warrant, which occurred just days before the expiration of the statute of limitations on that charge, but rather was tolled only upon his arrest on July 8, 2020. Duarte's argument on the U.S. statute of limitations is much simpler: again taking each of the losses alleged as a separate act, nine of the eleven occurred more than five years before the arrest warrant was issued and are thus time barred; Duarte concedes that the *asociacion* charge was timely under United States' law. Arguing that each of the twelve individual charges are barred by the statute of limitations under Mexican or United States' law, Respondent seeks dismissal of the Complaint in its entirety.

In Response, the Government argues that neither the Mexican nor U.S. statutes of limitations had lapsed when the Mexican arrest warrant was issued on October 8, 2019. First, the Government contends that there are only two charges for which timeliness must be evaluated: a single continuing act of *peculado* amounting to a loss in excess of $96 Million pesos, and the

*asociacion* or conspiracy charge, both of which concluded with the last acts in November of 2014, within five years of the arrest warrant issuance. The aggregated loss amount of the *peculado* undisputedly exceeds the threshold necessary to trigger the aggravated penalty and the longer eight-year statute of limitations. Moreover, the Government contends that the aggravated penalty applies to each of the *peculado* loss amounts should they be analyzed individually, because it is applicable to loss amounts in excess of the daily (not annual) minimum wage. Finally, the Government argues that under Mexican law, the statute of limitations is doubled because Duarte's absence from the jurisdiction prevented completion of the investigation or proceedings against him. Similarly, the Government argues that under U.S. law only two crimes should be considered for purposes of the statute of limitations—a continuing offense of embezzlement and conspiracy— and both concluded in November 2014, within the comparable five-year statute of limitations. Yet the Government further contends that Duarte's fugitive status tolled the statute of limitations beginning in November of 2016 when he left Mexico and entered the U.S.; such tolling would apply to all but the earliest two acts of *peculado*, for which the U.S. statute of limitations would have already expired when he fled.

In Reply, Duarte challenges the Government's reliance on his fugitive status either for doubling under Mexican law or tolling under the U.S. law, citing the absence of evidence that he intended to avoid justice or that his absence impeded commencement of the proceedings.

### iii.  Statute of Limitations Under Mexican Law

#### 1.  *Asociacion*

Duarte contends that under Mexican law, the statute of limitations is tolled only upon his arrest, which occurred on July 8, 2020.  Duarte advances an expert opinion for the interpretation of Article 114 of the Criminal Code of Chihuahua, on which the expert relies for the conclusion

that the statute of limitations is interrupted by the arrest of the accused. ECF No. 29-1. A translation of Article 114 is attached to the Declaration of Miguel Olmedo Robles Leon and states that "the statute of limitations for the right to punish shall be interrupted by the arrest of the accused or by their appearance before the judicial authority, if by virtue of the same they are placed under the custody of said authority." *Id.*, at pg. 12 of 14.

His expert's reliance on Article 114 is contradicted by the supplemental Diplomatic Note submitted by the Government. ECF No. 48-1.[6] Through the Diplomatic Note, the Government of Mexico unambiguously asserts that "in all jurisdictions in Mexico, the issuance of an arrest warrant tolls the relevant statute of limitations." ECF No. 48-1, English Translation, at 18 of 19. The Mexican Government further contends that Article 114 is inapplicable to the circumstances giving rise to Duarte's arrest, which followed from the issuance of an arrest warrant intended for extradition from the United States: the arrest by U.S. authorities could not toll the Mexican statute of limitations because he was not then under the custody of the jurisdictional authority that issued the Mexican arrest warrant. *Id.*

Both sides advance the same caselaw to support their position. In *Sainez v. Venables*, 588 F.3d 713 (9th Cir. 2009), the court recognized that the issuance of an arrest warrant tolls the statute of limitations under U.S. law. The *Sainez* court was only asked to consider the statute of limitations under U.S law, as the respondent conceded timeliness under Mexican law. Nonetheless, the Government offers *Sainez* to support its position that the arrest warrant here is the functional equivalent of an indictment under U.S. law, and, accordingly, its issuance tolls the statute of limitations for both Countries; from the Respondent's perspective, *Sainez* did not expressly

---

[6] Duarte moved to strike the Notice and supplemental authority and argued that its late presentation prejudiced his ability to respond. The hearing set for oral argument was thus continued at his request, but the motion to strike denied. ECF No. 50.

consider the tolling of the statute of limitations under the law of the requesting party and thus Respondent argues that its holding is not controlling here.

Recognizing the absence of direct controlling case law on the question of how the Chihuahuan statute of limitations is tolled, I have considered the Diplomatic Note and its unequivocal assertion that the statute of limitations in all Mexican jurisdictions is tolled upon issuance of the arrest warrant. This is further consistent with the Restatement of Foreign Relations Law, on which the *Sainez* court relied in part:

> For purposes of applying statutes of limitation to requests for extradition in accordance with Subsection (1)(d), the period is generally calculated from the time of the alleged commission of the offense to the time of the warrant, arrest, indictment, or similar step in the requesting state, or of the filing of the request for extradition, whichever occurs first.

Restatement (Third) of Foreign Relations Law § 476 (1987) (Grounds for Refusing Extradition). I find that upon its issuance, the Mexican arrest warrant tolled the statute of limitations on October 8, 2019, under both U.S. and Mexican law, making the *asociacion* charge timely.

## 2.  *Peculado*

Duarte's challenge to the timeliness of the *peculado* charges would require me to make three findings in his favor: that the warrant charges Duarte with not one but several separate crimes of *peculado*, each of which must be considered for timeliness; that the aggravated penalty is triggered by exceeding the annual, not daily, minimum wage; and that doubling the statute of limitations is not triggered by his absence from the jurisdiction. I find that the applicable statute of limitations here is the eight-year term applicable to aggravated *peculado*, triggered by the alleged loss amount in excess of 500 times the <u>daily</u> minimum wage; and I find that doubling does indeed apply, as his absence from the State of Chihuahua precluded completion of the proceedings.

Accordingly, even if the transactions are separately considered under the statute of limitations, as the Chihuahuan Judge did, none are time barred under Mexican law.

Duarte's contention that the daily minimum wage is used to determine the aggravated loss amount is strongly undermined by the Arrest Warrant itself and the findings of the Mexican Judge, who found that the statute of limitations would expire in 2024 at the earliest. Specifically, in considering application of the aggravated penalty, the judge considered the daily, not annual, minimum wage and found that the loss amounts alleged exceeded it by more than 500 times. Duarte relies on an expert who opines that at the time the alleged crimes occurred, the Mexican statue omitted the modifier "annual" and ambiguously defined the triggering loss amount for aggravated penalties as the "minimum wage"; applying the rule of lenity, he argues, that must be construed as the annual minimum wage. In contrast, the Government offers its own evidence to support the interpretation of the statute to consider the *daily* minimum wage. ECF No. 36-2. Critically, this interpretation is consistent with the Arrest Warrant itself, which unambiguously states that the judge relied upon and considered the *daily* minimum wage.

Notwithstanding Duarte's challenges to the Government's evidence as unsigned or lacking in concrete support,[7] the explanation offered in the Diplomatic Note is corroborated by the application by the Chihuahuan Judge of the statute of limitations to the crimes charged here, including the specific loss amounts, and her determination that the aggravated penalty here applied based on those loss amounts. I defer to the Mexican Judge's application of Mexican law to determine the measure of loss necessary to trigger the aggravated penalty and corresponding

---

[7] Respondent's expert opines that the Diplomatic Note has "no value under Mexican law" because, he contends, there is nothing in the Law of Foreign Service that authorizes an embassy or its officials to issue statements on the official position of Mexico. ECF No. 52-1.

statute of limitations. *United States v. Trabelsi*, 845 F.3d 1181, 1192 (D.C. Cir. 2017) ("U.S. courts will defer to the judgment of foreign courts construing their own laws.").

Duarte's challenge to the extradition additionally rests on his contention that the charges arise from separate crimes of *peculado*, the earliest of which concluded in June of 2011. The Government advances the Diplomatic Note, which explains that the charges against Duarte are for a single continuing offense "given that it was committed against the same victim, under a sole criminal purpose and different conduct." ECF No. 48-1, at pg. 14 of 19. As previously noted, the Mexican arrest warrant here memorializes the determination of the Chihuahuan Judge that the statute of limitations would expire at the earliest in June 2027 for the first transaction alleged, as the judge considered and calculated the date on which the statute of limitations would toll with respect to each of the transactions.

I find it unnecessary to resolve the Parties' dispute over this issue because, even assuming Respondent's position, the statute of limitations would have expired for only the first of the transactions when the warrant issued, *unless* the statute of limitations was doubled as a result of his absence from the jurisdiction—in which case, the statute of limitations would not expire before 2027. The latter is precisely what the Chihuahuan Judge concluded.

Article 107 provides that the limitations period "shall be doubled for those persons out of the State's territory, if due to this fact it is not possible to conclude the investigation, the proceeding or to impose a penalty." ECF No. 36-2.  The Government explains that in Mexico, a defendant may not be tried *in absentia* but has a right to be present and to defend himself; his absence from Mexico thus prevented conclusion of his prosecution.  Respondent resists applicability of Article 107 to his absence from the State of Chihuahua, offering reasons unrelated to the prosecution for his presence in the United States. Respondent contends the Government failed to show that his

absence from the State of Chihuahua prevented conclusion of the particular *stage* of the prosecution—specifically, the Government's ability to issue the arrest warrant negates the possibility that the Government was unable to conclude its *investigation* due to his absence.

Duarte's interpretation of Article 107 finds no support in the language of the text itself, which expressly applies the disjunctive "or" to the three stages of the criminal proceeding. That doubling is both mandatory ("shall") and intended to cover the entire criminal proceeding appears plain from the text. It is sufficient, as both the Government explains and the Chihuahuan Judge found, that Duarte failed to appear when summoned in 2016 and his prosecution could not be completed, to find that Article 107 here applies to double the statutes of limitations. Accordingly, even if the transactions underlying the *peculado* charge(s) are separately considered for expiration of the statute of limitations, none have expired under Mexican law.

iv.   Statute of Limitations Under United States Law

The Parties agree that the applicable statute of limitations under U.S. law is five years. Similarly, there is no dispute here that the United States statute of limitations is tolled by the issuance of the arrest warrant. *See Sainez*, 588 F.3d at 715–17; *In re Extradition of Sainez*, No. 07–MJ–0177–JMA, 2008 WL 366135, at *7–8 (S.D. Cal. Feb.8, 2008); *followed by In re Extradition of Nunez*, No. 10-24020-MC, 2011 WL 281030, at *3 (S.D. Fla. Jan. 26, 2011).

There is no dispute that the statute of limitations had not expired for the conspiracy charge upon issuance of the arrest warrant. Arguably, the absence of a statute of limitations issue with respect to this charge is a sufficient basis for the undersigned to reject Respondent's challenge and certify the extradition. *See In the Matter of Grynsztein*, No. 15-MC-80918-UNA, 2015 WL 6039845, at *7 (S.D. Fla. Oct. 15, 2015) (rejecting statute of limitations challenge to extradition

and noting that only some of the crimes supporting extradition were challenged as untimely). Notwithstanding, I have considered each of the arguments raised on the embezzlement charge(s).

Central to the Parties' respective positions is whether the charges against Duarte Jaquez allege a single, continuing offense against the State of Chihuahua that ended in 2014, or whether he is charged with eleven distinct crimes of *peculado*, the earliest of which occurred in 2011 and only two of which occurred within five years of issuance of the arrest warrant. The difficulty in resolving this issue lies in the differences between the criminal procedure under U.S. and Mexican law: while the charging document under U.S. law, an indictment, would likely articulate distinct counts for embezzlement,[8] the Arrest Warrant issued for Duarte does not articulate separate counts.

As noted above, though the Chihuahuan Judge calculated the earliest dates on which the statute of limitations would expire with respect to each transaction, there is no other indication— by numbering or by language—that the transactions will or have been treated as separate crimes. The Diplomatic Note advanced by the Government explains that the crime is related to a single scheme to embezzle, and thus, under Mexican law, Duarte could not be separately tried for the various transactions that were part of the single scheme. ECF No. 48-1, at pg. 13 of 19. The Government insists that this is a single crime that concluded no earlier than in December of 2014.

Respondent's argument urges the Court to analyze the allegations as though they were brought in the United States, but this ignores the reality of this extradition process.  Other courts in this District have declined to apply principles of U.S. law to interpret another sovereign's criminal process:

> The Court does not attempt to apply the United States statute of limitations to a foreign judicial system as such an attempt would be frustrated by the distinctive characteristics of each system. Rather, this Court looks to see if the [] authorities

---

[8] The Government does not concede this and argued that in some cases, embezzlement may be brought as a continuing offense. The cases cited by the Government for this proposition appear to be largely distinguishable, but the undersigned will not impose her interpretation of U.S. law onto Mexican criminal law or procedure.

charged [Respondent] within five years of the offense conduct through their applicable procedures and finds that they have done so.

*In re Extradition of Nunez*, 2011 WL 281030, at *4.  Whether the transaction would have formed the basis for separate, not continuing, crimes of embezzlement if charged in the United States is not the right inquiry. Rather, the Court has considered whether the Mexican authorities charged Respondent within five years of the offense conduct through their applicable procedures, as in *Nunez*, and finds that they have done so.

The Government argues, moreover, that the statute of limitations has been tolled by Duarte's flight from Mexico. The statute of limitations does not apply to any person fleeing from justice pursuant to 18 U.S.C. § 3290. The Government bears the burden proving by a preponderance of the evidence that Duarte fled Mexico with the intent to do to. *United States v. Broe*, 695 F. Supp. 2d 1361, 1370 (S.D. Fla. 2010). Respondent's counsel requests that before the Court make any finding with respect to Respondent's state of mind, he be offered an opportunity to present evidence on his intent.  Specifically, he explains that he entered the United States seeking medical treatment and has remained here, living openly and without any effort to conceal himself from authorities.  Indeed, evidence was advanced demonstrating the degree to which Respondent was in open communication with authorities of the United States, including in relation to immigration proceedings for himself and family members, as well as through counsel. The Government notes that these same communications by Respondent demonstrate that he was resisting the efforts of Mexico to prosecute him and that he intended to continue to resist those efforts.  The Government further advances evidence that Respondent attempted to threaten witnesses in attempt to dissuade them from providing evidence against him in the Mexican prosecution.

I find the Government has demonstrated by a preponderance of the evidence that Respondent left Mexico in 2016 and remained in the United States since that time with the intent to avoid prosecution. At a minimum, Respondent does not deny that he knew of the investigation ongoing in Mexico or the fact that he was wanted by the Mexican Government to answer for the charges. Though he protests his guilt and the strength of the evidence against him, it cannot be disputed that he knew of the accusations and rather than answer to them, he pursued other avenues in attempt to resolve them including efforts to cooperate with the U.S. Government.

Because I find that the statute of limitations was tolled upon Respondent's departure from Mexico in November of 2016, the statute of limitations would not have expired, even if the transactions were separately considered, with respect to all but the first transaction (which would have already expired in November of 2016). Accordingly, and for the foregoing reasons, Respondent's Motion to Dismiss the Extradition Complaint is denied.

### b. Extradition

International extradition proceedings are governed by 18 U.S.C. § 3181, *et seq*., and by treaty. Pursuant to § 3184, the Executive Branch remains primarily responsible for extradition. *Martin v. Warden, Atlanta Pen*, 993 F.2d 824, 828–29 (11th Cir. 1993). "The extradition judge is assigned the limited duty of determining the sufficiency of the request under the applicable treaty provisions. This limited judicial function is carried out by conducting the hearing pursuant to 18 U.S.C. § 3184, determining whether the accused is subject to extradition, and, if so, certifying this to the Secretary of State." *In re Extradition of Nunez-Garrido*, 829 F. Supp. 2d 1277, 1281 (S.D. Fla. 2011) (internal citations omitted). After the judge issues a certificate of extraditability, the Secretary of State is tasked with the larger assessment of extradition and its consequences. *Id.*

In an extradition matter, the Court does not determine the guilt or innocence of the

extraditee, but rather determines whether the following elements have been satisfied in order to support extradition: (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the Court has jurisdiction over the extraditee; (3) the applicable treaty is in full force and effect; (4) the crime(s) for which surrender is requested is/are covered by the applicable treaty; and (5) there is sufficient evidence to support a finding of probable cause as to each charge for which extradition is sought. *See id.* (citing *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925)). In applying an extradition treaty, the Court is to construe it liberally in favor of the requesting nation. *See Matter of Extradition of Leiva*, 16-23468-CV, 2017 WL 4366290, at *2 (S.D. Fla. Sept. 29, 2017) (citing *Factor v. Laubenheimer*, 290 U.S. 276, 293-94 (1933)).

Duarte concedes that the Court has authority over the proceedings; that it has jurisdiction over him; and that the Treaty is in full force and effect. ECF No. 59 at 11. The undersigned indeed finds that this Court has subject matter jurisdiction over these proceedings pursuant to 18 U.S.C. § 3184 and over Respondent, who was arrested and found in this District. Additionally, the Court accepts the unrebutted declaration advanced by the Department of State and finds that there is an extradition treaty in full force and effect between the United States and Mexico for all purposes of the extradition proceeding.

Duarte contests the last two elements: duality of the crimes charged, and evidence sufficient to find probable cause that the crimes alleged were committed by him. Additionally, Duarte asks this Court to apply the political offense exception to avoid certification of extraditability and urges the Court to consider the threat to his life if he is returned to Mexico.

i. <u>The Dual Criminality Requirement is Met</u>.

The Treaty identifies the crimes covered as those that are listed on the Appendix to the Treaty and are punishable in accordance with the laws of both Contracting Parties for a term of

imprisonment of at least a year.[9] Article 2 of the Treaty further provides that extradition shall be granted "for willful acts which, although not being included in the Appendix, are punishable, in accordance with the federal laws of both Contracting Parties, by a deprivation of liberty" for not less than one year, including "conspiracy to commit an offense." Embezzlement is a listed offense on the Appendix.[10] The Arrest Warrant, translated and in the record beginning at ECF No. 1-5, charges Duarte with the crimes of embezzlement and conspiracy, both aggravated. *Id.*, at EX – Duarte Jaquez – 000117.  The Arrest Warrant defines the crime of embezzlement as "whoever, acting in his capacity as public official, deviates money [from its purpose] received due to their position in an amount that exceeds five hundred times the minimum wage." *Id.*, at EX – Duarte Jaquez – 000118.

Respondent disputes that the Treaty covers the crime of *peculado* with which he is charged. Respondent contends that the closest crime under U.S. law, embezzlement,[11] contains an element of intent that is not an element of *peculado* as it is charged by the State of Chihuahua (as opposed to the Mexican federal charge of *peculado*). Respondent claims that the facts offered to establish probable cause lack any evidence that he intended to embezzle the funds or that he possessed the funds, two elements that would be required to prove embezzlement.

Respondent's element-by-element comparison of the offenses finds no support in the caselaw.  "Dual criminality does not require that the elements, purposes, or punishment for foreign offenses be identical to ours. It is enough that the essential character of the transaction is the same, and made criminal." *Arias Leiva v. Warden*, 928 F.3d 1281, 1293 (11th Cir. 2019).  In rejecting a similar challenge, the Eleventh Circuit found no error in the trial court's determination that the

---

[9] ECF No. 1-3 at pg 57 of 73 (Article 2: Extraditable Offenses).
[10] ECF No. 1-3 at pg 71 of 73 (Appendix).
[11] 18 U.S.C. § 641.

charged conduct would violate 18 U.S.C. § 641, which prohibits diverting government funds for one's own use or the use of another. *Id.* This squarely describes the conduct with which Respondent is charged: he is accused of acting in his capacity as a public official and deviating money received due to his position in an amount that exceeds 500 times the minimum wage. The allegations further include accusations that he diverted those government funds into accounts controlled by him and for his benefit. Respondent cites *United States v. Montemayor Seguy*, 329 F. Supp. 2d 871, 877 (S.D. Tex. 2004), recognizing that the federal crime of *peculado* has been found analogous to embezzlement under U.S. law, but distinguishes the federal crime from that charged by the State of Chihuahua; Respondent contends that the State law criminalizes any violation of Chihuahua's procurement laws, without proof of control by the accused or specific intent to deprive. Respondent in essence argues that the charge of *peculado* could more broadly encompass conduct that would not violate 18 U.S.C. § 641; whether or not this is so, the conduct with which he is charged would indeed violate the U.S. law and thus the dual criminality requirement is satisfied.

Respondent contests the evidence of intent adduced by the Government and contends that the only evidence of his intent to deprive the State of Chihuahua of the diverted funds is his association with the two entities through which the funds were diverted, Union Ganadera and Financiera. Appreciating that Respondent also attempts to challenge the reliability of the witnesses offered against him, this argument nonetheless ignores the *direct* evidence of his intent to deprive the State of the funds for his own benefit. Specifically, the former Treasury Secretary has offered testimony that Duarte told him, with regard to the November 2014 transaction, that Duarte had an urgent need to pay some personal expenses and that he intended to take advantage of the surplus available in the State of Chihuahua funds. Evidence tracing the diverted funds to personal uses, such as Duarte's wife's American Express account, their trust account, or to pay his taxes; all

further provide circumstantial evidence that Duarte intended to deprive the State of Chihuahua of the funds and did so for his own benefit.

Respondent raises no express challenge to the dual criminality requirement with respect to the *asociacion* charge, I find this is an offense punishable under U.S. law, specifically, 18 U.S.C. § 371, which prohibits two or more persons from conspiring to commit any offense against the United States, or to defraud the United States when one or more of those persons do any act to effect the object of the conspiracy. The dual criminality is here satisfied.

ii.  The Evidence is Sufficient to Establish Probable Cause.

The final factor requires this Court to consider whether competent evidence demonstrates probable cause to believe the accused guilty of the crime charged. *Garcia–Guillern v. United States*, 450 F.2d 1189, 1192 (5th Cir. 1971). The Court does not inquire into the guilt or innocence of the accused, but rather, only looks to see if there is evidence sufficient to show probable cause; in this respect, the § 3184 hearing is in the nature of a preliminary hearing.

The evidence supporting the accusations against Respondent is based on both testimony of witnesses and documents, including government and bank records. As set forth in the Arrest Warrant, the investigation into Duarte stems from accusations made in 2018 by officials assigned to the Secretary of Public Oversight for the State of Chihuahua and following an accounting by the Secretary of the Treasury. Several witnesses who participated in the scheme with Respondent have provided statements admitting their own conduct and explaining Respondent's role in directing the diverted funds. The documentary evidence includes Respondent's bank records and irregular agreements supporting the transactions Duarte is accused of diverting.

In his Response, Respondent challenges the Government's evidence and offers evidence of a financial report conducted in 2017 that found no evidence of malfeasance on his part, which

he contends obliterates the evidence of probable cause. Duarte explains that in 2014, he was accused of stealing almost 4 million dollars and as a result, an investigation was undertaken against then-Governor Duarte. An opinion was rendered, based on examination of his finances, that he had not misappropriated any funds.

Generally, an extraditee is permitted to present evidence to explain or clarify proof, but evidence is inadmissible in extradition proceedings to contradict the requesting country's case. *In the Matter of Grynsztein*, 2015 WL 6039845, at *4. However, evidence that explains away "or completely obliterates probable cause" is admissible. *Id.* Respondent argues that the report is admissible because it completely obliterates the probable cause advanced by the government.

Respondent challenges the evidence that it was he who deviated the contested funds: Duarte was not the Secretary of the Treasury, he argues, and was thus incapable of directing the State's funds and on the other side of the transaction, it was Union Ganadera and Financiera, not Duarte, alleged to have received the funds, and he contests the Government's ability to impute the acts of these companies upon him. Thus, he argues, the evidence fails to establish that he deviated the funds. In addition to the direct evidence provided by the witnesses that it was Duarte who both caused the transfers and benefited therefrom, the circumstantial evidence amply supports a finding of probable cause that Duarte is the person who committed the crime. For example, one witness initially refused even to prepare the contracts in favor of the two companies controlled by Duarte because, she noted, his positions as Governor of the State of Chihuahua as well as sitting on the board of directors of the companies presented a conflict of interest. Multiple witnesses have offered testimony that Duarte authorized or instructed the release of the contested funds.

Respondent additionally challenges the reliability of the witnesses and offers evidence that they were coerced into making their statements or persuaded to provide inculpatory statements on

a promise of leniency.  Despite Respondent's contention regarding the "substantial likelihood" that the statements were coerced, Respondent does not contend that any such statement has been recanted.  This distinguishing factor renders his reliance on *Matter of Extradition of Contreras*, 800 F. Supp. 1462 (S.D. Tex. 1992), entirely misplaced. The court there observed that "if the only evidence of probable cause were the confessions, and if sufficiently recanted, then the existence of probable cause would be negated." *Id.* at 1465.  Critically too, the court there characterized the recanted statements as the "sum of the Government's substantive evidence"; the court also admitted evidence, derived from a subsequent judicial proceeding, in which each of the declarants recanted his statement.  Finding that "the indicia of reliability is with the recantation, the court was left with no other evidence of probable cause." *Id.* at 1469.  The evidence proffered against Respondent here is neither dependent on witness testimony nor rendered unreliable by admissible, explanatory evidence of coercion.

Respondent's argument moreover is undermined by the summary of the witnesses' statements in the Arrest Warrant, which memorializes the fact that the witnesses were assisted by their counsel when interviewed. Upon review of the evidence advanced by the Government, arguments by counsel and the record as a whole, I find the evidence sufficient to establish probable cause to support the accusations against Duarte.

### iii.  Humanitarianism and Claims of Torture

Respondent argues that the prosecution against him is motivated by a political rival and that the Court should deny the extradition request pursuant to the political offense exception. Respondent recognizes that the exception has been limited in application to crimes committed in the course of a political act, like rebellion. *Escobedo v. United States*, 623 F.2d 1098, 1104 (5th Cir. 1980) ("This circuit defines a political offense under extradition treaties as an offense

committed in the course of and incidental to a violent political disturbance, such as war, revolution and rebellion."). None of the cases advanced by Respondent support application of the exception to the present request, which seeks extradition of a former political leader for financial crimes for personal gain, unrelated to any political movement. *See, e.g.*, *Pajkanovic v. United States*, 353 Fed. Appx. 183, 185 (11th Cir. 2009) (affirming issuance of certificate of extraditability that rejected claim of political offense exception to charged crime of aggravated robbery); *Escobedo*, 623 F.2d at 1104 (affirming denial of wirt of habeas corpus on finding that extraditees accused of murder and kidnapping were not entitled to political offense haven); *In re Extradition of Gonzalez*, 217 F. Supp. 717, 721 (S.D.N.Y. 1963) (rejecting application of political offense exception noting absence of evidence that accused acted with political motives or political ends); *cf. Matter of Doherty by Gov't of United Kingdom of Great Britain & N. Ireland*, 599 F. Supp. 270, 276 (S.D.N.Y. 1984) (finding political offense exception "in its most classic form" where crime alleged involved death of army captain in the context of an attempted ambush of a British army patrol). There is, at best, evidence that the prosecution is politically motivated; there is no evidence at all that the crimes alleged were politically motivated, much less that they were committed in the course of a political act. I find the exception inapplicable to Respondent's extradition request.

Finally, Respondent presents evidence that his life may be endangered by returning to Mexico. "These arguments have been held to invoke 'humanitarian' considerations which are within the exclusive purview of the executive branch and cannot and should not be addressed by the courts in deciding whether a petitioner is extraditable." *Matter of Extradition of Noeller*, 17 CR 664, 2018 WL 1027513, at *9 (N.D. Ill. Feb. 23, 2018) (collecting cases). The Court will not refuse the extradition request on this basis, which Duarte may present to the Executive Branch.

### III.    FINDINGS, CONCLUSIONS, AND CERTIFICATION

The Court has carefully reviewed all the evidence, including the authenticated original Formal Extradition Request together with all of its Affidavits, Declarations and exhibits, the Respondent's exhibits, and the Parties' arguments and filings.

Based upon this review, the Court **FINDS** as follows:

1. The undersigned judicial officer is authorized under Title 18, United States Code, Section 3184, to conduct an extradition hearing;

2. The Court has personal jurisdiction over the defendant and subject matter jurisdiction over the case;

3. There is currently in force an extradition treaty between the United States of America and Mexico;

4. The Defendant is charged in the requesting state with the criminal offenses of conspiracy and embezzlement of government funds;

5. The criminal offenses of conspiracy and embezzlement of government funds are extraditable offenses within the meaning of the extradition treaty;

6. The requesting state seeks the extradition of the Respondent for the criminal offenses of conspiracy and embezzlement of government funds;

7. There is probable cause to believe that Cesar Horacio Duarte Jaquez, the Respondent brought before this Court, is the same person wanted by Mexico, and further, there is probable cause to believe that said Respondent committed the crimes of conspiracy and embezzlement of government funds as charged against him in Mexico.

For reasons set forth above, the Government's request for an order certifying the extradition of Cesar Horacio Duarte Jaquez is **GRANTED**. As specified in 18 U.S.C. § 3184,

**IT IS THEREFORE ORDERED** that a certified copy of this Certification of Extraditability and Order of Commitment, together with a copy of all the testimony and evidence taken before the undersigned, be forwarded without delay by the Clerk of the Court to the Secretary of State, Department of State, to the attention of the Office of the Legal Adviser, that a warrant may issue upon the requisition of the proper authorities of Mexico, for the surrender of Respondent, according to the stipulations of the applicable treaty or convention, and that Respondent, be committed to the custody of the United States Marshal for this District, to be held at the Federal Detention Center, Miami, Florida, or other suitable facility, pending final disposition of this matter by the Secretary of State and surrender of Defendant to the designated agents of the Government of Mexico.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 8th day of November 2021.

LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE